# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BLANK LABEL GROUP, INC., *et al.*,<br><br>　　　　　　　　　　Debtors.[1] | Chapter 11<br><br>Case No. 23-10286 (JTD)<br><br>Jointly Administered |
| In re<br><br>BLACKLAPEL CUSTOM CLOTHIERS INC.,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>SETTLE FUNDING, LLC,<br><br>　　　　　　　　　　Defendant. | Chapter 11<br><br>Adv. Pro. No. _____ |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO
11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW AND RECLASSIFY
<u>CLAIMS PURSUANT TO 11 U.S.C. § 502</u>**

BlackLapel Custom Clothiers, Inc. ("<u>BlackLapel</u>" or "<u>Plaintiff</u>"), one of the debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases, by and through its undersigned counsel, files this complaint (the "<u>Complaint</u>") to avoid and recover preferential transfers made to Settle Funding, LLC (the "<u>Defendant</u>") and to disallow alleged

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows Blank Label Group, Inc. (6183); BlackLapel Custom Clothiers, Inc. (3725); and Ratio Clothing, LLC (8330). The Debtors' mailing address is 36 Bromfield Street, 204, Boston, MA 02108.

secured claims asserted by Defendant and reclassify them as general unsecured claims. In support of this Complaint, Plaintiff alleges upon information and belief that:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property of the Debtors that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Debtors pursuant to sections 547 and 550 of title 11 of the United States Code (the "Bankruptcy Code").

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff further seeks to reclassify as a general unsecured claim the entire claim submitted by Defendant, which it filed as a secured claim. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). The underlying Chapter 11 bankruptcy cases are captioned *In re: Blank Label Group, Inc.*, Case No. 23-10286, *In re: BlackLapel Custom Clothiers, Inc.*, Case No. 23-10287, and *In re Ratio Clothing, LLC*, Case No. 23-10288.

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. §§ 157(b)(2)(B), (F) and (K), and the Court may enter final orders for matters contained herein.

5. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

6. The statutory and legal predicates for the relief sought herein are sections 502, 506, 547, and 550 of the Bankruptcy Code and rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On March 8, 2023 (the "Petition Date"), the Debtors filed voluntary petitions commencing these chapter 11 cases (the "Chapter 11 Cases"). The Debtors are and continue to be eligible, and have elected, to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended.

9. The Debtors continue to operate their businesses and manage their affairs in the ordinary course of business as debtors in possession.

10. On March 9, 2023, the United States Trustee for the District of Delaware appointed Jami Nimeroff, Esq., as the Subchapter V trustee ("Subchapter V Trustee") [D.I. 8].

11. On March 10, 2023, the Court entered an Order authorizing the joint administration of the Chapter 11 Cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [D.I. 22].

12. On March 24, 2023, the Court entered an Order approving the Debtors' proposed bidding procedures and setting forth the forms and manner of notice of sale and auction [D.I. 61].

13. On April 20, 2023, the Court entered an Order authorizing the Debtors to employ and retain HunterPoint, LLC to provide Peter A. Furman ("Mr. Furman") as Chief Restructuring Officer ("CRO") of the Debtors, *nunc pro tunc* as of March 24, 2023 [D.I. 110].

14. As discussed more fully in the *Declaration of Fan Bi in Support of First Day Relief* [D.I. 12] (the "First Day Declaration"),[2] the Debtors filed these Chapter 11 Cases with the goal of expeditiously selling nearly all of the Debtors' assets (the "Sale") through a court-approved process.

15. On May 15, 2023, an auction of substantially all of the Debtors' assets was conducted at the offices of Debtors' counsel, where a bid of $1.1 million, submitted by H.M. Cole, was determined to be the successful bid (the "Successful Bid") [D.I. 141 ¶ 21-22]. The Successful Bid allocated value between the Debtors such that the individual offer in each case was as follows: (1) $200,000 for Blank Label's Acquired Assets; (2) $700,000 for BlackLapel's Acquired Assets; (3) $200,000 for Ratio Clothing's Acquired Assets [D.I. 141 ¶ 21].[3] In addition to the $1.1 million allocated to the sale, the Successful Bid also provided $150,000 for a transition services fee. *Id.* Subsequently, the United States Trustee and the Subchapter V Trustee did not object to the Successful Bid, but each respectively issued a Reservation of Rights, to which the Debtors responded [D.I. 135, 136, 138].

16. On May 25, 2023, the Court entered the Sale Order approving the Successful Bid and authorizing the Sale [D.I. 154].

17. On May 31, 2023, the Sale closed.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] The term "Acquired Assets" is defined in the *Order Authorizing (I) the Sale of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (II) the Debtors to Enter into the Purchase Agreement; (III) the Debtors to Assume and Assign Certain Contracts and Unexpired Leases; (IV) Waiver of the Stay Periods Under Bankruptcy Rules 6004(h) and 6006(d); and (V) Granting Related Relief* [D.I. 154] (the "Sale Order").

## THE PARTIES

18. As more fully discussed in the First Day Declaration, the Debtors are direct-to-consumer manufacturers of custom-made fitted clothes for both formal and casual wear. BlackLapel and Ratio Clothing are each direct or indirect wholly-owned subsidiaries of Blank Label.

19. Pursuant to Bankruptcy Code sections 547, 550, and 1107, Plaintiff is authorized and has standing to investigate, pursue, commence, prosecute, compromise, settle, or otherwise resolve certain causes of action, including the instant action to determine the validity, priority, and extent of purported liens and to avoid preferential transfers under chapter 5 of the Bankruptcy Code.

20. Upon information and belief, Defendant was, at all relevant times, a creditor that provided to Plaintiff short-term business loans whereby Defendant would pay the loan principal directly to vendor-creditors.

21. Defendant has filed the Proof of Claim (defined below) asserting that all such loans were secured by all of Plaintiff's personal property.

22. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 29 W 17th Street, Suite 500, New York, NY 10011.

## FACTUAL BACKGROUND

23. Upon information and belief, Plaintiff began a lending relationship with Defendant shortly after the company was purchased by Blank Label in or around April 2021.

24. Upon information and belief, a material portion of the loans Defendant provided to Plaintiff were unsecured. However, at some time during the parties' relationship, the Defendant began providing separate loans on a purportedly secured basis in accordance with their terms.

25. On or about April 6, 2022, Defendant caused to be filed a UCC-1 financing statement (the "April 2022 UCC-1" or "Financing Statement"), naming Corporation Service Company ("CSC"), as representative, and purporting to cover "[a]ll assets and personal property of Debtor [BlackLapel], whether now owned or hereafter acquired, including all products and proceeds of the foregoing."

26. A true and accurate copy of the Financing Statement filed by Corporation Service Company, as representative for Defendant, is attached hereto as **Exhibit A**.

27. Upon information and belief the April 2022 UUC-1 was filed to secure a loan agreement entered into on or about the same time as the UCC-1 was executed.

28. Between June 13, 2022 to October 11, 2022, Plaintiff and Defendant entered into 30 individual loan and security agreements (each an "Agreement," and collectively, the "Agreements"), whereby Defendant agreed to pay third-party vendor/creditor invoices issued to Plaintiff and Plaintiff agreed to repay Defendants the principal at a later date, while making installment interest payments along the way (the "Finance Charges").

29. Apart from the individual principal sums and Finance Charges calculations for each respective Agreement, the terms of each Agreement are identical.

30. Each Agreement provided that Plaintiff granted Defendant a first priority security in "all of [Plaintiff's] personal property" and any proceeds thereof (the "Collateral"), and authorized Defendant to "file any financing statement describing the Collateral in any locations [Defendant] deem[ed] necessary or appropriate", and required Plaintiff to "take all actions [Defendant] deem[ed] necessary or appropriate to confirm and perfect [Defendant's] security interest in the Collateral." (Agreement, ¶ 11)

31. Each Agreement further provided that the laws of New York would govern the respective agreements and any transactions contemplated thereby. *Id.* ¶ 24.

32. Each Agreement also contained an entire agreement clause providing the following:

    "<u>Entire Agreement</u>.  This Agreement constitutes the entire agreement of the parties relating to the Loan.  This Agreement replaces any earlier contract of a similar nature.  No oral modification is valid."

    [*Id.* ¶ 18.]

33. The Agreement defined the "Loan" as "the Loan evidenced by this Agreement." [*Id.* ¶ 1(j).]

34. Neither Plaintiff nor Defendant revised, altered, or otherwise amended the Agreements after they were executed, nor were they permitted to do so without such modification being memorialized in writing.

35. Notably, none of the Agreements contained a future advance, dragnet, cross-collateralization clause or any similar clause that would require that all outstanding secured obligations be cross-collateralized.

36. Moreover, Plaintiff and Defendant never executed any umbrella or master agreement (a "<u>Master Agreement</u>") that would have provided that any collateral secured by such an agreement would also secure any present or future loans or advances.

37. On April 9, 2023, Defendant filed the Proof of Claim #4-1 in the amount of $448,840.45 (the "<u>Proof of Claim</u>") [Claim 4-1].  In its Proof of Claim, Defendant asserted that the entirety of its claim is secured.  *Id.*

38. In support of its Proof of Claim, Defendant submitted a Schedule listing 30 Agreements entered into between June 13, 2022 to October 11, 2022 that it contends are perfected secured claims.

39. The only UCC-1 submitted by Defendant in support of its contention that each of the 30 Agreements is secured, is the April 2022 UCC-1.

40. Plaintiff files this Complaint seeking a declaratory ruling from the Court as to the validity, perfection, and enforceability of Defendant's purported security interest(s) in Plaintiff's Collateral.

## FIRST CLAIM FOR RELIEF

## DECLARATION CONCENRING THE VALIDITY, PERFECTION, AND ENFORCEABILTY OF DEFENDANT'S INTEREST IN PLAINTIFF'S COLLATERAL

41. Plaintiff re-states and re-alleges each of the foregoing allegations as if fully set forth at length herein.

42. Defendant has filed the Proof of Claim in the amount of $448,840.45, which it claims to be secured by a senior lien on all of the Collateral described in the Financing Statement [D.I. 144 ¶ 1; Claim 4-1].

43. The Agreements are governed by the laws of New York.

44. Under New York's Uniform Commercial Code, UCC 9-203(a) provides that "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral."

45. Moreover, UCC 9-310 provides that in general (and as applicable here), "a financing statement must be filed to perfect all security interests . . . ."

46. Although under UCC 9-502(d) "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches," there is no provision of New York's UCC that would automatically extend the breadth of a pre-filed financing statement to include *all* future security agreements beyond the security agreement for which it is filed.

47. To that end, UCC 9-204(c) permissibly envisions the following:

> "<u>Future advances and other value</u>.  A security agreement **may provide** that collateral secures . . . future advances or other value, whether or not the advances or value are given pursuant to commitment.)

[(emphasis added).]

48. In other words, where a creditor and debtor contemplate the existence of multiple loans between them, a "future advance" clause or dragnet clause is necessary to permit the creditor to secure all such loans with the same agreement. *See Safe Deposit Bank v. Tr. Co. v. Berman*, 393 F.2d 401, 402-03 (1st Cir. 1963) (holding security agreement was confined to its language lacking a future advances clause despite subsequent notes reciting that agreement had been deposited as collateral for all present liabilities).

49. As set forth above, the Agreements at issue in this case contain no such future advance clauses, nor is there any such language even suggesting the effect of a future advance clause.

50. To the contrary, each Agreement is a separately integrated agreement relating only to the specific amounts funded under each Agreement, and forbids any non-written modification or reference to other papers.

51. Defendant filed only the one April 2022 UCC-1 financing statement, which secured an Agreement entered into around the time of that UCC-1 filing.

52. No other Agreements were perfected by the filing of any other UCC-1 financing statements.

53. Furthermore, because there is no Master Agreement and there is no future advances clause in any of the Agreements, it follows that the only perfected Agreement did not further serve to perfect the other subsequent Agreements. *See In re Wetzel*, 134 B.R. 718, 718 (Bankr. W.D.N.Y. 1992) ("Under UCC 9-204(3), . . . agreements may provide that collateral secures both current and future advances. New York courts have construed future advance clauses liberally **but the contractual provisions must be clear and unambiguous.**")

(emphasis added); *In re Duckworth*, 2012 WL 986766, at *5-6 (C.D. Ill. Mar. 22, 2012) ("It also follows that the failure to contain a future advances or dragnet clause cannot be overcome by simply referring to the security agreement in a different instrument. A future advances or dragnet clause *is the statutorily mandated mechanism* by which debts not referred to in a security agreement may be secured thereby.") (emphasis added).

54. For the reasons set forth herein, Defendant had a security interest in the Collateral only to the extent of the one Agreement that was secured by the April 2022 UCC-1.

55. In the ordinary course of business, Plaintiff paid off the entire amounts owed under each Agreement entered into with Defendant prior to June 30, 2022.

56. Thus, the debt secured by the April 2022 UCC-1 has been fully satisfied and the security interest extinguished by the satisfaction of the underlying debt.

57. Plaintiff therefore seeks a determination from the Court declaring that the purported security interests set forth in each of the Agreements listed in Defendant's Proof of Claim are invalid, unperfected, and unenforceable.

## SECOND CLAIM FOR RELIEF

### RECLASSIFICATION OF NON-SECURED PORTION OF DEFENDANT'S PROOF OF CLAIM AS UNSECURED – 11 U.S.C. §§ 502 AND 506(d)

58. Plaintiff re-states and re-alleges each of the foregoing allegations as if fully set forth at length herein.

59. Under section 502(b)(1) of the Bankruptcy Code, the Court is empowered to determine the amount of Defendant's claim as of the Petition Date, but shall limit allowance of the claim to the extent that it is unenforceable against Plaintiff and property of Plaintiff. *See* 11 U.S.C. § 502(b)(1).

60. Under section 506(d) of the Bankruptcy Code, to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void.

61. Defendant's alleged secured claims for each Agreement listed in its Proof of Claim are invalid, unperfected, and unenforceable.

62. Plaintiff therefore seeks a determination from the Court declaring that Defendant's Proof of Claim is unsecured, reclassifying such Proof of Claim as a general unsecured claim and voiding any liens related thereto.

### THIRD CLAIM FOR RELIEF

### AVOIDANCE OF PREFERENCE PERIOD TRANSFERS – 11 U.S.C. § 547

63. Plaintiff re-states and re-alleges each of the foregoing allegations as if fully set forth at length herein.

64. Section 547(b) of the Bankruptcy Code permits a trustee or debtor in possession to avoid certain pre-bankruptcy transfers as preferences if "any transfer of an interest of the debtor in property" is:

> (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

65. During the ninety (90) days before the Petition Date—that is, between November 2, 2022 and March 8, 2022 (the "Preference Period")—Plaintiff continued to operate its business affairs, including the transfer of property to Defendant (each a "Transfer," and collectively, the "Transfers").

66. Each Transfer was a transfer of an interest in property of Plaintiff, who was or was presumed to be insolvent at the time of each Transfer.

67. Each Transfer was made on account of an antecedent debt owed by Plaintiff before each respective Transfer was made, as more particularly described on the Statement of Financial Affairs of Ratio Clothing [D.I. 103, at 17].

68. Although Plaintiff did not make any Transfers directly to Defendant during the Preference Period [D.I. 101], indirect Transfers were made to Defendant via payment through Plaintiff's sister company Ratio Clothing [D.I. 103, at 17].

69. During the Preference Period, Plaintiff caused Transfers to be made to or for the benefit of Defendant in an aggregate amount not less than $13,193.39 [*see id.*].

70. The Transfers enabled Defendant to receive more on account of the antecedent debt than Defendant would have received had (a) the case been a case under Chapter 7 of the Bankruptcy Code; (b) the transfer had not been made; and (c) Defendant had received payment of such antecedent debt to the extent provided by the Bankruptcy Code.

71. Defendant has not repaid all or a part of the value of the Transfers.

72. Plaintiff therefore seeks a determination from the Court declaring that each Transfer is an avoidable preference under section 547 of the Bankruptcy Code.

## FOURTH CLAIM FOR RELIEF

### RECOVERY OF PREFERENTIAL TRANSFERS – 11 U.S.C. § 550

73. Plaintiff re-states and re-alleges each of the foregoing allegations as if fully set forth at length herein.

74. Section 550 of the Bankruptcy Code provides that if a transfer is avoided under section 547 of the Bankruptcy Code, Plaintiff may recover the property or the value of the property transferred from the initial transferee, the entity for whose benefit the transfer was made, or any immediate or mediate transferees of the initial transferees. 11 U.S.C. § 550.

75. Defendant is the initial transferee/entity for whose benefit each avoidable transfer was made.

76. Under section 550 of the Bankruptcy Code, Plaintiff is entitled to avoid each Transfer or the value of each Transfer that is avoidable under section 547 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

77. Plaintiff therefore seeks a determination from the Court that Plaintiff is entitled to recover from Defendant the Avoidable Transfers, plus interest thereon to the date of payment and the costs of this action.

**FIFTH CLAIM FOR RELIEF**

**DISALLOWANCE OF ALL CLAIMS – 11 U.S.C. §§ 502(d) and (j)**

78. Plaintiff re-states and re-alleges each of the foregoing allegations as if fully set forth at length herein.

79. Section 502(d) states that "the court shall disallow any claim of any entity from which property is recoverable under section … 550 … of [the Bankruptcy Code] or that is a transferee of a transfer avoidable under section … 547 … of [the Bankruptcy Code], unless such entity or transferee has paid the amount, or turned over any such property." 11 U.S.C. § 502(d).

80. Furthermore, "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j).

81. Defendant is a transferee of all transfers avoidable under section 547 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

82. Defendant has not paid the amount of the Avoidable Transfers, or turned over such property for which Defendant is liable under section 550 of the Bankruptcy Code.

83. Plaintiff therefore seeks a determination from the Court that under section 502(d) of the Bankruptcy Code, any and all Claims of Defendant against Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers, plus interest thereon to the date of payment and the costs of this action.

84. Plaintiff also seeks a determination from the Court that under section 502(j) of the Bankruptcy Code, any and all Claims of Defendant against Plaintiff previously allowed by Plaintiff must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers, plus interest thereon to the date of payment and the costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

1) On Plaintiff's First and Second Claims for Relief, judgment in favor of Plaintiff and against Defendant, determining that Defendant's Proof of Claim is supported by invalid, unperfected, and unenforceable security interests, shall be reclassified as a general unsecured claim, pursuant to section 502(b)(1) of the Bankruptcy Code, and any associated liens are void under section 506(d);

2) On Plaintiff's Third and Fourth Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers, directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547 and 550 of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law,

together with the costs and expenses of this action including, without limitation, attorneys' fees;

3) On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant, disallowing any claims held or filed by Defendant against Plaintiff until Defendant returns the Avoidable Transfers, pursuant to section 502 of the Bankruptcy Code; and

4) Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: June 23, 2023　　　　　　　　　　PASHMAN STEIN WALDER
　　　　Wilmington, Delaware　　　　　　HAYDEN, P.C.

　　　　　　　　　　　　　　　　　　　　*/s/ Joseph C. Barsalona II*
　　　　　　　　　　　　　　　　　　　　Joseph C. Barsalona II (No. 6102)
　　　　　　　　　　　　　　　　　　　　1007 North Orange Street 4th Floor #183
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801-1242
　　　　　　　　　　　　　　　　　　　　Telephone: (302) 592-6496
　　　　　　　　　　　　　　　　　　　　Email: jbarsalona@pashmanstein.com

　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　Sean Mack (pending admission *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Joshua P. Law (pending admission *pro hac vice*)
　　　　　　　　　　　　　　　　　　　　21 Main Street, Suite 200
　　　　　　　　　　　　　　　　　　　　Hackensack, New Jersey 07601
　　　　　　　　　　　　　　　　　　　　Email: smack@pashmanstein.com
　　　　　　　　　　　　　　　　　　　　Email: jlaw@pashmanstein.com

　　　　　　　　　　　　　　　　　　　　*Counsel to the Debtors and*
　　　　　　　　　　　　　　　　　　　　*Debtors in Possession*