IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BLANK LABEL GROUP, INC., *et al.*,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-10286 (JTD)<br><br>Jointly Administered<br><br>Proposed Obj. Deadline: July 20, 2023 at 4:00 p.m. (EDT)<br>Proposed Hearing Date: July 27, 2023, at 3:00 p.m. (EDT) |

**DEBTORS' MOTION PURSUANT TO BANKRUTPCY CODE
SECTION 105(a) AND BANKRUPTCY RULE 9019 FOR ENTRY OF
AN ORDER (I) APPROVING THE SETTLEMENT AGREEMENT BY AND
AMONG BLANK LABEL GROUP, INC. BLG HOLDINGS, LLC, FAN BI, JACK ERWIN
INC. AND JACK ERWIN FOUNDERS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (each, the "Debtor" or collectively the "Debtors"), by and through its undersigned counsel, hereby file this motion (this "Motion"), pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) approving the terms and conditions of that certain *Settlement Agreement and Mutual Releases*, dated as of July 12, 2023, attached to the Proposed Order as **Exhibit 1** (the "Settlement Agreement"), by and between BLG Holdings, LLC ("BLG Holdings"), a non-debtor affiliate of Debtor Blank Label Group, Inc. ("Blank Label"), Blank Label, Fan Bi ("Bi"), Lane Gerson ("Gerson"), Ariel Nelson ("Nelson," and collectively with Gerson, the "Jack Erwin Founders"), and Jack Erwin, Inc. ("Jack Erwin," and collectively with the Jack Erwin Founders, the "Jack

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Blank Label Group, Inc. (6183); BlackLapel Custom Clothiers, Inc. (3725); and Ratio Clothing, LLC (8330). The Debtors' mailing address is 36 Bromfield Street, 204, Boston, MA 02108.

1

Erwin Parties," and collectively with BLG Holdings, Blank Label, and Bi the "Parties," and each a "Party"); and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to entry of a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  The basis for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

### A. General Background

4.  On August 15, 2022, Jack Erwin, the Jack Erwin Founders, BLG Holdings, and Blank Label entered into a Stock Purchase Agreement (the "Stock Purchase Agreement"), whereby BLG Holdings agreed, among other things, to purchase sixty percent (60%) of the fully diluted common stock of Jack Erwin from the Jack Erwin Founders (the "Jack Erwin Shares").

5.  In connection with the Stock Purchase Agreement, the following agreements were concurrently executed: (1) the Consulting Agreement, by and between Jack Erwin, BLG Holdings, Blank Label, and Gerson (the "Gerson Consulting Agreement"); (2) the Consulting Agreement,

by and between Jack Erwin, BLG Holdings, Blank Label, and Nelson (the "Nelson Consulting Agreement," and collectively with the Gerson Consulting Agreement, the "Consulting Agreements"); (3) the Stockholders' Agreement, by and between Jack Erwin, BLG Holdings, and the Jack Erwin Founders (the "Stockholders' Agreement"); and (4) the Pledge Agreement, by BLG Holdings, for the benefit of the Jack Erwin Founders (the "Pledge Agreement," and collectively with the Consulting Agreements, the Stockholders' Agreement, and the Stock Purchase Agreement, the "Agreements").

6. On March 8, 2023, Blank Label, along with its affiliated Debtors, each commenced a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Cases," and each a "Bankruptcy Case").

7. On April 20, 2023, Peter Furman of HunterPoint LLC was retained as Chief Restructuring Officer (the "CRO") to *inter alia* operate the Debtors' businesses. John Bambach of Bambach Advisors was also retained as an independent director to make the ultimate decisions with respect to *inter alia* the Debtors' businesses (the "Independent Director").

8. The Jack Erwin Founders have alleged certain violations of the Agreements by BLG Holdings and Blank Label and, due to such violations, the Jack Erwin Founders, without violating the automatic stay, negotiated with estate representatives concerning BLG Holdings, and requested that pursuant to the terms of the Agreements, it relinquish the Jack Erwin Shares to the Jack Erwin Founders.

9. The Jack Erwin Founders filed proofs of claim numbers 15 and 16 in Blank Label's Bankruptcy Case, alleging certain violations of the Agreements by Blank Label and BLG Holdings (the "Jack Erwin Founders' Proofs of Claim").

10. The Jack Erwin Founders, pursuant to alleged certain rights and covenants reserved for them in the Agreements, also caused Jack Erwin to file proof of claim number 17 in Blank Label's Bankruptcy Case, alleging certain violations of the Agreements by Blank Label and BLG Holdings (the "Jack Erwin Proof of Claim," and collectively with the Jack Erwin Founders' Proofs of the Claim, the "Proofs of Claim").

11. The Debtors discovered that the amount remaining in a Debtor bank account after various transfers from Jack Erwin to that account, net of transfers from that Debtor bank account, is $6,000.00.

12. The Debtors advanced funds to Jack Erwin to satisfy certain payroll obligations to Jack Erwin employees, in the amount of approximately $52,500.00, for six (6) installments arising in March 2023, April 2023, and May 2023 (the "Reimbursable Payroll Amounts").

### B. The Settlement Agreement

13. Following good faith and arm's-length negotiations and discussions regarding the Jack Erwin Shares and the Proofs of Claim, and after a review and analysis of the positions and/or defenses set forth by each Party, the Parties, in consultation with their professionals, have determined that a settlement, consistent with the terms set forth in the Settlement Agreement, is appropriate and prudent. As such, and as discussed in more detail below, the Parties, through the Settlement Agreement, if approved, will save the estate the expense of litigating disputes related to the Jack Erwin Shares and the Proofs of Claim.

14. The salient terms of the Settlement Agreement are set forth below:[2]

- BLG Holdings will irrevocably relinquish and assign the Jack Erwin Shares to Jack Erwin and any and all other interest BLG Holdings holds in Jack Erwin.

---

[2] The summary set forth herein is provided for reference and convenience only, and is qualified and supplemented by the provisions of the Settlement Agreement attached as **Exhibit 1** to the Proposed Order.

- Bi resigns from his position as a director of Jack Erwin.

- Bi agrees to pay Jack Erwin a total of $112,500.00 (the "Settlement Amount") with $50,000.00 being due on or before July 12, 2023 and the remaining $62,500.00 to be payable in 24 equal monthly installments of $2,604.16.

- Within 3 business days from the entering of the Court's order approving the Settlement Agreement (the "Effective Date"), the CRO will direct Blank Label's counsel to transfer $125,000.00 from a trust account and $6,000.00 in the Debtors' bank accounts (the "Jack Erwin Trust Funds") to be sent via wire transfer to Jack Erwin. Blank Label may deduct all amounts paid for Jack Erwin's payroll on and after June 1, 2023 and prior to the Effective Date, from the Jack Erwin Trust Funds to be disbursed.

- Jack Erwin Parties release and forever discharge Blank Label, Blank Label's estate, Blank Label's professionals, BLG Holdings, and the CRO from any and all causes of action, claims, actions, as further detailed in the Settlement Agreement.

- Blank Label, BLG Holdings, and the CRO release and forever discharge Jack Erwin Parties from any and all causes of action, claims, actions, as further detailed in the Settlement Agreement.

- From the Effective Date, unless failure to make payments due under the Settlement Agreement and the expiration of the cure period elapses, the Jack Erwin Parties shall not cause Jack Erwin to pursue any claims against any third parties for receiving any alleged transfers made by Bi (the "Alleged Transfers"). Jack Erwin Parties agree that they will not cause Jack Erwin to pursue any independent claims Debtors may hold against any third parties for receiving any of the Alleged Transfers and they shall be deemed to waive such claims.

- Jack Erwin Parties and Blank Label agree that: (i) the Jack Erwin Proof of Claim will be withdrawn within 3 days following the Effective Date; and (ii) Blank Label will not object to the allowance of the Jack Erwin Founders' Proofs of Claim in the Bankruptcy Case. Nelson and Gerson agree to vote the Jack Erwin Founders' Proofs of Claim, respectively, in favor of the forthcoming Chapter 11 plan to be proposed by Blank Label and Jack Erwin Parties agree not to object to or interfere with any action by Blank Label, or any representative of Blank Label's estate, to recover any funds from any third-parties.

**RELIEF REQUESTED**

15. By this Motion, the Debtors request, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the terms and conditions of the Settlement Agreement; and (ii) granting related relief.

**BASIS FOR RELIEF REQUESTED**

**A. The Settlement Agreement Satisfies the Standard for Approval Pursuant to Bankruptcy Rule 9019**

16. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

17. In determining whether to approve a proposed settlement pursuant to Bankruptcy Rule 9019(a), the Third Circuit requires a bankruptcy court to "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1146 (3d Cir. 1979). A court generally gives deference to a debtor's business judgment in deciding whether to settle a matter. *See In re Key3Media Group, Inc.*, 336 B.R. 87,

93 (Bankr. D.Del. 2005).

18. The approval of a settlement under Bankruptcy Rule 9019 is within the sound discretion of the bankruptcy court. *In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996). The Court, however, need not substitute its judgment for that of the Parties. *See In re Neshaminy Office Bldg. Assoc's*, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The Court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement "falls below the lowest point in the range of reasonableness." *In re Penn. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993) (holding that to approve a compromise or settlement pursuant to Bankruptcy Rule 9019, the court must conclude that the compromise or settlement falls above the lowest point in the range of reasonableness).

19. The Third Circuit has enumerated four factors that should be considered in determining whether a settlement should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin,* 91 F.3d at 393 (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803). Consideration of these factors requires the Court to make an objective, informed comparison of the results of litigation versus the benefits of compromise. *See TMT Trailer*, 390 U.S. at 424.

20. **Probability of Success of Litigation.** The first factor is satisfied here because, in the absence of the Settlement Agreement, the Parties would need to litigate, among other things, issues related to the ownership of the Jack Erwin Shares and the Proofs of Claim, including whether there was a breach of any of the Agreements, the consequences of such a breach, and

whether the Jack Erwin Founders had authority to file the Jack Erwin Proof of Claim. While the Parties each believe that their position is valid with respect to the Jack Erwin Shares and the Proofs of Claim, there is no guarantee of a successful outcome for either Party. Without approval of the Settlement Agreement, the Parties will be forced to expend additional resources in the form of attorneys' fees and costs litigating the ownership of the Jack Erwin Shares and the validity of the Proofs of Claim, with no guarantee of a successful outcome. The approval of the Settlement Agreement will remove this uncertainty.

21. **Difficulties in Collection.** The second criterion favors approval of the Settlement Agreement. Even if the Jack Erwin Founders were to succeed in any litigation with respect to the Agreements, recovery on the claims would remain uncertain. Approval of the Settlement Agreement removes this uncertainty.

22. **The Complexity of Litigation Involved.** The third criterion strongly favors approval of the Settlement Agreement. The Parties, in consultation with their professionals, have determined that entry into the Settlement Agreement will save the time and expense associated with litigation of their underlying disputes, which could include a lengthy and complex evidentiary hearing as well as a lengthy and complex claims resolution process. The Parties largely disagree on whether there was a breach of the Agreements, the consequences of such a breach, and the calculation of damages arising from the Proofs of Claim. Thus, the Debtors submit that the complexity and expense factor weighs in favor of approving the Settlement Agreement.

23. **Paramount Interest to Creditors**. The fourth and final factor is also satisfied. The Settlement Agreement is in the best interest of the Debtors' creditors because it accomplishes a number of goals, including, but not limited to, mitigating further litigation costs and providing for a settlement that will lead to a confirmable plan. Confirmation of the plan is the best way that

creditors will receive as much distributions on their claims as possible. Further, the Debtors do not believe the Jack Erwin Shares represent any, let alone material, value to the Blank Label estate and so costly litigation will only diminish the possible returns for the Debtors' creditors. Thus, the Debtors submit that the interest to creditors factor weighs in favor of approving the Settlement Agreement.

24. Accordingly, the Debtors respectfully submit that consideration of the factors set forth above dictates that the Settlement Agreement satisfies the Third Circuit's requirements under Bankruptcy Rule 9019 in all respects, is a sound exercise of the Debtors' business judgment, and is in the best interests of the Debtors' estates.

### B. Request for Waiver of Stay

25. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. Bank. R. Pro. 6004(h). As set forth above, the Settlement Agreement provides a path to a successful confirmation that is in the best interest of the Debtors, their estates and their creditors. No need exists to delay consummation of that outcome. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### **NOTICE**

26. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel: (i) the Office of the U.S. Trustee; (ii) the Subchapter V Trustee.; (iii) the Jack Erwin Founders; (iv) BLG Holdings; (v) Holders of Secured Claims; (vi) Bi; (vii) Jack Erwin; (viii) the Holders of the 20 largest unsecured claims against the Debtors; and (ix) those parties requesting

9

notice pursuant to Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court (i) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: July 12, 2023  
      Wilmington, Delaware

**PASHMAN STEIN WALDER HAYDEN, P.C.**

*/s/ Joseph C. Barsalona II*  
Joseph C. Barsalona II (No. 6102)  
1007 North Orange Street, 4th Floor, Suite 183  
Wilmington, DE 19801-1242  
Telephone: (302) 592-6496  
Email: jbarsalona@pashmanstein.com

-and-

Richard C. Solow (admitted *pro hac vice*)  
Edward A. Cho-O'Leary  
The Woolworth Building  
233 Broadway, Suite 820  
New York, New York 10279  
Email: rsolow@pashmanstein.com

*Counsel to the Debtors and*  
*Debtors in Possession*