**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BLANK LABEL GROUP, INC., *et al.*,<br><br>Debtor.³ | Chapter 11<br><br>Case No. 23-10286 (JTD)<br><br>Jointly Administered<br><br>**Re: D.I. ___** |

### ORDER (I) APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG BLANK LABEL GROUP, INC. BLG HOLDINGS, LLC, FAN BI, JACK ERWIN INC. AND JACK ERWIN FOUNDERS, AND (II) GRANTING RELATED RELIEF

Pursuant to the motion (the "Motion")⁴ of the above-captioned debtors and debtors in possession (each, the "Debtor" or collectively the "Debtors") for entry of an order: (i) approving the terms and conditions of that certain *Settlement Agreement and Mutual Releases*, dated as of July 12, 2023 (the "Settlement Agreement"), attached hereto as **Exhibit 1**, by and between BLG Holdings, LLC ("BLG Holdings"), a non-debtor affiliate of Debtor Blank Label Group, Inc. ("Blank Label"), Fan Bi ("Bi"), Blank Label, Lane Gerson ("Gerson"), Ariel Nelson ("Nelson," and collectively with Gerson, the "Jack Erwin Founders"), and Jack Erwin, Inc. ("Jack Erwin," and collectively with the Jack Erwin Founders, the "Jack Erwin Parties," and collectively with BLG Holdings, Blank Label, and Bi, the "Parties," and each a "Party"), and (ii) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for

---

³ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Blank Label Group, Inc. (6183); BlackLapel Custom Clothiers, Inc. (3725); and Ratio Clothing, LLC (8330). The Debtors' mailing address is 36 Bromfield Street, 204, Boston, MA 02108.

⁴ Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b) in which the Court may enter a final order; and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion being sufficient under the circumstances; and it appearing that no other or further notice is necessary and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, and their creditors; and the Court having determined that the Debtors exercised sound business judgment to compromise the disputes related to the Motion, including the disagreements as set forth in the Motion; and after due deliberation and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion is GRANTED as set forth herein.

2. Pursuant to Bankruptcy Rule 9019, the Settlement Agreement is hereby approved in all respects.

3. The Parties to the Settlement Agreement are authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement Agreement and perform any and all obligations contemplated therein.

4. The Debtors are hereby authorized and empowered to take any and all steps necessary and appropriate to effectuate the terms of this Order.

5. The terms of the Settlement Agreement shall be binding upon all Parties to the Settlement Agreement and their successors and assigns, including the Debtors' bankruptcy estates and its creditors.

6.     To the extent applicable, Bankruptcy Rule 6004(h) is waived and this Order shall be effective and enforceable immediately upon entry.

7.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation, interpretation or enforcement of this Order.

**Exhibit 1**

## Settlement Agreement and Mutual Releases

This Settlement Agreement and Mutual Releases (this "Agreement") is entered into as of this 12th day of July, 2023, by and between Ariel Nelson, an individual ("Nelson") and Lane Gerson, an individual ("Gerson," together with Nelson, the "JE Founders"), Jack Erwin, Inc., a Delaware corporation ("JE," together with JE Founders, the "JE Parties"), Fan Bi, an individual ("Bi"), in his individual capacity and as Manager of BLG Holdings, LLC, a Delaware limited liability ("BLGH," together with Bi, the "BLGH Parties"), and Debtor-in-Possession, The Blank Label Group, Inc., a Delaware corporation ("Debtor"). The aforementioned parties are each referred to as a "Party," and collectively as the "Parties."

## Recitals

WHEREAS, JE Founders are founders and stockholders of JE;

WHEREAS, Bi is the sole Manager of BLGH;

WHEREAS, on or about August 15, 2022, JE, JE Founders, BLGH, and Debtor entered into a series of transactions which included a Stock Purchase Agreement, Consulting Agreements, Pledge Agreement, and Stockholders' Agreement (collectively, the "Underlying Transaction Documents");

WHEREAS, pursuant to the Underlying Transaction Documents, JE issued to BLGH 31,830,000 shares of JE's common stock, representing 60% of the fully diluted common stock of JE (the "JE Shares");

WHEREAS, pursuant to the Underlying Transaction Documents, BLGH and Debtor had obligations to JE and JE Founders, which JE Founders allege have not been fulfilled;

WHEREAS, pursuant to the Underlying Transaction Documents, upon an Event of Default (as defined therein), JE Founders are entitled to cause BLGH to relinquish the JE Shares;

WHEREAS, Bi has managed the operations of JE since the Underlying Transaction Documents were executed, with Bi as the sole director of JE;

WHEREAS, JE Founders have alleged that the JE Parties have claims against Bi related to Bi's management of JE;

WHEREAS, Bi denies the JE Parties' claims of purported mismanagement;

WHEREAS, on March 8, 2023 (the "Petition Date"), Debtor, along with certain of its affiliates, commenced a bankruptcy proceeding under Chapter 11, Subchapter V of the United States Bankruptcy Code, which is currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the case styled as *In re: Blank Label Group, Inc.*, Case No. 23-10286-JTD (the "Bankruptcy Case");

WHEREAS, the JE Parties have filed the following proofs of claim in the Bankruptcy Case: (i) Claim No. 15 filed by Nelson (the "Nelson Bankruptcy Claim"); (ii) Claim No. 16 filed by Gerson (the "Gerson Bankruptcy Claim"); and (iii) Claim No. 17 filed by JE (the "JE Bankruptcy Claim");

WHEREAS, Peter Furman ("CRO") has been appointed as Chief Restructuring Officer of Debtor, *nunc pro tunc* as of March 24, 2023 [ECF No. 110 in the Bankruptcy Case];

WHEREAS, CRO, in his business judgment following review and assessment, believes that the JE Shares hold very little value to the Debtor's estate;

WHEREAS, JE Founders allege that prior to the Petition Date, $200,000.00 USD was transferred from JE to Debtor's general operating account as prepayment of future JE employee payroll expenses, to be held in trust by Debtor for the benefit of JE's payroll obligations (the "Payroll Deposit");

WHEREAS, in addition to the Payroll Deposit, JE Founders allege that a minimum of $278,633.30 (the "Total Alleged Claim Amount"), was improperly transferred by Bi and/or at Bi's direction from JE's account after the Petition Date to various third-parties (the "Alleged Transfers");

WHEREAS, Bi disputes the JE Founders' allegations concerning the Alleged Transfers and maintains that he has substantial defenses to such claims;

WHEREAS, after discovering the Alleged Transfers, in an effort to preserve JE's remaining cash assets, CRO: (1) caused $125,000.00 USD to be transferred to Debtor's counsel's trust account, which remain in such account; and (2) retained $6,000.00 in the Debtors' bank accounts (the "JE Trust Funds");

WHEREAS, the JE Founders have been negotiating settlements with the CRO and Bi concerning BLGH's relinquishment of the JE Shares to JE and to resolve claims arising out of the Underlying Transaction Documents, the Alleged Transfers, and the Bankruptcy Case; and

WHEREAS, all Parties believe entering into this Agreement is in their best interest to avoid the expense of further or continued litigation.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Incorporation of Recitals.** The Recitals set forth above are hereby incorporated in and made a part of this Agreement by this reference.

2. **Relinquishment of JE Shares.**

BLGH hereby irrevocably relinquishes and assigns to JE the JE Shares and any and all other interest it holds in JE. BLGH expressly waives any right to notice and/or opportunity to cure under the Underlying Transaction Documents or any other documents or agreements related to the JE Shares or its interest in JE. BLGH waives any and all defenses it may have against such relinquishment. This relinquishment and waiver are unconditional as of the Effective Date. CRO, to the extent of his power and authority, consents to this relinquishment by BLGH of the JE Shares.

3.     **Resignation of Bi.**

Bi hereby resigns from his position as a director of JE. This resignation is irrevocable, immediate, and unconditional. Bi shall have no rights, claims, or interest in or to the position of director of JE.

4.     **Monetary Terms, Collateral, and Default between JE Founders and Bi.**

a.     **Settlement Payments.** Bi agrees to pay JE a total of $112,500.00 USD (the "Settlement Amount"), with $50,000.00 USD (the "Initial Payment") being due on or before July 12, 2023, and the remaining $62,500.00 USD to be payable in 24 equal monthly installments of $2,604.16 USD (the "Subsequent Payments") beginning on August 1, 2023, and due on the first business day of each month thereafter until paid in full. Bi shall wire the Initial Payment to the trust account of Norris, McLaughlin, PA ("NM"), Bi's counsel. Within one (1) business day of the Effective Date (as defined hereafter), NM shall transfer the Initial Payment into a JE account. Bi shall wire all Subsequent Payments into a JE account. Wire transfer instructions will be sent by Gerson to NM and Bi and will be confirmed verbally by NM and Bi before initiating any transfer. The JE Parties shall forbear from asserting any claims against Bi unless Bi fails to make a payment due under this Agreement and the expiration of the cure period for such payment elapses.

b.     **Early Payment Incentive.** If Bi pays the Settlement Amount in full by December 31, 2023 (the "Early Payment Deadline"), Bi will be entitled to a credit of $5,000.00 USD (the "Early Payment Incentive") from the total Settlement Amount. This Early Payment Incentive will be applied to the final payment(s) due by Bi under this Agreement.

c.     **Credit for Negotiated Debt Reduction.** Bi is authorized to attempt to negotiate a reduction in the debt owed by JE to Ramp Business Corporation, one of JE's creditors. Any reduction in the amount of this debt within 15 days following the Effective Date will result in a credit towards the Settlement Amount for Bi. The credit will be calculated as 35% of the difference between the debt amount listed on Schedule "A" and the newly agreed debt amount with Ramp Business Corporation. This credit is subject to written confirmation from Ramp Business Corporation of the debt reduction and that the payment of the reduced amount of debt will constitute a full satisfaction of all amounts due and owed by JE to Ramp Business Corporation   . This credit, if any, will be applied to the final payment(s) due by Bi under this Agreement.

d.     **Collateral.** In order to secure the payment of the Settlement Amount in accordance with the payment terms herein, Bi hereby pledges to JE all of his right,

title, and interest in and to all of the membership interests Hedgehog Ecommerce Corporation, Inc., a Delaware corporation, that he owns or controls, directly or indirectly, including all financial rights, distribution rights, voting rights, and all other rights and interests associated therewith (the "Collateral"), subject to the provisions of and upon the conditions specified in that certain Series Seed Preferred Stock Purchase Agreement dated June 9, 2022. Bi further represents and warrants that he is the lawful owner of the Collateral, that the Collateral is free and clear of all liens and encumbrances, that he has full power and authority to pledge the Collateral pursuant to this Agreement, and that if any consent(s) is/are required for Bi to be able to pledge the Collateral, that Bi has obtained such consent(s) in writing. Bi agrees to execute and deliver such other documents and take such other actions as may be reasonably necessary to perfect JE's security interest in the Collateral provided that all attorneys' fees, costs and expense associated with perfecting JE's security interest in the Collateral shall be borne by Bi. Bi agrees that if he defaults under this Agreement, JE may foreclose upon the Collateral by any means permitted under applicable law. This pledge is made in addition to, and not in substitution for, any other rights and remedies that JE may have under this Agreement or applicable law. Bi shall cause his counsel, at Bi's expense, to record UCC-1 financing statements for the benefit of JE within 5 days from the Effective Date in the states of Delaware, New York, and Massachusetts to protect JE's security interest in the Collateral, and to provide copies of such UCC-1 financing statements to JE Founders. Bi will not take any action to encumber the Collateral prior to recording of such financing statements and will not take any action to disturb JE's security interest in the Collateral.

e. **Default.** If any payment is not timely received under this Agreement, JE shall send notice of default to Melissa A. Peña, Esq., counsel for Bi, via e-mail at mapena@norris-law.com and Bi, via email, at hi@fan.bi. If payment is not received within 5 business days of the date JE sends notice, Bi shall be in default of this Agreement, whereupon JE shall be entitled to the entry of a judgment against Bi for the Total Alleged Claim Amount (less any payments actually received pursuant to this Agreement), plus reasonable attorneys' fees and costs incurred by JE Founders in connection with the negotiating and consummating this Agreement (stipulated to be $15,000.00 USD), and reasonable attorneys' fees and costs incurred by JE in enforcing this Agreement.

5. **Disbursement of JE Trust Funds.** Within 3 business days from the Effective Date, CRO will direct Debtor's counsel to cause the JE Trust Funds to be sent via wire transfer to JE. Wire transfer instructions will be sent by Nelson to CRO and will be confirmed verbally by CRO before initiating any transfer. Debtor may deduct all amounts paid for JE's payroll on and after June 1, 2023 and prior to the Effective Date, from the JE Trust Funds to be disbursed pursuant to this Section.

6. **Release of Claims.**

    a. **Releases Between JE Parties and Debtor.**

      i. **Release of Debtor, BLGH, and CRO by JE Parties.** JE Parties release and forever discharge Debtor, the Debtor's estate, the Debtor's professionals, BLGH, and CRO from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which JE Parties have or may have against any of them from the beginning of time through the Effective Date, including any claims that could have been brought under the United States Bankruptcy Code, including without limitation any claims that could have been brought under Chapter 5 of the United States Bankruptcy Code, excluding claims arising out of this Agreement.

      ii. **Release of JE Parties by Debtor, BLGH, and CRO.** Debtor, BLGH, and CRO release and forever discharge JE Parties from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which Debtor, BLHG, and/or CRO has or may have against any of them from the beginning of time through the Effective Date, including any claims that could have been brought under the United States Bankruptcy Code, including without limitation any claims that could have been brought under Chapter 5 of the United States Bankruptcy Code, excluding claims arising out of this Agreement.

  b. **Releases Between JE Parties and Bi.**

      i. **Release of Bi by JE Parties.** Except for the obligations set forth in this Agreement, effective only upon receipt by JE of the total Settlement Amount in full in cleared funds, JE Parties release and forever discharge Bi and Debtor's employees, agents, and contractors from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which JE Parties have or may have against them from the beginning of time through the Effective Date, including, but not limited to any claims that could have been brought under the United States Bankruptcy Code.

      ii. **Release of Connor Lees by JE Parties.** JE Parties release and forever discharge Connor Lees, an individual, from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which JE Parties have or may have against him from the beginning of time through the Effective Date, including, but not to any claims that could have been brought under the United States Bankruptcy Code.

      iii. **Release of JE Parties by Bi**. Except for his obligations under this Agreement, Bi releases and forever discharges JE Parties from any and all causes of action, claims, actions, rights, judgments, obligations,

damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which Bi has or may have against them from the beginning of time through the Effective Date, including, but not limited to any claims that could have been brought under the United States Bankruptcy Code.

7. **Parties' Representations.**

The Parties hereby acknowledge and agree that each Party is relying upon the representations and warranties set forth in this Section in entering into this Agreement and the transactions contemplated hereby.

    a.    **Representations by Bi.** Bi represents and warrants to JE Parties that to the best of Bi's knowledge:

        i.    He has the full legal power, capacity, and authority to enter into this Agreement, to carry out his obligations hereunder, and to consummate the transactions contemplated hereby;

        ii.    BLGH is the legal and beneficial owner of the JE Shares, free and clear of any liens, charges, or encumbrances.

        iii.    Bi's personal financial statement signed under penalty of perjury and provided to JE Founders in connection with the negotiation of this Agreement is a full and materially accurate representation of Bi's worldwide personal assets and liabilities as of the date of execution of this Agreement.

        iv.    A complete and accurate itemized list of JE's assets, as of the date of execution of this Agreement, including but not limited to cash in accounts, inventory, and intellectual property, is included in Schedule "A" attached hereto, and all such assets are free and clear of any liens, charges, or encumbrances, other than as expressly listed in Schedule "A."

        v.    A complete and accurate itemized list of JE's known debts, obligations, and liabilities of any nature, whether accrued, absolute, continent, or otherwise, as of the date of execution of this Agreement, is included in Schedule "A," and there are no other known liabilities of JE other than as set for in Schedule "A."

        vi.    There are no actions, suits, investigations, or proceedings pending or threatened against JE.

        vii.    To the best of his knowledge, JE is in compliance with all applicable federal, state, and local laws and regulations, and there are no outstanding orders, writs, injunctions, judgments, or decrees against JE from any court or government agency.

    b.    **Representations by Debtor and CRO.** To the best of their knowledge and understanding, Debtor and CRO represent and warrant to JE Founders that (i)

CRO has full power and authority to execute and deliver this Agreement and to perform his obligations hereunder; (ii) the execution, delivery, and performance of this Agreement by CRO has been duly authorized by all necessary actions; and (iii) CRO consents to the execution of this Agreement and the transactions contemplated herein. Additionally, CRO represents and warrants to JE Founders that CRO has no actual knowledge of any facts that would make the representations made by Bi in Section 7(a)(i), (ii) and (vi) (other than threatened litigation against JE by the JE Founders) materially inaccurate or misleading as of the date hereof.

8. **Waiver of Claims and Indemnification.**

   a. **Waiver of Claims by JE Parties Against Third Parties.** From the Effective Date of this Agreement, unless Bi fails to make a payment due under this Agreement and the expiration of the cure period for such payment elapses, the JE Parties shall not cause JE to pursue any claims against any third parties for receiving any of the Alleged Transfers. Upon Bi's full and timely payment of the Settlement Amount, JE Parties agree that they will not cause JE to pursue any claims against any third parties for receiving any of the Alleged Transfers and they shall be deemed to waive such claims. Notwithstanding the foregoing, as of the Effective Date, JE Parties forever waive and agree not to pursue any independent claim the Debtor may assert against any such third parties for receiving any of the Alleged Transfers.

   b. **Indemnification by JE Parties.** Subject to the terms of this Agreement and Bi's full compliance with his obligations hereunder, JE Founders agree that the JE Parties will indemnify and hold harmless Bi from any causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities that may be asserted against either of them to enforce the debts owed by JE to Highbeam, Shopify Capital, or Ramp Business Corporation as of the Effective Date, as detailed in Schedule "A."

   c. **Waiver of Rights Under Underlying Transaction Documents.** Bi, BLGH, and Debtor hereby unconditionally and irrevocably waive any and all rights, claims, interests, and benefits they may have under any of the Underlying Transaction Documents.

   d. **Bankruptcy Claims.** JE Parties and Debtor agree that: (i) the JE Bankruptcy Claim will be withdrawn within 3 days following the Effective Date; and (ii) Debtor will not object to the allowance of the Nelson Bankruptcy Claim and Gerson Bankruptcy Claim in the Bankruptcy Case. Nelson and Gerson agree to vote the Nelson Bankruptcy Claim and Gerson Bankruptcy Claim, respectively, in favor of the forthcoming Chapter 11 plan to be proposed by Debtor and JE Parties agree not to object to or interfere with any action by Debtor, or any representative of the Debtor's estate, to recover any funds from any third-parties.

9. **Non-Disparagement.**

The JE Parties and the BLGH Parties understand and agree that neither they, nor their attorneys, employees, successors and assigns will, directly or indirectly, disparage any of the other parties or make any statements, oral or written, referring or relating in any way to the Underlying Transaction Document, JE, the management of JE or the Alleged Transfers, which statements have the purpose of, or effect of, injuring or in any way detracting from the other parties' reputation or cause any person or entity to refrain from, or cease, any employment or business with such party. The JE Parties and BLGH Parties acknowledge and agree that this non-disparagement provision is a material clause of this Agreement. They further acknowledge and agree that if any party directly or indirectly breaches, violates, or fails to abide by the terms of this non-disparagement provision (hereinafter referred to as "Non-Disparagement Default"), each Non-Disparagement Default shall cause immediate and irreparable harm to the non-defaulting, affected party, in a manner which cannot be adequately and solely compensated in monetary damages. The JE Parties and BLGH Parties agree that in the event of any such Non-Disparagement Default, the non-defaulting, affected party shall, in addition to all other available remedies and recovery of damages at law or in equity, be entitled to temporary, preliminary and permanent injunctive relief to restrain such Default(s) by the defaulting party or others acting in concert with the defaulting party. Nothing contained herein shall restrict or limit in any manner a party's right to obtain any form of relief, legal or equitable, in an action brought to enforce their rights. Notwithstanding anything to the contrary herein, this Section shall be deemed null and void if Bi defaults under this Agreement after any applicable notice and cure period.

10. **Non-Admission of Liability.**

The Parties understand and agree that the Settlement Payment is being paid as a compromise of disputed claims. The Parties understand and agree that neither the payment nor this Agreement is an admission of liability by the Parties. Rather, the Agreement is made for the purpose of ending disputed claims. The Parties further understand and agree that the settlement of the claims referred to herein, the Settlement Payment, this Agreement, and/or its terms, shall not be construed as, or deemed to be, or evidence an admission or concession by any party with respect to any wrongdoing, fault or omission of any kind whatsoever.

11. **Cooperation**.

Bi agrees to cooperate fully with JE Founders in their efforts to assume control over JE and will not interfere with JE Founders in any way. This includes, but is not limited to, providing all necessary credentials, access codes, keys, and other forms of access to JE accounts. Bi will also take all necessary steps to remove his access from any JE bank accounts, financial accounts, or any other account(s) associated with JE. Within 5 days following the execution of this Agreement, Bi shall surrender and deliver to JE Founders all books, records, and other documents (the "JE Documents"), including but not limited to financial statements, ledgers, invoices, contracts, electronic files, emails, and other accounting records, pertaining to the operations, activities, and transactions of JE to the extent Bi has such documents in his possession. Bi agrees to take no action to transfer any assets of JE or to incur any liabilities on behalf of JE, without the express

written consent of JE Founders. The JE Parties shall be responsible for all preparation and filing of tax returns for JE for all tax years. The JE Parties will cooperate and make available the JE Documents to CRO and Debtor solely for the purposes of Debtor's need to file a tax return on its own behalf or other debtor affiliates to account for the transactions contemplated herein.

12. **Court Approval & Interim Period.**

This Agreement is subject to the approval of the Bankruptcy Court. Debtor shall promptly prepare a motion under Fed. R. Bankr. 9019 for Court approval of this Agreement (the "9019 Motion") and proposed order granting same, with the Bankruptcy Court retaining jurisdiction to enforce the terms of this Agreement. Prior to filing, Debtor shall provide drafts of the 9019 Motion and proposed order to counsel for JE Founders and counsel for Bi for review and comment. Any disputes regarding the content of the motion and proposed order will be resolved in good faith, whereupon Debtor shall file on an expedited basis and seek a Court order approving the terms of this Agreement. This Agreement shall become effective as of the date on which the Bankruptcy Court's order approving the Agreement under Fed. R. Bankr. P. 9019 becomes final and non-appealable (the "Effective Date").

If for any reason the Bankruptcy Court does not approve this Agreement, the JE Parties and Bi shall negotiate, in good faith, to determine if they can enter into a separate agreement without the Debtor. Within one (1) business day of the Bankruptcy Court's denial of the 9019 Motion, NM shall wire the Initial Payment to Bi.

Following the execution of this Agreement and prior to the Effective Date (the "Interim Period"), JE Founders and/or their agent(s) or designee(s) will manage and operate the JE business (including, but not limited to having full access to JE's Highbeam account) and Debtor shall have no responsibility or liability with respect to JE's business operations during the Interim Period.

13. **Miscellaneous.**

   a. **No Tax Representations.** Each Party acknowledges that no other Party, nor any person acting on behalf of any other Party, has provided any tax advice nor made any representation or warranty regarding the tax consequences of the transactions contemplated by this Agreement. Each Party understands that the tax consequences may be different than expected and assumes full responsibility for the tax consequences of this Agreement.
   b. **Governing Law and Venue.** This Agreement is governed by and construed in accordance with the laws of the State of Delaware, without regard to any conflict of laws principles. Any action to enforce this Agreement shall be brought before the Bankruptcy Court. If the Bankruptcy Court declines to retain jurisdiction to enforce this Agreement, any dispute between the JE Parties and Bi related to this Agreement shall be brought in a court of competent jurisdiction in Delaware and all Parties hereby consent to the personal jurisdiction of the state and federal courts located within the State of Delaware for any action arising out of or related to this Agreement and waive any defenses related to personal jurisdiction.

 c. **Attorneys' Fees.** Each Party shall bear its own costs and expenses, including legal fees and expenses, incurred in connection with the negotiation, execution, and performance of this Agreement.  In the event of any litigation or other proceeding between any of the JE Parties and Bi to enforce their rights under this Agreement or seek a declaration of any rights or obligations under this Agreement, the prevailing Party shall be awarded its reasonable attorneys' fees and costs.

 d. **Entire Agreement.** This Agreement, including all schedules hereto, constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof.

 e. **Amendment.** This Agreement may not be amended, modified, or supplemented except by an instrument in writing signed by the Party against whom enforcement of any such amendment, modification, or supplement is sought.

 f. **Waiver.** The failure of any Party hereto to exercise any right, power, or remedy provided under this Agreement, or to insist upon compliance by any other Party with its obligations hereunder, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

 g. **Construction.** All Parties were involved in the drafting, preparation, and negotiation of this Agreement and, therefore no provision of this Agreement will be construed against or interpreted to the disadvantage of any Party.

 h. **Counterparts.** This Agreement may be executed in counterparts by electronic, digital, or other means, each of which shall be deemed an original.

 i. **Severability.** If any provision of this Agreement is held to be illegal, invalid, or unenforceable under any present or future law, and if the rights or obligations of any Party hereto under this Agreement will not be materially and adversely affected thereby, (i) such provision will be fully severable, (ii) this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof, (iii) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision or by its severance, and (iv) in lieu of such illegal, invalid, or unenforceable provision, there will be added automatically as a part of this Agreement a legal, valid, and enforceable provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible.

**[Remainder of page intentionally left blank.  Signature page follows.]**

**THE PARTIES HAVE CAREFULLY READ THIS ENTIRE AGREEMENT. THE PARTIES FULLY UNDERSTAND THE FINAL AND BINDING EFFECT OF THIS AGREEMENT. THE ONLY PROMISES MADE TO ANY PARTY ABOUT THIS AGREEMENT ARE CONTAINED IN THIS AGREEMENT. THE PARTIES ARE SIGNING THIS AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first set forth above.

| **JE PARTIES:** | **BI:** |
|---|---|
| **ARIEL NELSON** | **FAN BI** |
| *Ariel Nelson* | *Fan Bi* <br> Fan Bi (Jul 12, 2023 18:17 EDT) |
| Ariel Nelson, Individually and as Company Representative of Jack Erwin, Inc. pursuant to Section 7.14 of the Stock Purchase Agreement dated August 15, 2022 | Fan Bi, Individually |
| **LANE GERSON** | |
| *Lane Gerson* | |
| Lane Gerson, Individually and as Company Representative of Jack Erwin, Inc. pursuant to Section 7.14 of the Stock Purchase Agreement dated August 15, 2022 | |
| **DEBTOR:** | **BLGH:** |
| **THE BLANK LABEL GROUP, INC.** | **BLG HOLDINGS, LLC** |
| /s/ Peter Furman | *Fan Bi* <br> Fan Bi (Jul 12, 2023 18:17 EDT) |
| Peter Furman, Chief Restructuring Officer | Fan Bi, Manager |

**Schedule A**

| Assets* | |
|---|---:|
| Pashman-Stein IOTA Account | $125,000.00 |
| Highbeam Balance as of 6.26.23 | $2,010.44 |
| PayPal | $10,609.95 |
| Inventory | $431,280.00 |
| Sum | $568,900.39 |

| Debts* | |
|---|---:|
| Highbeam Line of Credit | $8,456.96 |
| Shopify Capital | $53,552.30 |
| Ramp Financial | $98,224.97 |
| Pilot (Approx) | $5,000.00 |
| Sales Tax (Approx) | $20,000.00 |
| ITB Fulfillment # 1158 | 14,343.65 |
| Total | $199,577.88 |

Signature: *Ariel Nelson*
Ariel Nelson (Jul 12, 2023 18:57 EDT)
Email: ariel@centigradelogistics.com

Signature: *Lane Gerson*
Email: lane@centigradelogistics.com

# Blank Label - JE Settlement Agreement and Mutual Releases (Execution Version) (3451304.4)

Final Audit Report                                                                 2023-07-12

| | |
|---|---|
| Created: | 2023-07-12 |
| By: | Richard Solow (rsolow@pashmanstein.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA6i_jiDLMJ752aBYWMyt3Ah9eEitTF53F |

## "Blank Label - JE Settlement Agreement and Mutual Releases (Execution Version)(3451304.4)" History

- Document created by Richard Solow (rsolow@pashmanstein.com)
  2023-07-12 - 7:21:20 PM GMT

- Document emailed to hi@fan.bi for signature
  2023-07-12 - 7:23:10 PM GMT

- Document emailed to ariel@centigradelogistics.com for signature
  2023-07-12 - 7:23:10 PM GMT

- Document emailed to Lane Gerson (lane@centigradelogistics.com) for signature
  2023-07-12 - 7:23:10 PM GMT

- Richard Solow (rsolow@pashmanstein.com) replaced signer hi@fan.bi with Fan BI (hi@fan.bi)
  2023-07-12 - 7:23:48 PM GMT

- Document emailed to Fan BI (hi@fan.bi) for signature
  2023-07-12 - 7:23:48 PM GMT

- Richard Solow (rsolow@pashmanstein.com) replaced signer ariel@centigradelogistics.com with Ariel Nelson (ariel@centigradelogistics.com)
  2023-07-12 - 7:24:09 PM GMT

- Document emailed to Ariel Nelson (ariel@centigradelogistics.com) for signature
  2023-07-12 - 7:24:09 PM GMT

- Email viewed by Lane Gerson (lane@centigradelogistics.com)
  2023-07-12 - 8:00:38 PM GMT

Adobe Acrobat Sign

Email viewed by Ariel Nelson (ariel@centigradelogistics.com)
2023-07-12 - 8:00:44 PM GMT

Document e-signed by Lane Gerson (lane@centigradelogistics.com)
Signature Date: 2023-07-12 - 8:01:07 PM GMT - Time Source: server

Email viewed by Fan BI (hi@fan.bi)
2023-07-12 - 9:07:39 PM GMT

Document e-signed by Fan BI (hi@fan.bi)
Signature Date: 2023-07-12 - 10:17:43 PM GMT - Time Source: server

Document e-signed by Ariel Nelson (ariel@centigradelogistics.com)
Signature Date: 2023-07-12 - 10:57:37 PM GMT - Time Source: server

Agreement completed.
2023-07-12 - 10:57:37 PM GMT

Adobe Acrobat Sign