**<u>Exhibit 1</u>**

*Execution Version*

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into as of this 18th day of October, 2023, by and between (i) Blank Label Group, Inc., a Delaware Corporation ("Blank Label"), (ii) BlackLapel Custom Clothiers, Inc., a Delaware Corporation ("BlackLapel"), (iii) Ratio Clothing, LLC, an Ohio Limited Liability Company ("Ratio Clothing," and collectively with Blank Label and BlackLapel, the "Debtors"), and (iv) Settle Funding, LLC (with its affiliates, predecessors, successors, and assigns, individually and collectively, "Settle," and together with the Debtors, the "Parties," and each a "Party").

## RECITALS

WHEREAS, the Debtors filed voluntary petitions for relief commencing cases (the "Chapter 11 Cases," and each a "Chapter 11 Case") under subchapter V of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 8, 2023 (the "Petition Date");[1]

WHEREAS, on July 21, 2023, the Debtors filed their *Subchapter V Debtors' Plan of Liquidation* [D.I. 197] (the "Plan");

WHEREAS, Settle timely filed proof of claim no. 4 in BlackLapel's Chapter 11 Case, asserting a secured claim in the amount of at least $448,840.46 (the "Settle Claim") plus, amongst other things, interest and fees which continued to accrue, with a lien on substantially all of BlackLapel's personal property (the "BlackLapel Collateral");

WHEREAS, BlackLapel filed a *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548, and 550 and to Disallow and Reclassify Claims Pursuant to 11 U.S.C. § 502*, Case No. 23-50412 (JTD) (the "Settle Adversary Proceeding") on June 23, 2023, which: (1) challenged the extent and priority of the Settle Claim; and (2) sought recovery of purported preferential transfers made to Settle;

WHEREAS, Settle disputes the allegations asserted by BlackLapel in the Settle Adversary Proceeding and filed its answer thereto on July 24, 2023 [D.I. 4, Case No. 23-50412 (JTD)];

WHEREAS, the Debtors conducted an auction on May 15, 2023, whereby the Debtors sold substantially all of their assets, including the BlackLapel Collateral (the "Sale"), for a total of $1,250,000.00 (the "Sale Proceeds") to H.M. Cole, LLC (the "Buyer");

WHEREAS, the Bankruptcy Court entered an order approving the Sale on May 25, 2023 [D.I. 154] (the "Sale Order");

WHEREAS, the Proceeds Allocation (as defined in the Sale Order) of the Sale Proceeds was as follows: (1) $200,000.00 for Blank Label's assets; (2) $700,000.00 for BlackLapel's assets;

---

[1] Unless otherwise indicated herein, docket entry references identified herein refer to the lead docket of *In re Blank Label Group, Inc.*, Case No. 23-10286 (JTD).

(3) $200,000.00 for Ratio Clothing's assets; and (4) a "Transition Management Fee"[2] in the amount of $150,000.00 (items (1) through (4) collectively, and as defined in the Sale Order, the "Escrowed Funds");

WHEREAS, pursuant to paragraph 22 of the Sale Order, the Escrowed Funds were placed in an escrow account with Debtors' counsel (the "Escrow Account");

WHEREAS, consistent with the Sale Order, Settle asserts a lien in the amount of the Settle Claim, plus interest and attorneys' fees to the extent it is oversecured, on the Escrowed Funds in the Escrow Account;

WHEREAS, the Debtors filed a motion on July 13, 2023 to surcharge the BlackLapel Collateral, among other collateral, to recover certain fees and expenses of the Debtors' professionals and the Subchapter V trustee appointed the Chapter 11 Cases (the "Surcharge Motion");

WHEREAS, the Bankruptcy Court entered an order approving the Surcharge Motion over Settle's objection on August 4, 2023 (the "Surcharge Order");

WHEREAS, the Buyer and Debtors are engaged in certain disputes with respect to the Sale.

WHEREAS, the Buyer filed its *Motion of H.M. Cole, LLC for Payment of $100,000 Transition Management Fee* [D.I. 258] on October 10, 2023 (the "Buyer's Transition Management Fee Motion"), seeking to disburse $100,000.00 of the Transition Management Fee to the Buyer, which is a portion of the Escrowed Funds.

WHEREAS, all Parties believe entering into this Agreement is in their best interest to avoid the expense of further or continued litigation.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## INCORPORATION OF RECITALS

**1.01** *Incorporation of Recitals*. The recitals set forth above are hereby incorporated in and made a part of this Agreement by this reference.

## ARTICLE II
## 9019 MOTION

**2.01** *9019 Motion.* The Debtors shall prepare and file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking Bankruptcy Court

---

[2] The term "Transition Management Fee" is defined in the Asset Purchase Agreement documenting the Sale [D.I. 148] and the Sale Order.

approval of the terms of this Agreement (the "9019 Motion"). The order approving the 9019 Motion (the "9019 Order"), which the Debtors will prepare in consultation with Settle, shall be binding on all successors of interests to the Debtors, their estates and all other parties in interest in the Chapter 11 Cases, including any trustee subsequently appointed for the Debtors' estates under any chapter of the Bankruptcy Code.

**2.02    *Effective Date.*** This Agreement shall become effective as of the date on which the 9019 Order becomes final and non-appealable (the "Effective Date").

**ARTICLE III**
**ALLOWANCE OF SETTLE CLAIM, CASH PAYMENT AND PAYMENTS FROM LITIGATION TRUST**

**3.01    *Allowance of Settle Claim.*** The Settle Claim shall be allowed in the amount of $448,840.46, plus attorney's fees and interest at the federal judgment rate as of the Petition Date (the "Allowed Settle Claim"). The Debtors acknowledge that the Allowed Settle Claim is oversecured based on the balance of the Escrowed Funds.

**3.02    *Surcharge.*** The Allowed Settle Claim shall not be net of the surcharge amounts approved in the Surcharge Order. In addition, the Allowed Settle Claim and any collateral or other property or interests securing the same shall not be subject to any future surcharge, including under section 506(c) of the Bankruptcy Code, and the equities of the case exception under section 552 of the Bankruptcy Code shall not apply.

**3.03    *Cash Payment.*** Within three (3) business days of entry of the order approving the 9019 Motion, the Debtors shall remit $150,000.00 from the Escrow Account to Settle (the "Cash Payment") towards the Allowed Settle Claim.

**3.04    *Payments from Litigation Trust.*** The balance of the Allowed Settle Claim shall be paid from the Litigation Trust (as defined in the Plan). Any distributions or other payments (other than payments made in accordance with the Budget (defined below)) from the Litigation Trust (as defined in the Plan) shall first be made to Settle to satisfy the Allowed Settle Claim before any other distribution or payment is made from the Litigation Trust pursuant to the Plan (each, a "Distribution Date"). Each Distribution Date shall be governed by the terms of the Plan; *provided*, *however*, that the Parties or their successors may modify the payment schedule based on the needs of the Litigation Trust.

**ARTICLE IV**
**UTILIZATION OF CASH COLLATERAL AND ADEQUATE PROTECTION**

**4.01    *Utilization of Cash Collateral.*** After remittance of the Cash Payment, the Debtors shall be permitted to utilize the remaining amounts in the Escrow Account ("Settle's Cash Collateral") subject to the terms of this Agreement.

**4.02    *Adequate Protection.*** Settle's Cash Collateral shall be afforded adequate protection, as that term is defined in section 361 of the Bankruptcy Code, which shall include:

1. A 13-week budget setting forth projected sources and uses by the Litigation Trust of the Cash Collateral (the "Initial Budget," and any subsequent budget thereafter, the "Budget"). The Initial Budget shall be completed within two (2) weeks of the effective date of this Agreement; provided, that notwithstanding Section 4.01, the Debtors shall not be entitled to use Settle's Cash Collateral until such Initial Budget (or subsequent Budget) is provided by the Debtors and agreed to by Settle.

2. A monthly variance report (the "Variance Report"), with the first Variance Report due two (2) weeks after the Initial Budget is sent to Settle.

3. Interest on the Settle Claim in the amount of the federal judgment rate that will be paid on the Distribution Date

4. Settle's attorney's reasonable fees and expenses, commencing with the work performed on or after the date of this Agreement ("Attorney Fees"), to be paid on each Distribution Date.

5. As adequate protection for and solely to the extent of any diminution in the value, from and after the date of this Agreement through confirmation of a Plan, of Settle's interests in Settle's Cash Collateral resulting from the Debtors' the use thereof, the Debtor shall and hereby does grant to the Settle an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected first-priority postpetition security interest in and liens on (the "Adequate Protection Liens") on all claims and causes of action of the Debtors, including but not limited to claims and causes of action under chapter 5 of the Bankruptcy Code and Bankruptcy Code section 724(a) (collectively "Avoidance Actions") and all proceeds thereof and property received thereby, whether by judgment, settlement, or otherwise, whether pursuant to federal or applicable state law.

6. As of the Effective Date of this Agreement, pursuant to Bankruptcy Code section 507(b), Settle shall be and hereby is granted an allowed superpriority administrative expense claim for the diminution in the value (as determined under applicable bankruptcy law) of Settle's Cash Collateral through confirmation of a Plan.

For the avoidance of doubt, the Debtors shall not be required to make any: (1) monthly interest payments; or (2) periodic adequate protection payments.

### ARTICLE V
### RESOLUTION OF SETTLE ADVERSARY PROCEEDING, RELEASE OF CLAIMS, BUYER'S TRANSITION FEE MOTION, AND SETTLE'S SUPPORT FOR THE PLAN

**5.01** *Resolution of Settle Adversary Proceeding.*  The Settle Adversary Proceeding shall be fully resolved.  Within one (1) week of entry of the 9019 Order, the Parties shall enter into and file a stipulation to dismiss the Settle Adversary Proceeding with prejudice.

**5.02** *Release of Claims by the Debtors.*  The Debtors shall forever release and forever discharge Settle and any and all of its affiliates, agents, employees, professionals, predecessors and

successors (collectively, the "Settle Released Parties") from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which the Debtors have or may have against any of them from the beginning of time through the Effective Date, including any claims that could have been brought under the United States Bankruptcy Code, including without limitation any claims that could have been brought under Chapter 5 of the United States Bankruptcy Code, excluding claims arising out of this Agreement.

**5.03    *Release of Claims by Settle.*** Settle shall forever release and forever discharge the Debtors, the Debtors' current management (which consists of Peter Furman of HunterPoint LLC and John Bambach) and the Debtors' professionals from any and all causes of action, claims, actions, rights, judgments, obligations, damages, demands, accountings, or liabilities of whatever kind or character, whether known or unknown, matured or unmatured, which Settle has or may have against any of them from the beginning of time through the Effective Date relating to the Settle Claim and the Debtors' Chapter 11 Cases, including any claims that could have been brought under the United States Bankruptcy Code, including without limitation any claims that could have been brought under Chapter 5 of the United States Bankruptcy Code, excluding claims arising out of this Agreement; provided, however, for the avoidance of doubt, this release shall not apply to the Debtors' prior management, including Fan Bi, nor to the Buyer.

**5.04    *Buyer's Transition Management Fee Motion.*** The Debtors shall file a written objection to the Buyer's Transition Management Fee Motion (the "Debtors' Objection to the Buyer's Transition Management Fee Motion"). Settle shall either: (1) join the Debtors' Objection to the Buyer's Transition Management Fee Motion; or (2) supplement the Debtors' Objection to the Buyer's Transition Management Fee Motion with its own objection.

**5.05    *Amendments to the Plan and Settle's Support.*** The Plan and all documents related to or governing the Litigation Trust shall be amended or modified to incorporate the terms of this Agreement (the "Amended Plan"). No Amended Plan or documents relating to the Litigation Trust may be filed without the consent (which consent shall not be unreasonably withheld) of Settle. Settle shall support the Amended Plan, and accordingly file any documents reasonably necessary for such support, including, but not limited to, statements in support of the Amended Plan and responses to objections to the Amended Plan.

**5.06    *Failure to Confirm the Plan.*** In the event the Debtors fail to confirm a Plan implementing the terms of this Agreement or that these Chapter 11 Cases are converted to liquidation under Chapter 7 of the Bankruptcy Code prior to confirming such Plan, (i) Settle's consent to the Debtors' use of the BlackLapel Collateral shall immediately and automatically terminate and (ii) the Debtors or any successor trustee shall immediately satisfy the balance of the Allowed Settle Claim by distributing an equal amount of the remaining BlackLapel Collateral to Settle, *provided, however*, (a) that Settle must in good faith support the Debtors' efforts to effectuate the terms of any Plan that implements the terms of this Agreement; (b) Settle cannot take any action to convert the Chapter 11 Cases unless the Debtors or their successor are in violation of this Agreement; and (c) if Settle does wish to take any action to convert the Chapter 11 Cases, Settle must provide the Debtors or their successor seven (7) days' advance written notice of such actions and permit the Debtors a reasonable opportunity to cure such violation within fourteen (14) days' of receipt of

such notice.  For the avoidance of doubt, Settle understands that the Amended Plan may be further modified or adjusted (a "Modified Amended Plan"), and Settle shall support the Modified Amended Plan assuming such Modified Amended Plan adequately incorporates the terms of this Agreement.

# VI
# GENERAL PROVISIONS

**6.01**    *No Tax Representations*.  Each Party acknowledges that no other Party, nor any person acting on behalf of any other Party, has provided any tax advice nor made any representation or warranty regarding the tax consequences of the transactions contemplated by this Agreement. Each Party understands that the tax consequences may be different than expected and assumes full responsibility for the tax consequences of this Agreement.

**6.02**    *Governing Law and Venue*.  This Agreement is governed by and construed in accordance with the laws of the State of Delaware, without regard to any conflict of laws principles.

**6.03**    *Attorneys' Fees*.  Except as otherwise provided herein, each Party shall bear its own costs and expenses, including legal fees and expenses, incurred in connection with the negotiation, execution, and performance of this Agreement.

**6.04**    *Entire Agreement*.  This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof.

**6.05**    *Jurisdiction; No Jury Trial*.  The Parties hereto agree that the Bankruptcy Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or breach hereof.   EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**6.06**    *Notices*.   All notices, requests and other communications hereunder will be deemed to have been duly given when (a) delivered to the appropriate address by hand delivery or by nationally recognized overnight courier service (costs prepaid), or (b) sent by facsimile or e-mail, in each case, if sent during the normal business hours of the recipient, with confirmation of transmission by the transmitting equipment confirmed with a copy delivered as provided in clause (a), and in the case of each of clauses (a) and (b), to the following addresses or e-mail addresses and marked to the attention of the person (by name or title) designated below (or to such other address, e-mail address or person as a party may designate by notice to the other party):

If to Debtors:
Peter Furman
HunterPoint LLC
641 Lexington Ave., 13th Floor
New York, NY 10022

Email: pfurman@hunterpoint.com

with a copy to:
Joseph C. Barsalona II
Pashman, Stein, Walder & Hayden P.C.
1007 North Orange Street, 4th Floor, Suite 183
Wilmington, DE 19801-1242
Email: jbarsalona@pashmanstein.com

If to Settle:

Aleksander Koenig
346 Barrett Dr
B 5578
Stateline, NV 89449-5578
alek@settle.co
214-218-0927

    and

with a copy to:
Jarret P. Hitchings
Bryan Cave Leighton Paisner
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Email: jarret.hitchings@bclplaw.com

**6.07**   *Amendment.*   This Agreement may not be amended, modified, or supplemented except by an instrument in writing signed by the Party against whom enforcement of any such amendment, modification, or supplement is sought.

**6.08**   *Waiver.*   The failure of any Party hereto to exercise any right, power, or remedy provided under this Agreement, or to insist upon compliance by any other Party with its obligations hereunder, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

**6.09**   *Construction.*   All Parties were involved in the drafting, preparation, and negotiation of this Agreement and, therefore no provision of this Agreement will be construed against or interpreted to the disadvantage of any Party.

**6.10**   *Counterparts.*   This Agreement may be executed in counterparts by electronic, digital, or other means, each of which shall be deemed an original.

**6.11**   *Severability.*   If any provision of this Agreement is held to be illegal, invalid, or unenforceable under any present or future law, and if the rights or obligations of any Party hereto

under this Agreement will not be materially and adversely affected thereby, (i) such provision will be fully severable, (ii) this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof, (iii) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision or by its severance, and (iv) in lieu of such illegal, invalid, or unenforceable provision, there will be added automatically as a part of this Agreement a legal, valid, and enforceable provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible.

**[Remainder of page intentionally left blank.  Signature page follows.]**

**THE PARTIES HAVE CAREFULLY READ THIS ENTIRE AGREEMENT.  THE PARTIES FULLY UNDERSTAND THE FINAL AND BINDING EFFECT OF THIS AGREEMENT.  THE ONLY PROMISES MADE TO ANY PARTY ABOUT THIS AGREEMENT ARE CONTAINED IN THIS AGREEMENT.  THE PARTIES ARE SIGNING THIS AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first set forth above.

**SETTLE FUNDING, LLC**                    **THE BLANK LABEL GROUP, INC.**

_Peter Furman_

_____                    _____
Aleksander Koenig, CEO                     Peter Furman, Chief Restructuring Officer

**BLACKLAPEL CUSTOM CLOTHIERS, INC.**

_Peter Furman_

_____
Peter Furman, Chief Restructuring Officer

**RATIO CLOTHING, LLC**

_Peter Furman_

_____
Peter Furman, Chief Restructuring Officer

DocuSign Envelope ID: 55DC2B5E-E853-46FC-A82E-84A588E26630

**THE PARTIES HAVE CAREFULLY READ THIS ENTIRE AGREEMENT. THE PARTIES FULLY UNDERSTAND THE FINAL AND BINDING EFFECT OF THIS AGREEMENT. THE ONLY PROMISES MADE TO ANY PARTY ABOUT THIS AGREEMENT ARE CONTAINED IN THIS AGREEMENT. THE PARTIES ARE SIGNING THIS AGREEMENT VOLUNTARILY.**

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date first set forth above.

**SETTLE FUNDING, LLC**                          **THE BLANK LABEL GROUP, INC.**

*Aleksander Koenig*  10/18/2023
_____                          _____
Aleksander Koenig, Manager                       Peter Furman, Chief Restructuring Officer

                                                 **BLACKLAPEL CUSTOM CLOTHIERS, INC.**

                                                 _____
                                                 Peter Furman, Chief Restructuring Officer

                                                 **RATIO CLOTHING, LLC**

                                                 _____
                                                 Peter Furman, Chief Restructuring Officer