IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BLANK LABEL GROUP, INC., *et al.*, [1] | ) | Case No. 23-10286 (JTD) |
| | ) | |
| Debtors | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: November 29, 2023 at 4:00 p.m.** |
| | ) | **Hearing Date: December 6, 2023 at 2:00 p.m.** |

**MOTION OF H.M. COLE, LLC FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

H.M. Cole, LLC ("HM Cole"), by and through undersigned counsel, moves this Honorable Court for the entry of an order (ii) granting HM Cole an allowed administrative expense claim in the amount of one-hundred thousand dollars ($100,000) (the "HM Cole Administrative Expense Claim") pursuant to Section 503(b)(1)(A) of the Bankruptcy Code and (ii) directing the Debtors to pay the HM Cole Administrative Expense Claim on the effective date of the *Subchapter V Debtors' First Amended Plan of Liquidation* [Docket No. 279] (as may be amended or modified, the "Plan"). In support of this Motion, HM Cole respectfully states as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. HM Cole consents to the entry of final orders or judgments of the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows Blank Label Group, Inc. (6183); BlackLapel Custom Clothiers, Inc. (3725); and Ratio Clothing, LLC (8330). The Debtors' mailing address is 36 Bromfield Street, 203, Boston, MA 02108.

4. The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 503(b)(1)(A)

**Background**

5. The Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 8, 2023 (the "Petition Date") and elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act, as amended.

6. Prior to the Petition Date, Debtors and HM Cole executed an asset purchase agreement. Pursuant to that agreement, HM Cole agreed to purchase the Acquired Assets of the Debtors (as defined in the stalking horse agreement) for payment of $750,000.00 and to assume certain of the Debtors' liabilities. The Stalking Horse Agreement also provided for a $500,000.00 transition management fee to Fan Bi.

7. On May 15, 2023, the Debtors held an auction. At its conclusion, the Debtors selected HM Cole as the successful bidder. HM Cole's bid at the auction, which is embodied in the Asset Purchase Agreement by and between the Debtors and HM Cole dated May 23, 2023 (the "Purchase Agreement"), provided for a purchase price of $1,100,000.00 for the Acquired Assets, to be allocated amongst the Debtors as follows: (i) $200,000.00 for the Acquired Assets of Ratio Clothing; (ii) $700,000.00 for the Acquired Assets of Black Lapel; and (iii) $200,000.00 for the Acquired Assets of Blank Label. Additionally, the Purchase Agreement provides for (i) a $100,000.00 Transition Management Fee (as defined in the Purchase Agreement) to Fan Bi (the "Fan Bi Transition Management Fee") and (ii) a $50,000 Transition Management Fee to be allocated to certain other employees, each subject to their respective Transition Services Agreements.

8. The Court entered an order approving the sale of the Acquired Assets to HM Cole on May 15, 202,3 and the sale closed on May 31, 2023.

9. The draft Fan Bi Transition Services Agreement provided for two payments of $50,000 based on services to be rendered by Fan Bi for the benefit of HM Cole.[2] Importantly, the draft Fan Bi Transition Services Agreement obligated HM Cole to pay to Fan Bi $50,000 within 30 days after all acquired assets are fully transferred, which required that customer records and raw materials inventory in China be delivered to HM Cole's possession at its factory in Thailand.

10. Section 8.02 of the Purchase Agreement provides that, "should the Buyer not receive the value of the portion of the Inventory in China[3] by the TSA Expiration Period,[4] $100,000 of the Transition Management Fee reserved for Fan Bi shall revert to the Buyer." Purchase Agreement § 8.02.

11. Fan Bi did not execute a Transition Services Agreement and HM Coles did not receive the value of the Inventory by the June 30, 2023 TSA Expiration Date. Moreover, despite its best efforts, HM Cole has not yet received the value of the Inventory in China.

---

[2] The specific payment terms of the Fan Bi TSA are:

The Parties hereby agree as follows:

1) $50,000 payable to Fan Bi within 30 days after all acquired assets are transferred in total, including customer records and raw materials inventory in China delivered to BLC's possession at BLC's factory in Thailand. Prior representations suggested that the value of the available inventory is approximately $300,000. The delivered value of usable and acceptable inventory must be equal to no less than $250,000.

2) An additional $50,000 payable after 45 days for liaison services rendered. This includes assisting in communicating any needs to the Chinese factories and supply chain and communicating their needs back accordingly during the first 45-day transition period.

[3] The Inventory in China is an Acquired Asset consisting of [a]ll raw materials inventory (fabric) regardless of location and showroom inventory (estimated to be valued at cost at no less than $300,000.00)." *See* Purchase Agreement § 2.01 and Schedule A-1.

[4] Section 8.1 of the Purchase Agreement defines TSA Expiration Date as "30 days after Closing."

## RELIEF REQUESTED AND BASES THEREFORE

12. By this Motion, HM Cole respectfully requests that this Court enter an order (i) allowing the HM Cole Administrative Expense Claim pursuant to Section 503(b)(1(A) of the Bankruptcy Code and (ii) directing the Debtors to pay the HM Cole Administrative Expense Claim on the effective date of the Plan.[5]

13. Bankruptcy Code § 503(b) provides in pertinent part as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate….

11 U.S.C. § 503(b)(1)(A). Administrative expenses of a debtor's bankruptcy estate under § 503(b) rank second among all priority claims the estate may incur. *Id*. § 507(a)(2). A post-petition claim against a bankruptcy estate ordinarily qualifies as an administrative expense under § 503(b)(1) if: 1) it arises out of a transaction between the creditor and the debtor's estate post-petition, and 2) the consideration supporting the claimant's right to the expense was supplied to and benefits the debtor's estate. *E.g., In re Energy Future Holdings Corp.,* 990 F.3d 728, 741 (3d Cir. 2021).

14. HM Cole has an administrative expense claim for the Debtors' breach of the Purchase Agreement in failing to pay to HM Cole the Fan Bi Transition Management Fee as required by Section 8.02 of the Purchase Agreement. Damages flowing from a trustee's or debtor-in-possession's breach of a post-petition contract are properly characterized as an administrative expense under Bankruptcy Code § 503. *See, e.g., Fin. of Am., LLC v. Mortgage Winddown LLC (In re Ditech Holding Corp.)*, 630 F. Supp. 3d 554, 566 (S.D.N.Y. 2022) (holding that § 503 "establishes a boundary line between 'expenses' arising from 'transaction[s] between the creditor

---

[5] HM Cole reserves its right to seek an adjustment of the purchase price and seek payment of additional administrative expense claim should the Debtor be unable to deliver the fabric Inventory in China valued at approximately $300,000, which now appears likely.

and … debtor in possession' or the trustee and those arising from transactions between the creditor and debtor"). "A main purpose for granting administrative priority to certain expenses is to incentivize creditors to continue doing business with a debtor." *In re Juvennelliano*, 464 B.R. 651, 655 (Bankr. D. Del. 2011). As one court explained when examining an estate's breach of a post-petition lease, "[i]f landlords do not receive some assurance that their leases will be paid in full, then they will refuse to enter into leases with Chapter 11 tenants." *Devan v. Simon DeBartolo Grp. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 158 (4th Cir. 1999).

15. Bankruptcy courts typically conclude that the full measure of contract damages arising from a post-petition breach qualifies as an administrative expense. *E.g., Merry-Go-Round*, 180 F.3d at 161-62 (holding that all future rental damages flowing from the breach of a post-petition lease enjoyed administrative expense priority under § 503(b)(1)); *In re Sanchez Energy Corp.*, Case No. 19-34508, 2021 WL 920052, at *4-*5, Isgur, J. (Bankr. S.D. Tex. Mar. 10, 2021) (granting administrative-expense priority to certain contractual charges owed to the creditor under a post-petition contract for keeping drilling rigs on standby for the debtor-in-possession even though the debtor never used the rigs in its post-petition drilling activities). "Ordinarily, a written post-petition agreement between a debtor-in-possession and a creditor constitutes inducement by the debtor in-possession. . . . Absent full payment, creditors would have little incentive to do business with the debtor-in possession.'" *Sanchez*, 2021 WL 920052, at *3 (citations omitted) (quoting *In re Whistler Energy II, LLC*, 931 F.3d 432, 444 (5th Cir. 2019).

16. HM Coles's claim for damages resulting from the Debtors' breach of the Purchase Agreement in failing to pay to HM Cole the $100,000 Fan Bi Management Fee meet both requirements for administrative-expense status under Bankruptcy Code § 503(b)(1). First, these damages arise out of a transaction that occurred after the Debtors' bankruptcy cases were filed on

March 8, 2023. *See, e.g Energy Future Holdings,* 990 F.3d at 741 (merger agreement entered into post-petition was a post-petition transaction between claimant and the debtor). The Debtors and HM Cole executed the Purchase Agreement on May 23, 2023, more than two months following the Petition Date, and the Debtors breached the Purchase Agreement post-petition. Thus, the sale transaction occurred entirely post-petition.

17.  Second, HM Cole provided significant value to the Debtors in the form of the Purchase Price, including the Fan Bi Transition Management Fee, and the assumption of certain of the Debtors' liabilities. *See In re Enron Corp.*, No. 01-B-16034 (AJG), 2003 WL 1562201, at *3 (Bankr. S.D.N.Y. Mar. 17, 2003) (noting that if parties did not receive administrative priority for claims based on post-petition transactions with the trustee or debtor-in-possession, then "the third-parties would refrain from dealing with the debtor-in-possession, thereby inhibiting the reorganization effort and harming pre-petition creditors"). In fact, HM Cole submitted the only bid for the purchase of substantially all of the Debtors' assets.[6] Absent HM Cole's purchase of substantially all of the Debtors' assets, the bankruptcy cases would probably have converted to cases under chapter 7 of the bankruptcy code and a chapter 7 trustee would likely have sold the assets of Blank Label and Black Lapel piecemeal at fire-sale prices (or just abandoned them). HM Cole's involvement therefore conferred real value on the bankruptcy estates.

## CONCLUSION

WHEREFORE, for the foregoing reasons, HM Cole respectfully requests that this Honorable Court enter an order, substantially in the form attached hereto, (i) allowing the HM Cole Administrative Expense Claim in the amount of one-hundred thousand dollars ($100,000),

---

[6] The only other qualified bid was a bid of $200,000 for the purchase of certain of Ratio Clothing's assets.

(ii) directing the Debtors to pay the HM Cole Administrative Expense Claim on the effective date of the Plan, and granting to HM Cole such other and further relief as is just and proper.

Date:  November 15, 2023
       Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email:  bsullivan@sha-llc.com
         whazeltine@sha-llc.com

*Attorneys for H.M. Cole, LLC*