IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| BLANK LABEL GROUP, INC., *et al.*,[1] | ) | Case No. 23-10286 (JTD) |
| | ) | (Jointly Administered) |
| Debtors | ) | |
| | ) | **Related Docket Nos. 304 and 308** |

### REPLY IN SUPPORT OF MOTION OF H.M. COLE, LLC FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A)

H.M. Cole, LLC ("HM Cole"), by and through undersigned counsel, hereby submits its reply in support of the *Motion of H.M. Cole, LLC for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* [Docket No. 304] (the "Motion") and in response to the *Debtors' Objection to the Motion of H.M. Cole, LLC for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* [Docket No. 308] (the "Objection") In support hereof, HM Cole respectfully states as follows:

### Reply

1. In their Objection to the Motion, the Debtors argue that (1) HM Cole is collaterally estopped from seeking an administrative claim for the amount of the Bi Transition Services Management Fee, (2) that HM Cole cannot be paid on its administrative claim because the funds held by the Debtor remain encumbered by liens pursuant to the Sale Order, and (3) HM Cole is not entitled to an administrative claim for the return of the Bi Transition Management Fee because the provision of the APA that granted HM Cole the return of the $100,000 did not benefit the Debtors' estates. As set forth below, these arguments lack any merit and should be overruled.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows Blank Label Group, Inc. (6183); BlackLapel Custom Clothiers, Inc. (3725); and Ratio Clothing, LLC (8330). The Debtors' mailing address is 36 Bromfield Street, 203, Boston, MA 02108.

I.  **HM Cole is not collaterally estopped from seeking the relief requested in the Motion.**

2. One of the requirements for collateral estoppel is that "the identical issue was previously adjudicated…." *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995). The Debtors argue that the issues raised in the Motion are identical to the issues raised in the *Motion of H.M. Cole, LLC for Payment of $100,000 Transition Management Fee* [Docket No. 258] (the "Transition Fee Motion") because "the Court has already determined that the Bi TSA Management Fee is fully encumbered and not available for distribution to the Buyer."[2] Motion ¶ 32. This argument is meritless.

3. In the Transaction Fee Motion, HM Cole sought immediate payment of the Fan Bi Transition Management Fee from the proceeds of the sale held in escrow by Debtors' counsel. The Court denied the Transition Fee Motion because (i) "this Court specifically determined that the Sale Order preserved liens and encumbrances on the Remaining Escrowed Funds such that the Buyer is not entitled to disbursement of the Bi TSA Management Fee" (Motion ¶ 32(a)) and (ii) this Court found that the provisions in the Asset Purchase Agreement could not be used to alter the rights of third parties that have interests in the Remaining Escrowed Funds, including the Bi TSA Management Fee." Motion ¶ 32(b). This Cout

4. In this Motion, HM Cole requests that it be granted an allowed administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code. Significantly, this Court ***did not*** rule in the Transition Fee Order that HM Cole's claim for payment on account of the Fan Bi Transition Management Fee was not entitled to treatment as an administrative expense claim.

5. The fundamental flaw in the Debtors' argument is that the Debtors equate the allowance of an administrative expense claim with the payment of administrative expense claim,

---

[2] The Court denied the Transition Fee Motion by order dated November 13, 1012 [Docket No. 302] (the "Transition Fee Order").

2

even though Debtors' experienced bankruptcy counsel obviously know that allowed administrative expense claims sometimes go unpaid. Paragraph 32 of the Objection exposes the fundamental flaw in the Debtors' argument:

> Here, collateral estoppel is appropriate to deny the Motion as the Court has already determined that the Bi TSA Management Fee is fully encumbered and not available for distribution to the Buyer. The Buyer seeks payment of the Bi TSA Management Fee on the Plan's effective date. However, to be entitled to that distribution, this Court must again consider whether all liens and encumbrances are preserved with respect to the Remaining Escrowed Funds, despite the Asset Purchase Agreement. Through the Motion, the Buyer is attempting to obtain the same result that it sought by way of the Bi Transition Management Fee Motion—payment of the Bi TSA Management Fee despite the interests of third parties in such funds.

Motion ¶ 32. This argument fails to acknowledge the well-established requirements for allowance of an administrative expense claim: A post-petition claim against a bankruptcy estate qualifies as an administrative expense under § 503(b)(1)(A) if (i) it arises out of a transaction between the creditor and the debtor's estate post-petition, and (ii) the consideration supporting the claimant's right to the expense was supplied to and benefits the debtor's estate. *E.g., In re Energy Future Holdings Corp.,* 990 F.3d 728, 741 (3d Cir. 2021). The existence of unencumbered funds is not a requirement for the allowance of an administrative expense claim. The treatment of the Debtor's encumbered (and any unencumbered funds) is governed by the Plan.

6. The real issue the Debtors apparently have is with HM Cole's request for payment of its administrative expense claim on the effective date of the Plan. But HM Cole is entitled to payment on the effective date of the Plan (if the plan is confirmed) pursuant to Bankruptcy Code Section 1129(a). Moreover, the Plan directly contradicts the Debtors' argument. The Plan provides for the following treatment of administrative expense claims despite the fact that the Debtors may have no unencumbered funds:

- Ordinary course administrative claims [approx. $7,000] will be paid on an ongoing basis in the ordinary course of business.

- Administrative Tax claims [approx. $10,000] will be paid on an ongoing basis in the ordinary course of business.

- Professional fee claims [approx. $191,000] due and owing on the effective date will be paid 50% on the effective date and 50% from the liquidating trust in monthly installments through Q4 2028.

- Professional fee claims allowed through the fee application process will be paid as soon as possible from the litigation trust.

- The fees of Hunter Point and the independent director [approx. $163,000] due and owing on the effective date will be paid 50% on the effective date and 50% from the liquidating trust in monthly installments through Q4 2028.

- Subchapter V trustee fees [approx. $37,500] will be paid as soon as reasonably practicable.

Plan § 2.1.A. The Debtors clearly intend to pay a significant amount of administrative expense claims without unencumbered funds on or soon after the effective date—they just don't want to pay HM Cole's administrative expense claim.

7. Based on the foregoing, the Court should reject Debtors' argument that the relief HM Cole seeks in the Motion is barred by the doctrine of collateral estoppel.

**II.    HM Cole is entitled to an allowed administrative expense claim.**

**A. HM Cole has demonstrated that the Sale Transaction benefitted the Debtors' estates.**

8. As discussed in the Motion, claims arising from a post-petition transaction with the trustee or debtor in possession are generally treated as administrative expense claims. *See In re Enron Corp.*, No. 01-B-16034 (AJG), 2003 WL 1562201, at *3 (Bankr. S.D.N.Y. Mar. 17, 2003) noting that if parties did not receive administrative priority for claims based on post-petition transactions with the trustee or debtor-in-possession, then "the third-parties would refrain from dealing with the debtor-in-possession, thereby inhibiting the reorganization effort and harming pre-petition creditors"); *see also In re Women First Healthcare, Inc.*, 332 B.R. 115 (Bankr. D. Del. 2005).

9. The Purchase Agreement and HM Cole's purchase of the Debtors' assets clearly benefited the Debtors. HM Cole's stalking horse purchase agreement offered to purchase substantially all of the Debtors' assets for $750,000 plus a $500,000 transition management fee for Fan Bi. The only bidder at the auction offered to purchase the assets of Ratio Clothing for $200,000. *See* Auction Transcript 6:9-25.[3] During the auction, HM Cole revised its bid, This new bid provided for a purchase price of $1,100,000.00 for the Acquired Assets, to be allocated amongst the Debtors as follows: (i) $200,000.00 for the Acquired Assets of Ratio Clothing; (ii) $700,000.00 for the Acquired Assets of Black Lapel; and (iii) $200,000.00 for the Acquired Assets of Blank Label. Additionally, the revised offer provided for (i) a $100,000.00 Transition Management Fee to Fan Bi and (ii) a $50,000 Transition Management Fee to be allocated to certain other employees. At the conclusion of the auction, The Debtors, in consultation with the consultation parties, selected HM Cole's revised offer as the highest and best. Auction Transcript 28:15-30:6. The Debtors would not be able to confirm a plan if HM Cole had not purchased the Debtors' assets and it is likely that the bankruptcy cases would have converted to chapter 7 immediately if the Debtors only received $200,000 for the Debtors' assets.

10. In the Objection, the Debtors argue that the Fan Bi Transition Management Fee, standing alone, did not benefit the Debtors. But the Debtors provide no plausible reason why the Fan Bi Transition Management Fee should be divorced from the Purchase Agreement and the entire sale transaction. The Fan Bi Transition Management Fee is part and parcel of the Purchase Agreement and Section 8.02 of the Purchase Agreement expressly provides for the payment of the Fan Bi Transition Fee to HM Cole. Accordingly, there is no basis to limit the analysis to whether the Fan Bi Transition Management Fee benefitted the Debtors' estates.

---

[3] A copy of the Auction Transcript is attached as Exhibit A.

11.     Moreover, HM Cole provided a benefit to the Debtors even if the administrative claim analysis limited to the Fan Bi Transition Management Fee. At the hearing on the Transition Fee Motion, the Court found that the sale proceeds included the Fan Bi Transition Management Fee. Accordingly, the Debtors received a benefit of $100,000 for the Fan Bi Transition Management Fee.

12.     The Debtors' argument that it received no benefit because it replaced encumbered assets with an encumbered asset. This argument is specious. The Fan Bi Transition Management Fee replaced unliquidated encumbered assets with cash that the Debtors could use in accordance with paragraph 22 of the Sale Order and fund the Plan. Accordingly, the Court should find that HM Cole's purchase of substantially all of the Debtors' assets and the Fan Bi Transition Management Fee provided a benefit to the Debtors.

**B. The benefits of the Sale Transaction and the Fan Bi Transition Management Fee outweigh the burdens.**

13.     The benefits of the Sale Transaction clearly outweigh the burdens. At the beginning of these bankruptcy cases, the bulk of the Debtors' assets were unliquidated. HM Cole's purchase of substantially all of the Debtors' assets replaced the unliquidated assets with cash in the amount of $1,250,000. But for the Sale Transaction, the Debtors would have had $200,000 from the bidder for Ratio Holding's assets plus a plethora of unliquidated assets.

14.     Moreover, the benefits of the Fan Bi Transition Management Fee standing alone outweighed the burdens. The Debtors alleged burdens include (i) the unsuccessful attempts to negotiate a settlement resolving all issues regarding the Sale Transaction that resulted in "increased professional fees to litigate issues with respect to the Bi TSA Management Fee" and (ii) the Debtors' attempts to resolve issues with respect to the Inventory in China. But these "burdens" are not attributable directly to the Fan Bi Transition Management Fee. With respect to the first

"burden", the Court is well aware that debtors and third parties routinely attempt to negotiate a resolution of disputes. And, if those attempts are unsuccessful, the parties often incur professional fees to litigate over the unresolved issues. Moreover, the settlement negotiations did not directly relate to HM Cole's right to payment of the Fan Bi Transition Management Fee. In fact, the Debtors acknowledged on July 21, 2023 that "[u]nder the terms of the Purchase Agreement, [the Fan Bi TSA] Management Fee shall revert to the Buyer (upon entry of a further order by the Bankruptcy Court under the terms of the Sale Order) as a means to compensate the Buyer for any costs it might incur for such transition services not being performed." Subchapter V Debtors' Plan of Liquidation [Docket No. 197], § 1.8, p. 7.

15. With respect to the Debtors' attempts to resolve issues with respect to the Inventory in China, the Debtors fail to acknowledge that they had an obligation to deliver the Inventory in China to HM Cole. *See* Purchase Agreement Section 2.01 and Schedule A-1. Rather, the Debtors attempt to foist that obligation solely on Fan Bi. *See* Objection, FN 6. And, while the Debtors argue that they did not breach the Purchase Agreement by failing to deliver the Inventory in China, the Debtors, at minimum, had an obligation to facilitate the delivery of the Inventory in China to HM Cole. Moreover, the Debtors' attempts to resolve issues with respect to the Inventory is not a "burden" related to the Fan Bi Transition Management fee—it is a "burden" arising from the Purchase Agreement, which required the Debtors to "convey and deliver" the assets to HM Cole.

16. Based on the foregoing, the Court should find that the benefits of the Sale Transaction and the Fan Bi Transition Management Fee exceed the burdens.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, HM Cole respectfully requests that this Honorable Court enter an order, substantially in the form attached to the Motion, (i) allowing the HM Cole Administrative Expense Claim in the amount of one-hundred thousand dollars ($100,000), (ii) directing the Debtors to pay the HM Cole Administrative Expense Claim on the effective date of the Plan, and (iii) granting to HM Cole such other and further relief as is just and proper.

Date:  December 1, 2023
       Wilmington, DE

SULLIVAN · HAZELTINE · ALLINSON LLC

 /s/ William D. Sullivan
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email:  bsullivan@sha-llc.com
       whazeltine@sha-llc.com

*Attorneys for H.M. Cole, LLC*