# EXHIBIT A

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------X
In re:                        : CHAPTER 11
                              :
BLANK LABEL GROUP, INC., : CASE NO. 23-10286 (JTD)
Et al.,                       :
                              : JOINTLY ADMINISTERED
       Debtors.          :
------------------------X R.E.D.I. 10
                   Monday, May 15, 2023
                   Pashman Stein Walder Hayden, P.C.
                   21 Main Street, Suite 200
                   Hackensack, NJ 07601
                   Commencing 10:00 a.m.


A P P E A R A N C E S:


       PASHMAN STEIN WALDER HAYDEN, P.C.
       BY:  JOSEPH C. BARSALONA II, ESQ.
       1007 North Orange Street
       4th Floor, Suite 183
       Wilmington, Delaware 19801
       Jbarsalona@pashmanstein.com
       (302) 592-6497
       Counsel for the Debtors
            -and-
       PASHMAN STEIN WALDER HAYDEN, P.C.
       BY:  RICHARD C. SOLOW, ESQ.
       The Woolworth Building
       233 Broadway, Suite 820
       New York, New York 10279
       (646) 828-8081
       Rsolow@pashmanstein.com
       Counsel for the Debtors

       BROWN McGARRY NIMEROFF, LLC
       BY:  JAMI NIMEROFF, ESQ.
       919 N. Market Street, Suite 420
       Wilmington, Delaware, 19801
       Jmineroff@bmnlawyers.com
       (302) 428-8142
       Counsel for Subjective Trustee



```
                                                    Page 2
 1   A P P E A R A N C E S     C O N T I N U E D:
 2         DINSMORE & SHOHL, LLP
           BY:  TYLER POWELL, ESQ.
 3         93 Shennecossett Road, Suite 109
           Groton, Connecticut 06340
 4         (248) 918-4887
           Tyler.powell@dinsmore.com
 5         Representing Ratio Running
 6         SCHUMWAY VAN
           MICHAEL VAN, ESQ.
 7         8985 S. Eastern Avenue, Suite 100
           Las Vegas, Nevada 89123
 8         (702) 478-7770
           Counsel for H. M. Cole
 9
10   ALSO PRESENT:
11         HUNTER POINT LLC
           BY:  PETER A. FURMAN
12         641 Lexington Avenue, 15th Floor
           New York, New York 10022
13         (212) 328-9497
           Pfurman@hunterpoint.com
14
           ERIC E. POWELL
15         SOLE MAJORITY LEADER
           Representing Ratio Clothing LLC
16
           HAYDEN BRYANT
17         DANIEL RICONTE
           Representing H. M. Cole Stock Bidder
18
           JOHN BAMBACH
19         Independent Director for the Company
20         JOHN MERSHO
           Owner of Ratio Clothing
21
           RAJA RATAN
22         Partner with H. M. Cole Group
23         JOHN RANDAL
           Independent Director
24
25
```



1            MR. BARSALONA:  Good morning.  We are on

2     the record for In Re Blank Label Group, Inc., et al,

3     Case Number 23-10286 (JTD), pending before the

4     Honorable John T. Dorsey in the United States

5     Bankruptcy Court for the District of Delaware.

6          For the record, this is Joe Barsalona of Pashman

7     Stein Walder & Hayden, P. C., Counsel for the Debtors.

8          With me in the room is my colleague from

9     Pashman, Mr. Richard Solow, as well as the debtor's

10    Chief Restructuring Officer, Mr. Peter Furman from

11    Hunter Point.

12         Also appearing by Zoom is the debtor's

13    Independent Director, Mr. John Randal.

14         We are conducting this auction both in person

15    and by Zoom.  I now ask each person on Zoom to enter

16    their appearance for the court reporter by stating

17    their name and the party they represent.

18              Don't all speak at once.

19            MR. E. POWELL:  Representing --

20            MR. BARSALONA:  Eric, could you repeat

21    that, please.  We had technical difficulties in the

22    room.

23            MR. E. POWELL:  Yes.  My name is Eric

24    Powell.  I am here representing myself as the Sole

25    Majority Leader for Ratio Clothing, LLC.



Page 4

1            MR. BARSALONA:  Thank you.

2            MR. BRYANT:  My name is Hayden Bryant.  I

3     am representing H. M. Cole, bidder.

4            MR. T. POWELL:  Dinsmore & Shohl, LLP, in

5     Lexington, for Ratio Running.

6            MS. NIMEROFF:  Joe, did you get my

7     appearance?  I may have been on mute.

8            MR. BARSALONA:  Jami, I can hear you but I

9     don't know who else is speaking.

10           MS. NIMEROFF:  This is Jami Nimeroff.  Can

11    you hear me?

12           MR. BARSALONA:  Yes.

13           MS. NIMEROFF:  Did you get my appearance

14    before?  I may have been on mute.

15           MR. BARSALONA:  No.  Go ahead, Jami.

16           MS. NIMEROFF:  Jami Nimeroff, subjective

17    trustee.  Thank you.

18           MR. BAMBACH:  John Bambach, Independent

19    Director for the company.

20           MR. RATAN:  Raja Ratan, partner with H. M.

21    Cole Group.

22           MR. MERSHO:  John Mersho representing --

23    I'm the owner of Ratio Clothing.

24           MR. BARSALONA:  Hayden, there's another

25    gentleman in the room with you.  Could you tell us who



Page 5

1    that is, please.

2            MR. RICONTE:  Daniel Riconte also a

3    partner in the H. M. Cole Group.

4            MR. BARSALONA:  And Tyler.

5            MR. T. POWELL:  Yes.

6            MR BARSALONA:  We did hear your

7    appearance.

8        Is there anybody else on the line that wishes to

9    make an appearance at the moment?

10       Okay.  We are here this morning to conduct an

11   auction for substantially all of the debtors' assets

12   in accordance with bidding procedures order and

13   attached bidding procedures which were entered at

14   Docket No. 61 on March 24th, 2023 and subject to

15   certain extensions as provided in the notice filed by

16   the debtors on May 3rd, 2023 and located at Docket No.

17   125.

18       For ease of reference I refer to Docket 61 and

19   125 collectively as the bidding procedures.

20       In accordance with the bidding procedures, all

21   qualifying bids, a term defined in Paragraph 4 of the

22   bidding procedures were due no later than 5:00 p.m.

23   eastern time on May 5th, 2023 which we define as the

24   bid deadline.

25       Pursuant to Paragraph 8 of the bidding



1  procedures "if the debtors timely receive one or more

2  qualifying bids other than the Stalking Horse bid then

3  the debtors shall conduct the auction."

4       On or prior to the bid deadline the debtors

5  received three bids from qualifying bidders.  The

6  debtors determined, after consultation with the

7  consultation parties, that only two of those bids were

8  deemed qualifying bids.

9       The qualifying bids are as follows:  First, the

10 Stalking Horse bid by H. M. Cole which is

11 automatically deemed a qualifying bid, the terms of

12 which are set forth in the Stalking Horse agreement

13 and modified by the terms of the bidding procedures

14 order.

15      The Stalking Horse bid allocates value to the

16 assets of each of the debtors as follows:  $150,000

17 for the assets of Blank Label Group, Inc., $450,000

18 for the assets of Black Lapel Custom Clothiers, Inc.

19 and $150,000 for the assets of Ratio Clothing, LLC.

20      The second is a bid by Ratio Running, LLC for

21 certain of the assets of Ratio Clothing, LLC which I

22 will define as the Ratio Running bid.

23      Among other things, the Ratio Running bid

24 provides for a purchase price of certain Ratio

25 Clothing assets of $200,000.



1      In accordance with Paragraph 6 of the bidding

2    procedures on May 9th, 2023 the debtors notified all

3    qualifying bidders whether their bids were determined

4    to be qualifying bids and determined, in consultation

5    with the consultation parties, which of the qualifying

6    bids at such time is the highest or best bid for

7    purposes of constituting the opening bid of the

8    auction, i.e., what would be the base line bid.

9      After consultation with the consultation parties

10   the debtors determined that the Ratio Running bid

11   would be designated the base line bid for the assets

12   of Ratio Clothing, LLC.

13     The debtors did not receive any bids other than

14   the Stalking Horse bid for the assets of Blank Label

15   Group, Inc., or Black Lapel Custom Clothiers, Inc.

16   and, therefore, the Stalking Horse bid stands as the

17   base line bid for those assets.

18     This morning we will start with an auction for

19   the assets of Ratio Clothing, LLC.  As noted, the

20   Ration running bid is the base line bid for those

21   assets for the purchase price of $200,000.

22     As noted in Paragraph 8(h) of the bidding

23   procedures, bidding shall commence at the amount of

24   the base line bid and subsequently continue in minimum

25   increments or overbids of at least $50,000 provided



Page 8

1  that, 1, each overbid must be a qualifying bid and, 2,

2  the debtor shall retain the right in consultation with

3  the consultation parties to increase or decrease the

4  amount of the overbid and bid increment requirements

5  respectively at the auction."

6      With that introduction we are now ready to

7  commence the auction.

8      The base line bid for certain assets of Ratio

9  Clothing, LLC is $200,000.

10     Do I hear a party on the line that wishes to

11 submit an overbid for Ratio Clothing, LLC?

12     Going once.

13     I'm hearing nothing.

14     Just to confirm with H. M. Cole, are you not

15 submitting an overbid for Ratio Clothing, LLC at this

16 time?

17         MR. BRYANT:  We are not.  We would like to

18 revise our TSA and on an individual basis for the

19 Blank Clothing Group and Black Lapel Group.

20         MR. BARSALONA:  We are going to go off the

21 record for one second.

22         (Off the record.)

23     We can go back on the record.

24     Mr. Bryant, can you please explain what you mean

25 by your last statement?



1          MR. BRYANT:  We are not, we are not

2    submitting a counterbid for the individual assets of

3    Ratio Clothing at this time.

4        However, we would like to reallocate a portion

5    of the TSA on the individual assets of Black Lapel and

6    Black Label Group in Round I.

7          MR. BARSALONA:  Okay.  Since we are

8    proceeding in that fashion, as of right now the Ratio

9    Clothing bid of $200,000, proceeding with the Ratio

10   Running bid of $200,000 for Ratio Clothing, LLC seems

11   is the best bid for those assets.

12       We will now turn to the other assets.

13       Mr. Bryant, please proceed with your overbid on

14   those assets.

15          MR. BRYANT:  We would like to reallocate

16   $200,000 of our TSA toward the estate for the Black

17   Lapel Group and $50,000 toward the estate for Blank

18   Label Group.

19       And we hereby state that we intend to reduce the

20   TSA by $100,000 due to a loss of Ratio as an asset

21   that was originally thought for the 20 percent

22   reduction in the, in the TSA due to the loss of the

23   assets.

24          MR. BARSALONA:  So, if I understand you

25   correctly, sir, of the 500,000 for the TSA presently



1  standing, $200,000 of which will be allocated to Black

2  Lapel Custom Clothiers.

3          MR. BRYANT:  Yes.

4          MR. BARSALONA:  And 50,000 will go to the

5  assets of Blank Label Group, Inc..

6          MR. BRYANT:  Correct.

7      And then 150,000 remains because 100 will be

8  reduced due to the loss of Ratio.

9          MR. BARSALONA:  So were you applying

10  estate dollars to TSA dollars?

11          MR. BRYANT:  No.  I'm, I'm stating that we

12  intend to reduce the TSA by $100,000 so from 500 to

13  400 because Ratio has lost assets so we do not require

14  the transition services for that asset.

15      So the 20 percent loss, 150,000 of our original

16  bid of the 150 of the 750 is 20 percent so we're

17  reducing the TSA by 20 percent.  That's a hundred

18  thousand dollars.

19      So there will be 200 allocated to Black Lapel,

20  50,000 to Blank Label and 150,000 remains for the TSA

21  which will be outlined whenever you're ready.

22      To make it clear, the reason that we're doing

23  that is to address the concerns of the protractor

24  trustee and to modify our bid accordingly to make the

25  deal viable.



1          MR. BARSALONA:  And based on your math,

2   just because I'm terrible at it, how much is left in

3   the TSA?

4          MR. BRYANT:  150.

5      So 200 to Black Lapel, 50 to Blank Label so

6   that's 250, a $100,000 reduction.  The difference is

7   400,000 minus 250 is 150.

8      And we have an allocation for that TSA in

9   accordance to the auction.

10          MR. BARSALONA:  Please go ahead.

11          MR. BRYANT:  100,000 to standby for the

12   provisions to deliver the raw materials from China to

13   our factory.

14      And the remaining to the employees; $10,000 to

15   Connor Lee, $10,000 to Caitlin Menwich, 5,000 to Corey

16   Hattick, Frank Torres, Evan Brewer, Michael Kinlin,

17   Lyndsey Latvin and Vee Sheikh for 120 days of service

18   post closing.

19          MS. NIMEROFF:  Can you say that a little

20   slower?  My apologies.

21          MR. BRYANT:  Standby, $100,000 for

22   services rendered in delivering all of the assets to

23   our possession, to smoothly delivering those assets

24   namely the ones listed, the fabric inventory located

25   in China.  His responsibility would be to deliver



1    those assets as well as all the other physical assets

2    of the business and, and intellectual property,

3    passwords, everything like that.

4         So that would be $100,000 for his services.

5         As soon as all of the physical and IP assets

6    were delivered to us that would be payable.

7         The other, the other $50,000 would be payable to

8    the employees for 120 days of service and that would

9    be $10,000 to Connor Lee and Caitlin Menwick

10   respectively for, as admins, the current admins of the

11   business.

12        And then $5,000 respectively to the five

13   salespeople, Corey Hattick, Frank Torres, Evan Brewer,

14   Michael Kinlin, Lindsey Latvin and, and their

15   developer, Vee Sheikh.

16        That would be the remaining $50,000 of the 150.

17             MS. NIMEROFF:  Thank you for that.

18             MR. BARSALONA:  To be clear, Mr. Bryant,

19   these are just for the assets of Black Lapel and Blank

20   Label.

21        Is that correct?

22             MR. BRYANT:  Assuming that we lose Ratio

23   in this, in this auction then, yes, we would

24   reallocate that -- we would propose reallocating

25   according to that formula.



1        200,000 to Black Lapel, 50,000 to Blank Label

2    and 150 to the TSA.

3              MR. BARSALONA:  And you were clear, for

4    the record, that even though that Ratio Running

5    remains the base line and highest bid for Ratio

6    Clothing, LLC that H. M. Cole stands as the backup

7    bidder for those assets?

8              MR. BRYANT:  Correct.

9              MR. BARSALONA:  Obviously the debtors will

10   need time to think about this and to talk amongst

11   ourselves.

12        However, with respect to the Ratio Running, or

13   excuse me, Ratio Clothing, LLC, as certain parties may

14   be aware, Ratio Running is only taking certain assets

15   of those, of that debtor.

16        I will now give the opportunity to other

17   parties, to the extent that they want to bid on the

18   remaining assets of Ratio Clothing, LLC.

19             MR. E. POWELL:  Joe, I think we -- well,

20   this is Eric Powell, I may need a sidebar there.

21             MR. BARSALONA:  That's okay.  If you need

22   Eric on this.

23             MR. T. POWELL:  I think -- this is Tyler

24   Powell for Ratio, I think that we discussed, to make

25   it apples to apples, we make a bid for all of Ratio



1 but we give a step back to fulfill that interest and

2 part of it.

3          MR. BARSALONA:  Certainly.

4     And, for the record, we did receive a marked up

5 APA by Ratio Running as of the bid deadline.  We are

6 going off of that marked up APA on the assets that you

7 are specifically buying Ratio Running.

8     So if there are assets that are outside of that

9 APA that either Ratio Running is interested in or

10 another party is interested in, those are still

11 subject to sale and auction.

12          MR. T. POWELL:  Thank you.

13          MR. BARSALONA:  So we will take a break

14 now.

15     Eric Powell, we will send you the marked up APA

16 that was submitted by Ratio Running --

17          MR. T. POWELL:  Okay.

18          MR. BARSALONA:  -- so that you could see

19 specifically what they are purchasing there.

20          MR. E. POWELL:  Okay.

21          MR. BARSALONA:  I'm assuming you need some

22 time.  How much time do you need to look at that and

23 we, obviously, will need some time to talk about the

24 revised terms of the H. M. Cole deal?

25          MR. BRYANT:  I would like a copy of that



1    as well, please.

2             MR. BARSALONA:  We could do that.

3        For the record, we are going to send a copy of

4    the red line of the Ratio Running bid against the

5    Stalking Horse bid to Mr. Bryant and his team.

6        Mr. Powell, how much time do you need?

7             MR. E. POWELL:  I think I would like to

8    speak directly to Tyler.  What would be --

9        Tyler, how much time do you think we need to go

10   up there?

11       I'm free for the day so I can, I can hopefully

12   turn this around pretty quickly.

13       Are we talking hours or what's your deadline?

14            MR. BARSALONA:  Can we come back in an

15   hour, at 11:30?

16            MR. E. POWELL:  Sure.  That's fine with

17   me.

18            MR. BARSALONA:  And we could just check in

19   and if you need more time we can go back off the

20   record.

21            MR. E. POWELL:  Okay.  Sounds good.

22            MR. BARSALONA:  All right.  Thank you,

23   everyone.  We are going on break.

24            MR. BRYANT:  Are we using the same Zoom

25   link?



Page 16

1          MR. BARSALONA:  The Zoom link is going to

2     stay live for everybody so just go in and out or if

3     you want to mark off, I don't think you will be kept

4     out.  Our tech guy is not here but I don't see a basis

5     why you would get bounced from that.

6          MR. BRYANT:  Okay.

7          MR. BARSALONA:  All right.  Thanks,

8     everyone.  We'll be back at 11:30.

9          (A recess is taken at 10:26.)

10          MR. BARSALONA:  Could we go back on the

11     record?

12     Okay.  We are back on the record for the

13     auction.

14     The debtors are still discussing certain issues

15     and want to be able to phrase correctly our next steps

16     so we are going to take an additional 15 minutes.  We

17     will be back on the record at 11:45 a.m. Thank you.

18          (Off the record 11:33 a.m.)

19          MR. BARSALONA:  Okay.  We are back on the

20     record.

21     First, I see Mr. Van has joined.  Mr. Van, can

22     you please make an appearance for the record.

23          MR. VAN:  Michael Van with H. M. Cole.

24          MR. BARSALONA:  Thank you, sir.

25     The debtors want to clarify where we are in this



1  process.

2      During the earlier session the debtors were

3  conducting an auction for the assets of Ratio

4  Clothing, LLC only.

5      Presently, the current base line bid for the

6  assets of Ratio Clothing, LLC only was submitted by

7  Ratio Running.  H. M. Cole submitted a counterbid

8  which adjusted the value of the TSA in the Stalking

9  Horse bid to reallocate value to the other debtors,

10  Blank Label Group, Inc. and Black Lapel Custom

11  Clothiers, Inc. but did not submit a counterbid to the

12  Ratio Running bid.

13      To be clear, it is the debtors understanding

14  that the counterbid by H. M. Cole was submitted in the

15  context of Ratio Clothing, LLC bidding only and was

16  not given in context of a bulk bid.

17      I would now invite counsel to H. M. Cole to

18  clarify or Mr. Bryant himself.

19          MR. VAN:  Hayden, you're on mute.

20          MR. BRYANT:  Correct.  We are only

21  bidding -- we were only bidding on the individual

22  assets of Black Lapel and Blank Label in Round I.

23          MR. BARSALONA:  And when you say in Round

24  I that's in the context of bidding for Ratio Clothing,

25  LLC only.



1        Correct?

2                MR. BRYANT:  Correct.

3                MR. BARSALONA:  Also this round of the

4    auction for Ratio Clothing, LLC only continues and the

5    debtors have not determined the highest and best bid

6    for those assets.

7        To be clear, the debtors will hold an auction

8    for both bids on all debtor assets after the Ratio

9    Clothing auction is closed.

10       With that in mind, I let the parties to discuss

11   potential overbid for the current $200,000 bid for

12   only Ratio Clothing, LLC's assets.

13       I turn back to counsel for Ratio Running and ask

14   if there's any adjustments to its base line bid at

15   this time.

16               MR. T. POWELL:  This is Tyler Powell for

17   Ratio Running.  No adjustment at this time.

18               MR. VAN:  This is Michael Van.  I'm just

19   clarifying.  This is for all of the assets.

20       Correct?

21               MR. BARSALONA:  No.  No.  We are only in

22   the Ratio --

23               MR. VAN:  Let me rephrase that.  All of

24   the assets associated with Ratio Clothing, for Ratio

25   Clothing.



1          MR. BARSALONA:  Yes.  Ratio Clothing,

2    LLC's assets only.

3         And to be clear, Michael, I believe we sent

4    Hayden the red line of the APA by Tyler Powell's

5    client that shows specifically the assets they are

6    taking in comparison to your Stalking Horse APA.  So

7    that more clearly defines what is up for grabs right

8    now.

9          MR. BRYANT:  PIP.

10          MR. VAN:  All right.

11          MR. BARSALONA:  Mr. Powell, are you, Tyler

12   Powell -- Mr. Tyler Powell, you squinted your eyes and

13   came on the record just now.  I want to make sure you

14   have something to say.

15          MR. T. POWELL:  The bidding for Ratio

16   Clothing as in Exhibit A-1, in the Stalking Horse APA.

17   So it is, the point being not just the IP, it is all

18   of the assets of Ratio Clothing, what were proposed to

19   be purchased in the Stalking Horse APA.

20        Everybody clear on that?

21          MR. VAN:  Apparently clear as mud.

22          MR. BRYANT:  Great.

23          MR. BARSALONA:  Mr. Van, do you need more

24   time to look at the red line of the currently standing

25   base line bid of Ratio Running?



Page 20

1              MR. VAN:  I haven't seen it at all but

2      Hayden has showed me something else so I'm going to

3      defer to my client.

4              MR. BRYANT:  No.

5              MR. BARSALONA:  Okay.  Counsel to Ratio

6      Running, what are the assumed liabilities under your

7      bid?

8              MR. T. POWELL:  At present there is none.

9              MR. BARSALONA:  Mr. Bryant and now Mr.

10     Van, considering the counterbid was to the other

11     assets within this Ratio Clothing round, to your

12     knowledge have the assumed liabilites under your APA

13     changed in connection with that counterbid?

14             MR. BRYANT:  Could you please repeat that?

15             MR. BARSALONA:  Sure.

16         So the certain adjustments that you identified

17     on the record earlier to Blank Label and Black Lapel

18     and the TSA adjustments, et cetera, we are asking

19     solely on an assumed liabilities level if those have

20     changed at all with respect to this counterbid to the

21     Ratio Running bid.

22             MR. BRYANT:  I would have to go back and

23     read it but we would not be accumulating any debt.  Of

24     course we wouldn't be assuming any liability with

25     Ratio if you are taking the assets.



1          MR. BARSALONA:  Understood.

2      Mr. Furman is asking for a clarification there

3   because it didn't seem like your language is precise

4   on what you meant.

5          MR. BRYANT:  Any assumed liabilities that

6   were originally, had anything to do with Ratio would

7   not be assumed if the assets of Ratio are not

8   transferred to us.

9      Is that clear?

10          MR. BARSALONA:  Well, what we're talking

11   about is in the world in which you would be the backup

12   bidder on those assets in this scenario -- well, no.

13      Do we need to take a break?

14          MR. BRYANT:  Our backup bid stands as

15   constituted.  There is no change.

16          MR. BARSALONA:  The debtors only need five

17   to 10 minutes -- five minutes to discuss and we will

18   be right back.

19          (A recess is taken at 12:00 p.m.)

20          MR. BARSALONA:  All right.  We're back on

21   the record.

22      Hearing no other bids for the Ratio Clothing,

23   LLC assets, currently the Ratio Running bid for the

24   Ratio Clothing assets is the highest bid.  However, it

25   is not yet the successful bid as we are now moving



Page 22

1  into Round II of the bidding which is a bulk bid

2  auction.

3       And, to be clear, Round I for Ratio Clothing,

4  LLC assets only is now closed.

5       So with respect to the bulk bid component of

6  this auction, Round II, presently there is a Stalking

7  Horse bid with the same allocations I mentioned on the

8  record previously; $150,000 for Blank Label Group,

9  Inc., $450,000 for Black Lapel Custom Clothiers, Inc.

10 and $150,000 for Ratio Clothing, LLC.

11      And, in addition, there is a transition services

12 fee subject to the terms of the Stalking Horse

13 agreement and the bidding procedures in the amount of

14 $500,000.

15      That is the present bid on the table and stands

16 as the base line bulk bids specifically for Blank

17 Label and Black Lapel.

18      I now ask anyone on the line if there's any

19 topping bid for all three of the debtors' assets.

20         MR. BRYANT:  Yes.  We would like to submit

21 an accumulated bid for Ratio, Black Lapel and Blank

22 Label Group as follows.

23      150,000 to Ratio with a reallocation of $50,000

24 from the TSA for a total of $200,000.

25      Black Lapel $450,000 with a reallocation of TSA



1   of 250,000 for a total of $700,000.

2       And Blank Label Group $150,000 with reallocation

3   of $50,000 for a total of $200,000.

4       With a total estate bid of 1.100 dollars.

5           MR. BARSALONA:  By your math, Mr. Bryant,

6   that leaves the TSA with how much?

7           MR. BRYANT:  The same TSA applies from

8   Round I to Round II exactly as constituted as

9   previously outlined, $150,000 total.  That goes to,

10  that's allocated exactly the same way as previously

11  outlined, 100 to Van and 50,000 to the respective

12  employees.

13          MR. BARSALONA:  Thank you.

14      Are there any other components of your bid that

15  you would like to put on the record, say assume

16  liabilities or other aspects that have not been

17  discussed?

18          MR. BRYANT:  Not currently, no.

19          MR. BARSALONA:  Okay.  At this time the

20  debtors will take a break to discuss this bid.  We'll

21  take this as our official lunch break.

22          MR. T. POWELL:  This is Tyler Powell.

23  Could you recap that again, please.

24          MR. BARSALONA:  Sure.  I mean I don't want

25  to put words in Mr. Bryant's mouth but this is what



1    the debtors have.

2        On top of the base line bid amount and allocated

3    values of 150 for Ratio, 450 for Black Lapel and 150

4    for Blank Label Group.

5        On Ratio there shall be an allocation of an

6    additional $50,000 from the TSA into the estate.

7        For Black Lapel there will be an allocation of

8    an additional $250,000 from the TSA that goes now into

9    the estate.

10       And for Blank Label Group there will be an

11   allocation of $50,000 from the TSA that now goes into

12   that estate.

13       In addition, the remaining $150,000 for the TSA

14   shall be allocated as was stated previously on the

15   record which I believe to be $100,000 to Mr. Fan Bi

16   for, among other things, the raw materials in China

17   and delivery of other assets of the debtors, and the

18   other 50 to be split up amongst various employees to

19   the extent each one of those employees at the

20   different entities agrees to the TSA because, to be

21   very clear on the record, the debtors do not control

22   these individuals.  That's a separate agreement

23   amongst potentially H. M. Cole and these other parties

24   including Mr. Bi.  We have no control over Mr. Bi.

25       Are there any other questions before we take a



1   lunch break?

2       Okay.  We will be back on the record, 1:30 p.m.

3   eastern time we will be back on the record.

4              (A recess is taken 12:12 p.m.)

5              MR. BARSALONA:  Okay.  We are back on the

6   record for the Blank Label and Black Lapel cases.

7       Before I get going, debtors received

8   correspondence from counsel of Ratio Running that they

9   wanted to make a statement.  So before we proceed, I

10  will allow them to make a statement.

11             MR. T. POWELL:  Thank you.  I just was

12  going to ask, I think the debtors are going to respond

13  to the Stalking Horse supervised brands.  I just

14  wanted to Stalking Horse, and I could talk off-line

15  during the break to see if we could get on the same

16  page with the way the auction is going and what to

17  decide and what to do.  That happened.  I wanted to

18  keep it on the record.

19             MR. VAN:  We're not opposed -- I'm not

20  opposed to, to giving Mr. Powell a call.  I'm just

21  concerned about any collusion.

22             MR. BARSALONA:  From the debtors

23  perspective, it's noted on the record that H. M. Cole

24  will have a discussion or counsel to H. M. Cole and

25  counsel to Ratio Running will have a discussion about



1    where things stand.

2         What we were simply going to do was explain

3    where we are and the debtors position but we will

4    allow that discussion to be had without clouding with

5    any type of judgment at all and allow us to come back.

6         Since it's 1:30, how long do you all need?  Is

7    2:00 enough time?  Can we come back earlier?

8              MR. BRYANT:  I would like to clarify where

9    we are from the debtors' position.

10        Is the bidding closed for individual assets?

11             MR. BARSALONA:  Yes.

12             MR. BRYANT:  Okay.  And the only open bid

13   right now available is the collective assets?

14             MR. BARSALONA:  That's correct.

15             MR. BRYANT:  The collective assets bid has

16   no competing bidders because there are no other

17   qualified bidders?

18             MR. BARSALONA:  Correct.

19        We were going to explain where we are numbers

20   wise and make a decision and announcement on the

21   record.  That's what we were coming out to do.

22             MR. BRYANT:  Okay.  We're happy to have a

23   brief conversation with --

24             MR. VAN:  Mr. Powell, give me your number.

25   I'll call you and I'll conference in my clients.



Page 27

```
 1                    MR. T. POWELL:  (859) 425-1046.

 2                    MR. VAN:  All right.  I'll call you in one

 3     second.

 4                    (A recess is taken at 1:37 p.m.)

 5                    MR. BARSALONA:  Good afternoon, everyone.

 6     We are back on the record.

 7           When we last left off counsel to H. M. Cole was

 8     going to have a discussion with counsel to Ratio

 9     Running.

10           I just want to open the floor to either party to

11     make any type of statements related to that call or if

12     they want to put anything on the record with respect

13     to that call.

14           Oh, he's saying we are on mute.  Apologies for

15     that.  We had internal technological issues.

16           Okay.  Where we left off before we took a break

17     was that counsel to Ratio Running was going to speak

18     with counsel to H. M. Cole.  I will now allow either

19     party to make a statement if they like about that call

20     in any way, shape or form and how it effects today's

21     auction.

22                    MR. T. POWELL:  This is Tyler Powell.  The

23     Ratio Running and we're able to speak and I think we

24     are good to go forward.

25                    MR. BARSALONA:  Okay.
```



Page 28

1          MR. T. POWELL:  As we were at 1:30.

2          MR. BARSALONA:  Okay.  Thank you Tyler or

3    Mr. Powell.

4          Okay.  So the debtors were tasked in

5    consultation with the consultation parties to decide

6    which of the two sets of bids was the highest and best

7    for the estate.  And, to be very clear, this morning's

8    portion on the Ratio assets only we were still looking

9    at a debtor by debtor basis.  There was a Ratio

10   Clothing bid as well as the adjusted Stalking Horse

11   bid for the Blank Label and Black Lapel assets.

12         When we moved into the afternoon it was a bulk

13   bid scenario only at which point H. M. Cole modified

14   their Stalking Horse bid higher than initially stated.

15         For the reasons I will outline, the revised

16   Stalking Horse bid has been deemed, in consultation

17   with the consultation parties, the highest and best

18   bid for the debtors' assets.

19         Let me provide the details.

20         So if you look at the debtor by debtor numbers

21   from this morning, there was a Ratio Running bid for

22   Ratio Clothing of $200,000, a Black Lapel bid for

23   $650,000, and a Blank Label Group bid for $200,000

24   which, on its face, provides 1.05 million dollars of

25   value to the estates.  However, from that 1.05



1  approximately 50 of that value is going immediately

2  back to H. M. Cole for the Stalking Horse making that

3  piece-by-piece analysis, that bid only $1,000,000 of

4  value for the estates.

5      In comparison, the revised Stalking Horse bid

6  provided for $200,000 for Ratio that would all be

7  borne to the estates.

8      $700,000 for Black Lapel which is 50 higher than

9  the piece-by-piece analysis of this morning.  And

10 Blank Label group an additional $200,000 bid for an

11 overall 1.1 million dollar bid for the estates.

12     So it was a very, even though it was a fruitful

13 discussion, it's clear by the numbers that the value

14 given to the estates is $100,000 higher than it was

15 this morning.  Moreover, the TSA is staying in place

16 with respect to both bids.

17     In both instances the TSA was modified down to

18 $150,000 to be split amongst the various actors that

19 were stated on the record.  But it was also not lost

20 on the debtors in the piece-by-piece analysis 100

21 grand of that TSA just went up into smoke.

22     So if you want to look at a pure value basis

23 it's arguable that the bulk bid, that the Stalking

24 Horse bulk bid of this afternoon is providing an

25 additional $200,000 of value in aggregate than we



1   would get on a piece-by-piece basis.

2        And, for that reason, the debtors, in

3   consultation with the consultation parties, have

4   chosen that the Stalking Horse bid, as modified by

5   these procedures and this afternoon, is the successful

6   bidder of all of the debtors' assets.

7        I now open the floor to any questions by any

8   bidders or other parties in interest.

9            MR. E. POWELL:  This is Eric Powell.

10           MR. BARSALONA:  Go ahead.

11           MR. E. POWELL:  I just want to go on

12   record that the proceedings didn't allow for

13   individual bidders in the assets portion to counter to

14   a bid that occurred along the group asset worth

15   portion of bid.  So you have a situation where the

16   highest and best bid for the Ratio accruable assets

17   this morning was more than deemed to be best at that

18   point and only afterward you closed it did you allow

19   Stalking Horse bidder to revise their allocations for

20   Ratio assets to marginally improve within the estate

21   of Ratio.

22        So I, as a, I call myself a stakeholder in the

23   Ratio Clothing, LLC, I do have a disservice to the

24   estate of Ratio specifically to not allow the

25   individual bidders an opportunity to counter that bid.



1   So I would request that that opportunity be given to

2   those bidders.

3           MR. BARSALONA:  We hear your concern.

4   However, there was additional time given this morning

5   for Ratio Running to increase its bid for those assets

6   at that time.  We will not reopen bidding especially

7   without knowing that the value that is going to be

8   provided is at least the amounts that I have stated on

9   the record here today.

10   So unless --

11           MR. E. POWELL:  So how would you know

12   unless you reopen that bid, Mr. Barsalona?

13      And specifically why would a bidder on

14   individual assets unilaterally increase their bid when

15   they're the current highest and best bidder when the

16   Stalking Horse bid has already been on the record of

17   not choosing to bid higher on the Ratio assets.

18           MR. BARSALONA:  Mr. Powell.

19           MR. E. POWELL:  Read back the transcript.

20           MR. BARSALONA:  Mr. Powell, you were

21   invited here despite not being a qualifying bidder to

22   potentially add value to any bids.  You are not adding

23   any value to this process right now.

24      We have heard your concerns.  If you would like

25   to take them up with the bankruptcy court you are free



Page 32

1   to do so even though the bidding and objection

2   deadline has clearly run.

3        Other than that, we would like to allow people

4   to enjoy their afternoon and today.

5             MR. E. POWELL:  All right, Joe.  Thank

6   you.

7             MR. BARSALONA:  Unless there are any

8   further statements, we will close the record at this

9   time.

10       Thank you, everyone.

11             (The hearing adjourns at 2:17 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Page 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



Page 34

```
 1                    C E R T I F I C A T E

 2              I CERTIFY that the foregoing is a true

 3  and accurate transcript of the testimony and proceedings

 4  as reported stenographically by me at the time, place

 5  and on the date herein before set forth.

 6              I DO FURTHER CERTIFY that I am neither a

 7  relative nor employee nor attorney or counsel of any

 8  of the parties to this action, and that I am neither a

 9  relative nor employee of such attorney or counsel, and

10  that I am not financially interested in this action.

11

12

13

14

15

16  Donna Lynn J. Arnold

17  _____

    DONNA LYNN J. ARNOLD, C.C.R.

18  LICENSE NO. XI00991

    MY COMMISSION EXPIRES 08/04/2024

19

20

21

22

23

24

25
```



**A**

**able**
16:15 27:23
**accruable**
30:16
**accumulated**
22:21
**accumulating**
20:23
**accurate**
34:3
**action**
34:8,10
**actors**
29:18
**add**
31:22
**adding**
31:22
**addition**
22:11 24:13
**additional**
16:16 24:6,8 29:10
  29:25 31:4
**address**
10:23
**adjourns**
32:11
**adjusted**
17:8 28:10
**adjustment**
18:17
**adjustments**
18:14 20:16,18
**ADMINISTERED**
1:5
**admins**
12:10,10
**afternoon**
27:5 28:12 29:24
  30:5 32:4
**afterward**
30:18
**aggregate**
29:25

**agreement**
6:12 22:13 24:22
**agrees**
24:20
**ahead**
4:15 11:10 30:10
**al**
1:4 3:2
**allocated**
10:1,19 23:10 24:2
  24:14
**allocates**
6:15
**allocation**
11:8 24:5,7,11
**allocations**
22:7 30:19
**allow**
25:10 26:4,5 27:18
  30:12,18,24 32:3
**amount**
7:23 8:4 22:13 24:2
**amounts**
31:8
**analysis**
29:3,9,20
**announcement**
26:20
**anybody**
5:8
**APA**
14:5,6,9,15 19:4,6,16
  19:19 20:12
**apologies**
11:20 27:14
**Apparently**
19:21
**appearance**
3:16 4:7,13 5:7,9
  16:22
**appearing**
3:12
**apples**
13:25,25
**applies**
23:7

**applying**
10:9
**approximately**
29:1
**arguable**
29:23
**ARNOLD**
34:17
**asking**
20:18 21:2
**aspects**
23:16
**asset**
9:20 10:14 30:14
**assets**
5:11 6:16,17,18,19
  6:21,25 7:11,14,17
  7:19,21 8:8 9:2,5,11
  9:12,14,23 10:5,13
  11:22,23 12:1,1,5
  12:19 13:7,14,18
  14:6,8 17:3,6,22
  18:6,8,12,19,24
  19:2,5,18 20:11,25
  21:7,12,23,24 22:4
  22:19 24:17 26:10
  26:13,15 28:8,11,18
  30:6,13,16,20 31:5
  31:14,17
**associated**
18:24
**assume**
23:15
**assumed**
20:6,12,19 21:5,7
**assuming**
12:22 14:21 20:24
**attached**
5:13
**attorney**
34:7,9
**auction**
3:14 5:11 6:3 7:8,18
  8:5,7 11:9 12:23
  14:11 16:13 17:3
  18:4,7,9 22:2,6

25:16 27:21
**automatically**
6:11
**available**
26:13
**Avenue**
2:7,12
**aware**
13:14
**A-1**
19:16
**a.m**
1:9 16:17,18

**B**

**back**
8:23 14:1 15:14,19
  16:8,10,12,17,19
  18:13 20:22 21:18
  21:20 25:2,3,5 26:5
  26:7 27:6 29:2
  31:19
**backup**
13:6 21:11,14
**Bambach**
2:18 4:18,18
**bankruptcy**
1:1 3:5 31:25
**Barsalona**
1:12 3:1,6,20 4:1,8
  4:12,15,24 5:4,6
  8:20 9:7,24 10:4,9
  11:1,10 12:18 13:3
  13:9,21 14:3,13,18
  14:21 15:2,14,18,22
  16:1,7,10,19,24
  17:23 18:3,21 19:1
  19:11,23 20:5,9,15
  21:1,10,16,20 23:5
  23:13,19,24 25:5,22
  26:11,14,18 27:5,25
  28:2 30:10 31:3,12
  31:18,20 32:7
**base**
7:8,11,17,20,24 8:8
  13:5 17:5 18:14



19:25 22:16 24:2
**based**
11:1
**basis**
8:18 16:4 28:9 29:22
30:1
**believe**
19:3 24:15
**best**
7:6 9:11 18:5 28:6,17
30:16,17 31:15
**Bi**
24:15,24,24
**bid**
5:24 6:2,4,10,11,15
6:20,22,23 7:6,7,8
7:10,11,14,16,17,20
7:20,24 8:1,4,8 9:9
9:10,11 10:16,24
13:5,17,25 14:5
15:4,5 17:5,9,12,16
18:5,11,14 19:25
20:7,21 21:14,23,24
21:25 22:1,5,7,15
22:19,21 23:4,14,20
24:2 26:12,15 28:10
28:11,13,14,16,18
28:21,22,23 29:3,5
29:10,11,23,24 30:4
30:14,15,16,25 31:5
31:12,14,16,17
**bidder**
2:17 4:3 13:7 21:12
30:6,19 31:13,15,21
**bidders**
6:5 7:3 26:16,17 30:8
30:13,25 31:2
**bidding**
5:12,13,19,20,22,25
6:13 7:1,22,23
17:15,21,21,24
19:15 22:1,13 26:10
31:6 32:1
**bids**
5:21 6:2,5,7,8,9 7:3,4
7:6,13 18:8 21:22

22:16 28:6 29:16
31:22
**Black**
6:18 7:15 8:19 9:5,6
9:16 10:1,19 11:5
12:19 13:1 17:10,22
20:17 22:9,17,21,25
24:3,7 25:6 28:11
28:22 29:8
**Blank**
1:4 3:2 6:17 7:14
8:19 9:17 10:5,20
11:5 12:19 13:1
17:10,22 20:17 22:8
22:16,21 23:2 24:4
24:10 25:6 28:11,23
29:10
**borne**
29:7
**bounced**
16:5
**brands**
25:13
**break**
14:13 15:23 21:13
23:20,21 25:1,15
27:16
**Brewer**
11:16 12:13
**brief**
26:23
**Broadway**
1:17
**BROWN**
1:20
**Bryant**
2:16 4:2,2 8:17,24
9:1,13,15 10:3,6,11
11:4,11,21 12:18,22
13:8 14:25 15:5,24
16:6 17:18,20 18:2
19:9,22 20:4,9,14
20:22 21:5,14 22:20
23:5,7,18 26:8,12
26:15,22
**Bryant's**

23:25
**Building**
1:17
**bulk**
17:16 22:1,5,16
28:12 29:23,24
**business**
12:2,11
**buying**
14:7

---

**C**

**C**
1:10,12,16 2:1,1 3:7
34:1,1
**Caitlin**
11:15 12:9
**call**
25:20 26:25 27:2,11
27:13,19 30:22
**Case**
1:4 3:3
**cases**
25:6
**certain**
5:15 6:21,24 8:8
13:13,14 16:14
20:16
**Certainly**
14:3
**CERTIFY**
34:2,6
**cetera**
20:18
**change**
21:15
**changed**
20:13,20
**CHAPTER**
1:3
**check**
15:18
**Chief**
3:10
**China**
11:12,25 24:16

**choosing**
31:17
**chosen**
30:4
**clarification**
21:2
**clarify**
16:25 17:18 26:8
**clarifying**
18:19
**clear**
10:22 12:18 13:3
17:13 18:7 19:3,20
19:21 21:9 22:3
24:21 28:7 29:13
**clearly**
19:7 32:2
**client**
19:5 20:3
**clients**
26:25
**close**
32:8
**closed**
18:9 22:4 26:10
30:18
**closing**
11:18
**Clothiers**
6:18 7:15 10:2 17:11
22:9
**Clothing**
2:15,20 3:25 4:23
6:19,21,25 7:12,19
8:9,11,15,19 9:3,9
9:10 13:6,13,18
17:4,6,15,24 18:4,9
18:12,24,25 19:1,16
19:18 20:11 21:22
21:24 22:3,10 28:10
28:22 30:23
**clouding**
26:4
**Cole**
2:8,17,22 4:3,21 5:3
6:10 8:14 13:6



14:24 16:23 17:7,14
17:17 24:23 25:23
25:24 27:7,18 28:13
29:2
**colleague**
3:8
**collective**
26:13,15
**collectively**
5:19
**collusion**
25:21
**come**
15:14 26:5,7
**coming**
26:21
**commence**
7:23 8:7
**Commencing**
1:9
**COMMISSION**
34:18
**company**
2:19 4:19
**comparison**
19:6 29:5
**competing**
26:16
**component**
22:5
**components**
23:14
**concern**
31:3
**concerned**
25:21
**concerns**
10:23 31:24
**conduct**
5:10 6:3
**conducting**
3:14 17:3
**conference**
26:25
**confirm**
8:14

**Connecticut**
2:3
**connection**
20:13
**Connor**
11:15 12:9
**considering**
20:10
**constituted**
21:15 23:8
**constituting**
7:7
**consultation**
6:6,7 7:4,5,9,9 8:2,3
28:5,5,16,17 30:3,3
**context**
17:15,16,24
**continue**
7:24
**continues**
18:4
**control**
24:21,24
**conversation**
26:23
**copy**
14:25 15:3
**Corey**
11:15 12:13
**correct**
10:6 12:21 13:8
17:20 18:1,2,20
26:14,18
**correctly**
9:25 16:15
**correspondence**
25:8
**counsel**
1:15,19,23 2:8 3:7
17:17 18:13 20:5
25:8,24,25 27:7,8
27:17,18 34:7,9
**counter**
30:13,25
**counterbid**
9:2 17:7,11,14 20:10

20:13,20
**course**
20:24
**court**
1:1 3:5,16 31:25
**current**
12:10 17:5 18:11
31:15
**currently**
19:24 21:23 23:18
**Custom**
6:18 7:15 10:2 17:10
22:9
**C.C.R**
34:17

---

## D

**D**
2:1
**Daniel**
2:17 5:2
**date**
34:5
**day**
15:11
**days**
11:17 12:8
**deadline**
5:24 6:4 14:5 15:13
32:2
**deal**
10:25 14:24
**debt**
20:23
**debtor**
8:2 13:15 18:8 28:9,9
28:20,20
**debtors**
1:5,15,19 3:7 5:11,16
6:1,3,4,6,16 7:2,10
7:13 13:9 16:14,25
17:2,9,13 18:5,7
21:16 22:19 23:20
24:1,17,21 25:7,12
25:22 26:3,9 28:4
28:18 29:20 30:2,6

**debtor's**
3:9,12
**decide**
25:17 28:5
**decision**
26:20
**decrease**
8:3
**deemed**
6:8,11 28:16 30:17
**defer**
20:3
**define**
5:23 6:22
**defined**
5:21
**defines**
19:7
**Delaware**
1:1,13,22 3:5
**deliver**
11:12,25
**delivered**
12:6
**delivering**
11:22,23
**delivery**
24:17
**designated**
7:11
**despite**
31:21
**details**
28:19
**determined**
6:6 7:3,4,10 18:5
**developer**
12:15
**difference**
11:6
**different**
24:20
**difficulties**
3:21
**Dinsmore**
2:2 4:4



directly
15:8
Director
2:19,23 3:13 4:19
discuss
18:10 21:17 23:20
discussed
13:24 23:17
discussing
16:14
discussion
25:24,25 26:4 27:8
    29:13
disservice
30:23
District
1:1 3:5
Docket
5:14,16,18
doing
10:22
dollar
29:11
dollars
10:10,10,18 23:4
    28:24
DONNA
34:17
Dorsey
3:4
due
5:22 9:20,22 10:8

— E —
E
1:10,10 2:1,1,1,14
    3:19,23 13:19 14:20
    15:7,16,21 30:9,11
    31:11,19 32:5 34:1
    34:1
earlier
17:2 20:17 26:7
ease
5:18
eastern
2:7 5:23 25:3

effects
27:20
either
14:9 27:10,18
employee
34:7,9
employees
11:14 12:8 23:12
    24:18,19
enjoy
32:4
enter
3:15
entered
5:13
entities
24:20
Eric
2:14 3:20,23 13:20
    13:22 14:15 30:9
especially
31:6
ESQ
1:12,16,21 2:2,6
estate
9:16,17 10:10 23:4
    24:6,9,12 28:7
    30:20,24
estates
28:25 29:4,7,11,14
et
1:4 3:2 20:18
Evan
11:16 12:13
everybody
16:2 19:20
exactly
23:8,10
excuse
13:13
Exhibit
19:16
EXPIRES
34:18
explain
8:24 26:2,19

extensions
5:15
extent
13:17 24:19
eyes
19:12

— F —
F
34:1
fabric
11:24
face
28:24
factory
11:13
Fan
24:15
fashion
9:8
fee
22:12
filed
5:15
financially
34:10
fine
15:16
First
6:9 16:21
five
12:12 21:16,17
floor
1:13 2:12 27:10 30:7
follows
6:9,16 22:22
foregoing
34:2
form
27:20
formula
12:25
forth
6:12 34:5
forward
27:24

Frank
11:16 12:13
free
15:11 31:25
fruitful
29:12
fulfill
14:1
Furman
2:11 3:10 21:2
further
32:8 34:6

— G —
gentleman
4:25
give
13:16 14:1 26:24
given
17:16 29:14 31:1,4
giving
25:20
go
4:15 8:20,23 10:4
    11:10 15:9,19 16:2
    16:10 20:22 27:24
    30:10,11
goes
23:9 24:8,11
going
8:12,20 14:6 15:3,23
    16:1,16 20:2 25:7
    25:12,12,16 26:2,19
    27:8,17 29:1 31:7
good
3:1 15:21 27:5,24
grabs
19:7
grand
29:21
Great
19:22
Groton
2:3
group
1:4 2:22 3:2 4:21 5:3



6:17 7:15 8:19,19
9:6,17,18 10:5
17:10 22:8,22 23:2
24:4,10 28:23 29:10
30:14
**guy**
16:4

---

## H

**H**
2:8,17,22 4:3,20 5:3
6:10 8:14 13:6
14:24 16:23 17:7,14
17:17 24:23 25:23
25:24 27:7,18 28:13
29:2
**Hackensack**
1:8
**happened**
25:17
**happy**
26:22
**Hattick**
11:16 12:13
**Hayden**
1:7,11,16 2:16 3:7
4:2,24 17:19 19:4
20:2
**hear**
4:8,11 5:6 8:10 31:3
**heard**
31:24
**hearing**
8:13 21:22 32:11
**higher**
28:14 29:8,14 31:17
**highest**
7:6 13:5 18:5 21:24
28:6,17 30:16 31:15
**hold**
18:7
**Honorable**
3:4
**hopefully**
15:11
**Horse**

6:2,10,12,15 7:14,16
15:5 17:9 19:6,16
19:19 22:7,12 25:13
25:14 28:10,14,16
29:2,5,24 30:4,19
31:16
**hour**
15:15
**hours**
15:13
**hundred**
10:17
**Hunter**
2:11 3:11

---

## I

**identified**
20:16
**II**
1:12 22:1,6 23:8
**immediately**
29:1
**improve**
30:20
**including**
24:24
**increase**
8:3 31:5,14
**increment**
8:4
**increments**
7:25
**Independent**
2:19,23 3:13 4:18
**individual**
8:18 9:2,5 17:21
26:10 30:13,25
31:14
**individuals**
24:22
**initially**
28:14
**instances**
29:17
**intellectual**
12:2

**intend**
9:19 10:12
**interest**
14:1 30:8
**interested**
14:9,10 34:10
**internal**
27:15
**introduction**
8:6
**inventory**
11:24
**invite**
17:17
**invited**
31:21
**IP**
12:5 19:17
**issues**
16:14 27:15
**i.e**
7:8

---

## J

**J**
34:17
**Jami**
1:21 4:8,10,15,16
**Jbarsalona@pash...**
1:14
**Jmineroff@bmnla...**
1:22
**Joe**
3:6 4:6 13:19 32:5
**John**
2:18,20,23 3:4,13
4:18,22
**joined**
16:21
**JOINTLY**
1:5
**JOSEPH**
1:12
**JTD**
1:4 3:3
**judgment**

26:5

---

## K

**keep**
25:18
**kept**
16:3
**Kinlin**
11:16 12:14
**know**
4:9 31:11
**knowing**
31:7
**knowledge**
20:12

---

## L

**Label**
1:4 3:2 6:17 7:14 9:6
9:18 10:5,20 11:5
12:20 13:1 17:10,22
20:17 22:8,17,22
23:2 24:4,10 25:6
28:11,23 29:10
**language**
21:3
**Lapel**
6:18 7:15 8:19 9:5,17
10:2,19 11:5 12:19
13:1 17:10,22 20:17
22:9,17,21,25 24:3
24:7 25:6 28:11,22
29:8
**Las**
2:7
**Latvin**
11:17 12:14
**Leader**
2:15 3:25
**leaves**
23:6
**Lee**
11:15 12:9
**left**
11:2 27:7,16
**level**



20:19
**Lexington**
2:12 4:5
**liabilities**
20:6,12,19 21:5
  23:16
**liability**
20:24
**LICENSE**
34:18
**Lindsey**
12:14
**line**
5:8 7:8,11,17,20,24
  8:8,10 13:5 15:4
  17:5 18:14 19:4,24
  19:25 22:16,18 24:2
**link**
15:25 16:1
**listed**
11:24
**little**
11:19
**live**
16:2
**LLC**
1:20 2:11,15 3:25
  6:19,20,21 7:12,19
  8:9,11,15 9:10 13:6
  13:13,18 17:4,6,15
  17:25 18:4 21:23
  22:4,10 30:23
**LLC's**
18:12 19:2
**LLP**
2:2 4:4
**located**
5:16 11:24
**long**
26:6
**look**
14:22 19:24 28:20
  29:22
**looking**
28:8
**lose**

12:22
**loss**
9:20,22 10:8,15
**lost**
10:13 29:19
**lunch**
23:21 25:1
**Lyndsey**
11:17
**LYNN**
34:17

**M**

**M**
2:8,17,22 4:3,20 5:3
  6:10 8:14 13:6
  14:24 16:23 17:7,14
  17:17 24:23 25:23
  25:24 27:7,18 28:13
  29:2
**Main**
1:8
**Majority**
2:15 3:25
**making**
29:2
**March**
5:14
**marginally**
30:20
**mark**
16:3
**marked**
14:4,6,15
**Market**
1:21
**materials**
11:12 24:16
**math**
11:1 23:5
**McGARRY**
1:20
**mean**
8:24 23:24
**meant**
21:4

**mentioned**
22:7
**Menwich**
11:15
**Menwick**
12:9
**Mersho**
2:20 4:22,22
**Michael**
2:6 11:16 12:14
  16:23 18:18 19:3
**million**
28:24 29:11
**mind**
18:10
**minimum**
7:24
**minus**
11:7
**minutes**
16:16 21:17,17
**modified**
6:13 28:13 29:17
  30:4
**modify**
10:24
**moment**
5:9
**Monday**
1:7
**morning**
3:1 5:10 7:18 28:21
  29:9,15 30:17 31:4
**morning's**
28:7
**mouth**
23:25
**moved**
28:12
**moving**
21:25
**mud**
19:21
**mute**
4:7,14 17:19 27:14

**N**

**N**
1:10,21 2:1,1,1
**name**
3:17,23 4:2
**need**
13:10,20,21 14:21,22
  14:23 15:6,9,19
  19:23 21:13,16 26:6
**neither**
34:6,8
**Nevada**
2:7
**New**
1:18,18 2:12,12
**Nimeroff**
1:20,21 4:6,10,10,13
  4:16,16 11:19 12:17
**NJ**
1:8
**North**
1:12
**noted**
7:19,22 25:23
**notice**
5:15
**notified**
7:2
**number**
3:3 26:24
**numbers**
26:19 28:20 29:13

**O**

**O**
2:1
**objection**
32:1
**obviously**
13:9 14:23
**occurred**
30:14
**Officer**
3:10
**official**



23:21
**off-line**
25:14
**Oh**
27:14
**okay**
5:10 9:7 13:21 14:17
14:20 15:21 16:6,12
16:19 20:5 23:19
25:2,5 26:12,22
27:16,25 28:2,4
**once**
3:18 8:12
**ones**
11:24
**open**
26:12 27:10 30:7
**opening**
7:7
**opportunity**
13:16 30:25 31:1
**opposed**
25:19,20
**Orange**
1:12
**order**
5:12 6:14
**original**
10:15
**originally**
9:21 21:6
**outline**
28:15
**outlined**
10:21 23:9,11
**outside**
14:8
**overall**
29:11
**overbid**
8:1,4,11,15 9:13
18:11
**overbids**
7:25
**owner**
2:20 4:23

---
**P**
---

**P**
1:10,10 2:1,1 3:7
**page**
25:16
**Paragraph**
5:21,25 7:1,22
**part**
14:2
**parties**
6:7 7:5,9 8:3 13:13
13:17 18:10 24:23
28:5,17 30:3,8 34:8
**partner**
2:22 4:20 5:3
**party**
3:17 8:10 14:10
27:10,19
**Pashman**
1:7,11,16 3:6,9
**passwords**
12:3
**payable**
12:6,7
**pending**
3:3
**people**
32:3
**percent**
9:21 10:15,16,17
**person**
3:14,15
**perspective**
25:23
**Peter**
2:11 3:10
**Pfurman@hunter...**
2:13
**phrase**
16:15
**physical**
12:1,5
**piece-by-piece**
29:3,9,20 30:1
**PIP**

19:9
**place**
29:15 34:4
**please**
3:21 5:1 8:24 9:13
11:10 15:1 16:22
20:14 23:23
**point**
2:11 3:11 19:17
28:13 30:18
**portion**
9:4 28:8 30:13,15
**position**
26:3,9
**possession**
11:23
**post**
11:18
**potential**
18:11
**potentially**
24:23 31:22
**Powell**
2:2,14 3:19,23,24 4:4
5:5 13:19,20,23,24
14:12,15,17,20 15:6
15:7,16,21 18:16,16
19:11,12,12,15 20:8
23:22,22 25:11,20
26:24 27:1,22,22
28:1,3 30:9,9,11
31:11,18,19,20 32:5
**Powell's**
19:4
**precise**
21:3
**present**
2:10 20:8 22:15
**presently**
9:25 17:5 22:6
**pretty**
15:12
**previously**
22:8 23:9,10 24:14
**price**
6:24 7:21

**prior**
6:4
**procedures**
5:12,13,19,20,22 6:1
6:13 7:2,23 22:13
30:5
**proceed**
9:13 25:9
**proceeding**
9:8,9
**proceedings**
30:12 34:3
**process**
17:1 31:23
**property**
12:2
**propose**
12:24
**proposed**
19:18
**protractor**
10:23
**provide**
28:19
**provided**
5:15 7:25 29:6 31:8
**provides**
6:24 28:24
**providing**
29:24
**provisions**
11:12
**purchase**
6:24 7:21
**purchased**
19:19
**purchasing**
14:19
**pure**
29:22
**purposes**
7:7
**Pursuant**
5:25
**put**
23:15,25 27:12



**P.C**
1:7,11,16
**p.m**
5:22 21:19 25:2,4
  27:4 32:11

---
**Q**
---

**qualified**
26:17
**qualifying**
5:21 6:2,5,8,9,11 7:3
  7:4,5 8:1 31:21
**questions**
24:25 30:7
**quickly**
15:12

---
**R**
---

**R**
  1:10 2:1 34:1
**Raja**
2:21 4:20
**Randal**
2:23 3:13
**Ratan**
2:21 4:20,20
**Ratio**
2:5,15,20 3:25 4:5,23
  6:19,20,21,22,23,24
  7:10,12,19 8:8,11
  8:15 9:3,8,9,10,20
  10:8,13 12:22 13:4
  13:5,12,13,14,18,24
  13:25 14:5,7,9,16
  15:4 17:3,6,7,12,15
  17:24 18:4,8,12,13
  18:17,22,24,24 19:1
  19:15,18,25 20:5,11
  20:21,25 21:6,7,22
  21:23,24 22:3,10,21
  22:23 24:3,5 25:8
  25:25 27:8,17,23
  28:8,9,21,22 29:6
  30:16,20,21,23,24
  31:5,17
**Ration**

**7:20**
**raw**
11:12 24:16
**read**
20:23 31:19
**ready**
8:6 10:21
**reallocate**
9:4,15 12:24 17:9
**reallocating**
12:24
**reallocation**
22:23,25 23:2
**reason**
10:22 30:2
**reasons**
28:15
**recap**
23:23
**receive**
6:1 7:13 14:4
**received**
6:5 25:7
**recess**
16:9 21:19 25:4 27:4
**record**
3:2,6 8:21,22,23 13:4
  14:4 15:3,20 16:11
  16:12,17,18,20,22
  19:13 20:17 21:21
  22:8 23:15 24:15,21
  25:2,3,6,18,23
  26:21 27:6,12 29:19
  30:12 31:9,16 32:8
**red**
15:4 19:4,24
**reduce**
9:19 10:12
**reduced**
10:8
**reducing**
10:17
**reduction**
9:22 11:6
**refer**
5:18

**reference**
5:18
**related**
27:11
**relative**
34:7,9
**remaining**
11:14 12:16 13:18
  24:13
**remains**
10:7,20 13:5
**rendered**
11:22
**reopen**
31:6,12
**repeat**
3:20 20:14
**rephrase**
18:23
**reported**
34:4
**reporter**
3:16
**represent**
3:17
**representing**
2:5,15,17 3:19,24 4:3
  4:22
**request**
31:1
**require**
10:13
**requirements**
8:4
**respect**
13:12 20:20 22:5
  27:12 29:16
**respective**
23:11
**respectively**
8:5 12:10,12
**respond**
25:12
**responsibility**
11:25
**Restructuring**

**3:10**
**retain**
8:2
**revise**
8:18 30:19
**revised**
14:24 28:15 29:5
**Richard**
1:16 3:9
**Riconte**
2:17 5:2,2
**right**
8:2 9:8 15:22 16:7
  19:7,10 21:18,20
  26:13 27:2 31:23
  32:5
**Road**
2:3
**room**
3:8,22 4:25
**round**
9:6 17:22,23 18:3
  20:11 22:1,3,6 23:8
  23:8
**Rsolow@pashman...**
1:19
**run**
32:2
**running**
2:5 4:5 6:20,22,23
  7:10,20 9:10 13:4
  13:12,14 14:5,7,9
  14:16 15:4 17:7,12
  18:13,17 19:25 20:6
  20:21 21:23 25:8,25
  27:9,17,23 28:21
  31:5
**R.E.D.I**
1:6

---
**S**
---

**S**
1:10 2:1,7
**sale**
14:11
**salespeople**



12:13
**saying**
27:14
**scenario**
21:12 28:13
**SCHUMWAY**
2:6
**second**
6:20 8:21 27:3
**see**
14:18 16:4,21 25:15
**seen**
20:1
**send**
14:15 15:3
**sent**
19:3
**separate**
24:22
**service**
11:17 12:8
**services**
10:14 11:22 12:4
22:11
**session**
17:2
**set**
6:12 34:5
**sets**
28:6
**shape**
27:20
**Sheikh**
11:17 12:15
**Shennecossett**
2:3
**Shohl**
2:2 4:4
**showed**
20:2
**shows**
19:5
**sidebar**
13:20
**simply**
26:2

**sir**
9:25 16:24
**situation**
30:15
**slower**
11:20
**smoke**
29:21
**smoothly**
11:23
**Sole**
2:15 3:24
**solely**
20:19
**Solow**
1:16 3:9
**soon**
12:5
**Sounds**
15:21
**speak**
3:18 15:8 27:17,23
**speaking**
4:9
**specifically**
14:7,19 19:5 22:16
30:24 31:13
**split**
24:18 29:18
**squinted**
19:12
**stakeholder**
30:22
**Stalking**
6:2,10,12,15 7:14,16
15:5 17:8 19:6,16
19:19 22:6,12 25:13
25:14 28:10,14,16
29:2,5,23 30:4,19
31:16
**stand**
26:1
**standby**
11:11,21
**standing**
10:1 19:24

**stands**
7:16 13:6 21:14
22:15
**start**
7:18
**state**
9:19
**stated**
24:14 28:14 29:19
31:8
**statement**
8:25 25:9,10 27:19
**statements**
27:11 32:8
**States**
1:1 3:4
**stating**
3:16 10:11
**stay**
16:2
**staying**
29:15
**Stein**
1:7,11,16 3:7
**stenographically**
34:4
**step**
14:1
**steps**
16:15
**Stock**
2:17
**Street**
1:8,12,21
**subject**
5:14 14:11 22:12
**subjective**
1:23 4:16
**submit**
8:11 17:11 22:20
**submitted**
14:16 17:6,7,14
**submitting**
8:15 9:2
**subsequently**
7:24

**substantially**
5:11
**successful**
21:25 30:5
**Suite**
1:8,13,17,21 2:3,7
**supervised**
25:13
**sure**
15:16 19:13 20:15
23:24

---

**T**

**T**
2:1 3:4 4:4 5:5 13:23
14:12,17 18:16
19:15 20:8 23:22
25:11 27:1,22 28:1
34:1,1
**table**
22:15
**take**
14:13 16:16 21:13
23:20,21 24:25
31:25
**taken**
16:9 21:19 25:4 27:4
**talk**
13:10 14:23 25:14
**talking**
15:13 21:10
**tasked**
28:4
**team**
15:5
**tech**
16:4
**technical**
3:21
**technological**
27:15
**tell**
4:25
**term**
5:21
**terms**



6:11,13 14:24 22:12
**terrible**
11:2
**testimony**
34:3
**Thank**
4:1,17 12:17 14:12
15:22 16:17,24
23:13 25:11 28:2
32:5,10
**Thanks**
16:7
**things**
6:23 24:16 26:1
**think**
13:10,19,23,24 15:7
15:9 16:3 25:12
27:23
**thought**
9:21
**thousand**
10:18
**three**
6:5 22:19
**time**
5:23 7:6 8:16 9:3
13:10 14:22,22,23
15:6,9,19 18:15,17
19:24 23:19 25:3
26:7 31:4,6 32:9
34:4
**timely**
6:1
**today**
31:9 32:4
**today's**
27:20
**top**
24:2
**topping**
22:19
**Torres**
11:16 12:13
**total**
22:24 23:1,3,4,9
**transcript**

31:19 34:3
**transferred**
21:8
**transition**
10:14 22:11
**true**
34:2
**trustee**
1:23 4:17 10:24
**TSA**
8:18 9:5,16,20,22,25
10:10,12,17,20 11:3
11:8 13:2 17:8
20:18 22:24,25 23:6
23:7 24:6,8,11,13
24:20 29:15,17,21
**turn**
9:12 15:12 18:13
**two**
6:7 28:6
**Tyler**
2:2 5:4 13:23 15:8,9
18:16 19:4,11,12
23:22 27:22 28:2
**Tyler.powell@dins...**
2:4
**type**
26:5 27:11

_____ U _____
**U**
2:1
**understand**
9:24
**understanding**
17:13
**Understood**
21:1
**unilaterally**
31:14
**United**
1:1 3:4

_____ V _____
**value**
6:15 17:8,9 28:25

29:1,4,13,22,25
31:7,22,23
**values**
24:3
**Van**
2:6,6 16:21,21,23,23
17:19 18:18,18,23
19:10,21,23 20:1,10
23:11 25:19 26:24
27:2
**various**
24:18 29:18
**Vee**
11:17 12:15
**Vegas**
2:7
**viable**
10:25

_____ W _____
**Walder**
1:7,11,16 3:7
**want**
13:17 16:3,15,25
19:13 23:24 27:10
27:12 29:22 30:11
**wanted**
25:9,14,17
**way**
23:10 25:16 27:20
**went**
29:21
**We'll**
16:8 23:20
**we're**
10:16,22 21:10,20
25:19 26:22 27:23
**Wilmington**
1:13,22
**wise**
26:20
**wishes**
5:8 8:10
**Woolworth**
1:17
**words**

23:25
**world**
21:11
**worth**
30:14
**wouldn't**
20:24

_____ X _____
**X**
1:2,6
**XI00991**
34:18

_____ Y _____
**York**
1:18,18 2:12,12

_____ Z _____
**Zoom**
3:12,15,15 15:24
16:1

_____ $ _____
**$1,000,000**
29:3
**$10,000**
11:14,15 12:9
**$100,000**
9:20 10:12 11:6,21
12:4 24:15 29:14
**$150,000**
6:16,19 22:8,10 23:2
23:9 24:13 29:18
**$200,000**
6:25 7:21 8:9 9:9,10
9:16 10:1 18:11
22:24 23:3 28:22,23
29:6,10,25
**$250,000**
24:8
**$450,000**
6:17 22:9,25
**$5,000**
12:12
**$50,000**



7:25 9:17 12:7,16
22:23 23:3 24:6,11
**$500,000**
22:14
**$650,000**
28:23
**$700,000**
23:1 29:8

---
### 0
**06340**
2:3
**07601**
1:8
**08/04/2024**
34:18

---
### 1
**1**
8:1
**1.05**
28:24,25
**1.1**
29:11
**1.100**
23:4
**1:30**
25:2 26:6 28:1
**1:37**
27:4
**10**
1:6 21:17
**10:00**
1:9
**10:26**
16:9
**100**
2:7 10:7 23:11 29:20
**100,000**
11:11
**10022**
2:12
**1007**
1:12
**10279**
1:18

**109**
2:3
**11**
1:3
**11:30**
15:15 16:8
**11:33**
16:18
**11:45**
16:17
**12:00**
21:19
**12:12**
25:4
**120**
11:17 12:8
**125**
5:17,19
**15**
1:7 16:16
**15th**
2:12
**150**
10:16 11:4,7 12:16
13:2 24:3,3
**150,000**
10:7,15,20 22:23
**183**
1:13
**19801**
1:13,22

---
### 2
**2**
8:1
**2:00**
26:7
**2:17**
32:11
**20**
9:21 10:15,16,17
**200**
1:8 10:19 11:5
**200,000**
13:1
**2023**

1:7 5:14,16,23 7:2
**21**
1:8
**212**
2:13
**23-10286**
1:4 3:3
**233**
1:17
**24th**
5:14
**248**
2:4
**250**
11:6,7
**250,000**
23:1

---
### 3
**3rd**
5:16
**302**
1:14,23
**328-9497**
2:13

---
### 4
**4**
5:21
**4th**
1:13
**400**
10:13
**400,000**
11:7
**420**
1:21
**425-1046**
27:1
**428-8142**
1:23
**450**
24:3
**478-7770**
2:8

---
### 5
**5th**
5:23
**5,000**
11:15
**5:00**
5:22
**50**
11:5 24:18 29:1,8
**50,000**
10:4,20 13:1 23:11
**500**
10:12
**500,000**
9:25
**592-6497**
1:14

---
### 6
**6**
7:1
**61**
5:14,18
**641**
2:12
**646**
1:18

---
### 7
**702**
2:8
**750**
10:16

---
### 8
**8**
5:25
**8(h)**
7:22
**820**
1:17
**828-8081**
1:18
**859**
27:1
**89123**



2:7
**8985**
2:7

**9**

**9th**
7:2
**918-4887**
2:4
**919**
1:21
**93**
2:3

