## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BLANK LABEL GROUP, INC., *et al.*, | Case No. 23-10286 (JTD) |
| Debtors.[1] | Jointly Administered |

### SUBCHAPTER V DEBTORS' FIRST **MODIFIED** AMENDED PLAN OF LIQUIDATION

**PASHMAN STEIN WALDER HAYDEN, P.C.**
1007 North Orange Street 4th Floor #183
Wilmington, DE 19801-1242
Telephone: (302) 592-6496
Joseph C. Barsalona II (No. 6102)

Richard C. Solow (admitted *pro hac vice*)
The Woolworth Building
233 Broadway, Suite 820
New York, New York 10279
Email: rsolow@pashmanstein.com

*Counsel to the Debtors and Debtors in Possession*

Dated: ~~November 1~~December 04, 2023

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are as follows Blank Label Group, Inc. (6183); BlackLapel Custom Clothiers, Inc. (3725); and Ratio Clothing, LLC (8330). The Debtors' mailing address is 36 Bromfield Street, 203, Boston, MA 02108.

## SUBCHAPTER V DEBTORS' FIRST ~~MODIFIED~~ AMENDED PLAN OF LIQUIDATION

This Plan of Liquidation is presented to you to inform you of the Plan for liquidation of the assets of Blank Label Group, Inc., BlackLapel Custom Clothiers, Inc. and Ratio Clothing, LLC.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments. To assist you in your review, please note that a list of definitions and a section of frequently asked questions are at the end of this document. **Capitalized terms used in this Plan and not otherwise defined are defined in the definitions section the end of the Plan.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR DECEMBER 6, 2023, AT ~~2:00 P.M~~1:00 P.M., EASTERN STANDARD TIME IN COURTROOM NO. 5, 5TH FLOOR, AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N. MARKET STREET, WILMINGTON, DELAWARE 19801. Parties wishing to participate must make arrangements with the Bankruptcy Court in advance. Please consult the Bankruptcy Court's website for details.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: ~~November 1~~December 04, 2023

**PASHMAN STEIN WALDER HAYDEN, P.C.**
1007 North Orange Street 4th Floor #183
Wilmington, DE 19801-1242
Telephone: (302) 592-6496
Joseph C. Barsalona II (No. 6102)

Richard C. Solow (admitted *pro hac vice*)
The Woolworth Building
233 Broadway, Suite 820
New York, New York 10279
Email: rsolow@pashmanstein.com

*Counsel to the Debtors and Debtors in Possession*

# TABLE OF CONTENTS

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ............................1

    ARTICLE 1 ............................1

HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS ............................1

    Section 1.1   Nature and history of the Debtors' business. ............................1

    1.2    Filing of the Debtors' Chapter 11 Cases. ............................2

    1.3.   Legal structure and ownership. ............................3

    1.4    Debtors' assets. ............................3

    1.5    Debtors' liabilities. ............................3

    1.6.   Current and historical financial conditions. ............................3

    1.7.   Events leading to filing the chapter 11 case. ............................3

    1.8    Significant Events During the Chapter 11 Cases. ............................6

    1.9    Projected recovery of avoidable transfers. ............................10

    ARTICLE 2 ............................10

THE PLAN ............................10

    2.1    Unclassified claims. ............................10

    A.  Administrative Expenses ............................10
    B.  Priority Tax Claims. ............................15

    2.2    Classes of Claims and Equity Interest. ............................16

    A.  Class of Secured Claims ............................18
    B.  Class of Purported Secured Claims at Blank Label ............................20
    C.  Class of Priority Unsecured Claims ............................20
    D.  Class of General Unsecured Claims ............................21
    E.  Class of Holders of Equity Interests ............................21

    2.3    Claim Objections ............................22

    2.4    Treatment Of Executory Contracts and Unexpired Leases ............................22

    2.5    Means For Implementation Of The Plan. ............................22

    A.  Overview of the Litigation Trust ............................22
    B.  Appointment of Litigation Trustee ............................23
    C.  Compensation of Litigation Trustee ............................24
    D.  Treatment ............................24
    E.  Litigation Trust Assets ............................25
    F.  Claims Reconciliation Process ............................26
    G.  Preservation of Right to Conduct Investigations ............................26
    H.  Preservation of Privilege and Defenses ............................26
    I.  Indemnification and Exculpation ............................26
    J.  Litigation Trust Agreement Controlling ............................26

i

2.6    Payments...........................................................................................................27

**2.7    Post-Confirmation Management**..................................................................**27**

2.8    Tax Consequences Of The Plan.....................................................................27

ARTICLE 3..............................................................................................................27

SUBSTANTIVE CONSOLIDATION......................................................................27

ARTICLE 4..............................................................................................................27

FEASIBILITY OF PLAN.........................................................................................27

4.1    Ability To Initially Fund Plan........................................................................28

4.2.    Ability To Make Further Plan Payments And Operate Without       Further
Reorganization.................................................................................................28

ARTICLE 5..............................................................................................................29

LIQUIDATION ANALYSIS....................................................................................29

ARTICLE 6..............................................................................................................29

NO DISCHARGE OF DEBTORS............................................................................29

ARTICLE 7..............................................................................................................29

GENERAL PROVISIONS.........................................................................................29

7.1    Title to Assets.................................................................................................29

7.2    Binding Effect.................................................................................................29

7.3    Severability.....................................................................................................30

7.4    Retention of Subject Matter Jurisdiction.......................................................30

7.5    Captions...........................................................................................................30

7.6    Modification of Plan.......................................................................................30

7.7    Final Decree....................................................................................................30

7.8    Compromise and Settlement of Claims and Controversies............................30

7.9    Releases by the Debtors..................................................................................31

7.10    Releases by Holders of Claims......................................................................31

7.11    Exculpation.....................................................................................................32

7.12    Injunction Related to Third Parties................................................................32

7.13    Term of Injunctions or Stays..........................................................................3332

ARTICLE 8..............................................................................................................33

ATTACHMENTS.....................................................................................................33

ARTICLE 9..............................................................................................................33

FREQUENTLY ASKED QUESTIONS....................................................................33

ARTICLE 10 ...................................................................................................................... 34

DEFINITIONS ................................................................................................................... 34

    A.  Scope of Definitions ............................................................................................. 34

    B.  Definitions .......................................................................................................... 34

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan provides for the creation of a Litigation Trust. As of the Effective Date of the Plan, all of the Debtors' Assets, including the Estate Causes of Action, will be transferred to the Litigation Trust.  A Litigation Trustee shall be appointed, who shall be the fiduciary responsible for administering the Litigation Trust, including, among other things, pursuing potentially significant litigation claims of the Estate against third parties, and objecting to any disputed Claims or Equity Interests.  All Assets of the Estate shall be placed in the Litigation Trust on or after the Effective Date in accordance with the terms hereof.

The Plan also provides for substantive consolidation of the Debtors for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distributions.

Unless otherwise provided under the Plan, creditors will receive their Pro Rata share of recoveries as set forth in further detail below while Holders of Equity Interests will receive no recovery.  The exact amount of recoveries to Creditors will be dependent on the outcome of the contemplated litigations.  The table below sets forth each class of Creditors and Equity Interests along with the range of potential recoveries. There is no guarantee that any recovery will be achieved and the estimates below represent the Debtors' good faith estimates as of the date hereof.

## ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

### Section 1.1     Nature and history of the Debtors' business.

The Debtors are direct-to-consumer ("DTC") manufacturers of custom-made fitted clothes for both formal and casual wear, utilizing high quality fabrics and expert craftmanship. In delivering its products to clients, the Debtors cut out the middleman to bring the consumer quality products at an affordable price.  All clothes are handcrafted, with the focus on the needs and desires of the customer. Some of the Debtors' product offerings are shown in the images below:

1





Information regarding the Debtors' gross sales are as follows:

1. Since its founding in 2009, Blank Label has averaged $1,500,000.00 in gross sales annually.

2. Since its founding in 2010, Ratio Clothing has averaged $650,000.00 in gross sales annually.

3. Since its founding in 2012, BlackLapel has averaged $2,000,000.00 in gross sales annually.

## 1.2    Filing of the Debtors' Chapter 11 Cases.

On March 8, 2023, the Debtors filed voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On March 9, 2023, the United States Trustee appointed Jami Nimeroff of Brown McGarry Nimeroff LLC to serve as the Subchapter V trustee in these cases pursuant to Bankruptcy Code section 1183(a). No other trustee, examiner, or official committee has been appointed in this case.

## 1.3.    Legal structure and ownership.

Blank Label and BlackLapel are corporations organized the under laws of the State of Delaware. Ratio Clothing is a limited liability corporation organized under the laws of the State of Ohio, but its limited liability company operating agreement is governed by Delaware law.

Blank Label is owned: (1) 62% by Fan Bi; (2) 7% by Zeeshan Sheikh; (3) 8% through an employee stock ownership program; (4) and the remaining 24% by a number of investors. BlackLapel is wholly owned by Blank Label. Ratio Clothing is wholly owned by BLG Holdings, which in turn is wholly owned by Blank Label.

## 1.4    Debtors' assets.

The Debtors filed their detailed Schedules with the Bankruptcy Court on April 7, 2023 [Docket Nos. 98, 100, and 102], and amended the Schedules on April 26, 2023 [Docket Nos. 120, 123 and 124]. The Schedules set forth the Debtors' assets and liabilities as of the Petition Date.

## 1.5    Debtors' liabilities.

As of the date hereof, the General Claims Bar Date has run, but the Governmental Claims Bar Date has not.

As of the date hereof, allowed or purported (i) Secured Claims asserted against the Debtors total $9,821,724.96,[1] (ii) Priority Unsecured Claims asserted against the Debtors total

---

[1] This amount includes a pledge on equity that the Debtors believe is valueless and such claim will be dealt with in the claims reconciliation process.

approximately $55,000.00,[2] (iii) Priority Tax Claims asserted against the Debtors total $34,152.30, and (iv) General Unsecured Claims asserted against the Debtors total $7,376,821.68. The Litigation Trustee intends to conduct a claims reconciliation process after Confirmation.

### 1.6.  Current and historical financial conditions.

Since the Petition Date, the Debtors have sold substantially all of their assets through the Sale. The only path forward for the Debtors is distribution of the Sale Proceeds and prosecution of all litigation claims through the Litigation Trust.

The Debtors' current financial condition is reflected in the Debtors most recently filed monthly operating report, attached hereto as **Exhibit B**.

### 1.7.  Events leading to filing the chapter 11 case.

The Debtors experienced significant success early in their existence, when the businesses focused on men's attire for job-related purposes, and formal events such as weddings. This success led to rapid growth from 2009-2019.

However , like countless other DTC companies in the retail industry, the Debtors did not anticipate the unprecedented supply chain disruption caused by the spread of the novel coronavirus disease 2019 ("COVID-19"). Once COVID-19 hit, people were required to work from home and substantially all of formal in-person events, including weddings, came to a halt. Given the focus of the Debtors' business on custom clothes, including office and formal wear, these events decimated the Debtors' sales.

As a result, on May 26, 2020, Blank Label filed a chapter 11 case under Subchapter V of the Bankruptcy Code in a case styled *In re Blank Label Group, Inc.*, Case No. 20-11201 (Bankr. D. Mass. 2020) (the "Boston Case").

On March 4, 2021, Blank Label achieved a confirmed plan of reorganization in the Boston Case, which was substantially consummated (the "Boston Plan"). The Boston Plan was consensual, and therefore it was confirmed under 1191(a) of the Bankruptcy Code and Blank Label was discharged from all of its debts as of the Boston Plan's confirmation date.

On April 30, 2021, a subsidiary of Blank Label and BlackLapel entered into a Merger Agreement (the "BlackLapel Merger Agreement"). Pursuant to the BlackLapel Merger Agreement, among other things: (1) BlackLapel merged with a subsidiary of Blank Label and became a wholly owned subsidiary of Blank Label; and (2) BlackLapel's former shareholders became creditors of both Blank Label and BlackLapel. Subsequently, in light of the reduction in sales due to COVID-19, Blank Label attempted to realize the synergies between it and BlackLapel in order to reduce costs.

---

[2] The Debtors continue to analyze and reconcile this amount with their Professionals and this amount represents the high end of what may be due and owing.

To further expand reach and gain market share, on June 15, 2022, BLG Holdings, LLC ("BLG Holdings"), a wholly-owned subsidiary of Blank Label, entered into a Share Purchase Agreement with Ratio Clothing's founders to acquire the equity interests in Ratio Clothing (the "Ratio Clothing Share Purchase Agreement"). Pursuant to the Ratio Clothing Share Purchase Agreement, Ratio Clothing became a wholly owned subsidiary of BLG Holdings, and the founders became creditors of BLG Holdings.

Subsequent to the aforementioned acquisitions, supply chain migration from BlackLapel to Blank Label's manufacturer occurred. However, the migration took much longer than anticipated, which resulted in BlackLapel holding double inventory. Notwithstanding the excess inventory, supply chain issues caused by COVID-19 resulted in orders being delayed and cancelled. Specifically, lockdowns in Shanghai due to COVID-19 caused four months of orders to be cancelled and the customers to be refunded.

Prior to the Petition Date, to enhance control over cash, Debtors' management revised accounting procedures to route the funding of nearly all of the Debtors' operations through an operating account in the name of Ratio Clothing, which then held most funds generated from the Debtors' sales. This unfortunately resulted in commingling of the Debtors' funds and, as individual transactions were not well described, accurate allocation of transactions to each Debtor has proved to be extremely difficult. There is accordingly significant concern that individual Debtors' financials do not accurately reflect the specific activities of each Debtor.

In addition, the Debtors also experienced market response efficiency drop-off due to the iOS 14 release. This change limited ad functions on popular social media sites like Facebook.com and its tracking for application and web conversion events. As a result, personalizations and performance reporting was hindered with respect to customers on those platforms leading to an material loss of marketing efficiency and a decrease in margins. Such inefficiency became increasingly worse throughout calendar year 2021.

The combination of the pandemic and the marketing efficiency drop-off created a perfect storm for the Debtors which then required an increase in working capital to fund inventory and marketing needs.

In order to save costs, the Debtors terminated the employment for a majority of their staff. To further save costs for the Debtors, Blank Label centralized the processing of the salaries of remaining employees of BlackLapel and funded the compensation costs.

Beginning in 2022, the Debtors incurred additional debt in order to promote growth by investing in physical retail stores and paid marketing. However, sales for 2022 failed to meet the Debtors' forecast, and despite efforts to promote growth, the Debtors remained unable to pay its creditors in full in accordance with the terms of their respective agreements. In addition, the depressed financial markets and macro-economic conditions devalued the enterprise value of the Debtors.

Accordingly, in October 2022, the Debtors started exploring restructuring alternatives to right-size their balance sheets. In connection therewith, around that same time, the Debtors

retained Pashman Stein Walder Hayden, P.C. ("Pashman") to serve as their restructuring counsel.

On or around that same time, the Debtors began soliciting interest in and negotiating with potential purchasers of substantially all of their Assets, with the goal of finding a stalking horse bidder. In connection therewith, Fan Bi and his team spoke with and provided diligence materials to approximately ten (10) third parties interested in purchasing all or a portion of the Assets.

The prepetition process was fruitful and on March 7, 2023, the Debtors executed an Asset Purchase Agreement (the "Stalking Horse Agreement") with H.M. Cole, LLC (the "Stalking Horse Bidder" or the "Buyer," as applicable), who agreed to purchase the Acquired Assets (as defined in the Stalking Horse Agreement) of the Debtors for $750,000.00 and to assume certain of the Debtors' liabilities. The Stalking Horse Agreement also provided for a $500,000.00 transition management fee (the "Transition Management Fee") to Fan Bi, the Debtors' then principal, which was to be paid based on the following milestones:

1. $150,000.00 payable at Closing (as defined in the Stalking Horse Agreement).

2. $150,000.00 payable within thirty (30) days after all Acquired Assets are transferred in total, including customer records and raw materials inventory.

   a. Prior representations suggested that the value of the available inventory was approximately $300,000.00. The Buyer required that the delivered value of the useable and acceptable inventory must be equal to approximately $250,000.00.

3. $100,000.00 payable within thirty (30) days after Fan Bi introduced the Buyer to two (2) or more men's fashion brands other than the Debtors or any Affiliate of the Debtors and transition work related to any of the Debtors' non-debtor Affiliates.

4. $100,000.00 payable within ninety (90) days after the payment in (3) above for basic transition services, questions regarding operations and consultation services.

1.8   **Significant Events During the Chapter 11 Cases.**

The Debtors have taken a number of steps in the Chapter 11 Case to implement its restructuring, including through a sale of substantially all of the Debtors' assets (the "Sale"). On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of an Order Shortening Notice of Hearing on the Debtors' Motion for Entry of Orders (I) Approving (A) Bidding Procedures for the Sale of Substantially All Assets of Debtors, (B) Entry into Stalking Horse Agreement and Related Bid Protections, (C) Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases, (D) Scheduling the Auction and Sale Hearing and (E) Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrance and (B) the Assumption and Assignment of Designated*

*Executory Contracts and Unexpired Leases and (III) Granting Related Relief*, which sought expedited consideration of the *Debtors' Motion for Entry of Orders (I) Approving (A) Bidding Procedures for the Sale of Substantially All Assets of Debtors, (B) Entry into Stalking Horse Agreement and Related Bid Protections, (C) Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases, (D) Scheduling the Auction and Sale Hearing and (E) Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith, (II) Approving (A) the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrance and (B) the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases and (III) Granting Related Relief* (the "Bidding Procedures Motion").

On March 23, 2023, the Bankruptcy Court held a hearing (the "Bidding Procedures Hearing") and granted the relief requested in Bidding Procedures Motion over the objection of certain issues raised by the U.S. Trustee and the Subchapter V Trustee. At the Bidding Procedures Hearing, the Bankruptcy Court, the Subchapter V Trustee and U.S. Trustee voiced various concerns, including: (1) the lack of independent voices at the Debtors to monitor and conduct the Sale, and run the businesses; (2) the lack of up to date financials at the Debtors; and (3) that the Stalking Horse Agreement provided for a large Transition Management Fee to Fan Bi.

After the Bidding Procedures Hearing, the Debtors immediately undertook a number of steps to address the concerns raised at the Bidding Procedures Hearing, which included the following:

1. The Debtors engaged Peter Furman ("Mr. Furman") of HunterPoint LLC ("HunterPoint") as their Chief Restructuring Officer to oversee the Debtors' businesses and the Sale process [D.I. 96, 110].

2. The Debtors engaged John Bambach ("Mr. Bambach") as an independent director (the "Independent Director," and collectively with Mr. Furman, the "Current Management") at the Debtors, who would be an independent voice in running the Debtors' businesses and ultimately make decisions with respect to the Sale.

3. Mr. Furman immediately engaged with the Debtors' tax and financial accountants to update the Debtors' financials.

Mr. Furman and the Debtors engaged in a robust marketing process for the Sale, which culminated in the Debtors receiving a Qualified Bid (as defined in the Bidding Procedures Motion) for Ratio Clothing other than the Stalking Horse Bid. On May 15, 2023, the Debtors held a robust auction (the "Auction") and the Stalking Horse Bidder was deemed the Successful Bidder (as defined in the Bidding Procedures Motion) for the Acquired Assets of all Debtors, which was subsequently documented in an Asset Purchase Agreement, dated May 23, 2023 (the "Purchase Agreement"). The Purchase Agreement provides for an aggregate purchase price of $1,250,000.00 for the Acquired Assets (the "Sale Proceeds"), to be allocated amongst the Debtors as follows: (1) $200,000.00 for the Acquired Assets of Ratio Clothing; (2) $700,000.00

for the Acquired Assets of BlackLapel; (3) $200,000.00 for the Acquired Assets of Blank Label. Additionally, the Purchase Agreement provides for (4) a $100,000.00 Transition Management Fee to Fan Bi (the "Bi Transition Management Fee") and (5) a $50,000.00 Transition Management Fee (the "Employee Transition Management Fee") to be allocated to certain other employees, each subject to the respective Transition Services Agreement with the respective Transition Service Agreement Counterparty (as defined in the Purchase Agreement). On May 23, 2023, the Bankruptcy Court held a hearing and approved the Sale [D.I. 154] (the "Sale Order"). Pursuant to the Sale Order, the Sale Proceeds were placed in an escrow account with Debtors' counsel (the "Sale Proceeds Escrow," and the Cash in the Sale Proceeds Escrow, the "Escrowed Funds"), which remained subject to liens, claims and encumbrances with respect to the Acquired Assets. On May 31, 2023, the Sale closed, and the Sale Proceeds were placed in the Sale Proceeds Escrow.

During the Chapter 11 Cases, the Debtors retained certain Professionals to implement their restructuring. To this end:

1. On March 15, 2023, the Debtors filed the *Application for Entry of an Order Under Section 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016 Authorizing Retention and Employment of Pashman Stein Walder Hayden, P.C. as Counsel for the Debtor Nunc Pro Tunc to the Petition Date* [D.I. 42]. The Bankruptcy Court entered an order approving the retention of Pashman on March 31, 2023. *See* D.I. 78.

2. On March 15, 2023, the Debtors filed their *Motion for Entry of an Order Approving Procedures for the Retention and Compensation of Ordinary Course Professionals Nunc Pro Tunc to the Petition Date* [D.I 43] which, among other things, sought to retain By the Book, LLC as accounting service providers. The Bankruptcy Court entered an order approving this motion on March 31, 2023. *See* D.I. 107. On April 19, 2023, the Debtors filed their *First Notice of Supplemental List of Professionals to be Employed by the Debtors in the Ordinary Course of Business* [D.I. 107], which sought to retain Karr & Boucher, PLLC as a tax advisory firm. Given that no objection was filed, Karr & Boucher, PLLC's retention was approved. On June 23, 2023, the Debtors filed their *Second Notice of Supplemental List of Professionals to be Employed by the Debtors in the Ordinary Course of Business* [D.I. 170], which sought to retain Katz, Nannis & Solomon, P.C. for tax services. Given that no objection was filed, Katz, Nannis & Solomon P.C.'s retention was approved.

3. On April 4, 2023, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain ~~Hunterpoint~~HunterPoint, LLC to Provide a Chief Restructuring Officer,* Nunc Pro Tunc *as of March 24, 2023, and Limited Waiver of Del. Bankr. L.R. 2016-2* [D.I. 94], which sought to retain Mr. Furman as the Debtors' Chief Restructuring Officer. The Bankruptcy Court entered an order approving the retention of Mr. Furman of HunterPoint on April 20, 2023 [D.I. 110].

On June 6, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order Extending Time to File Plan Pursuant to 11 U.S.C. §§ 105 and 1189(b)* [D.I. 164] (the "Motion to Extend"). On June 28, 2023, the Bankruptcy Court entered an order approving the Motion to Extend, which extended the Debtors' deadline to file the initial version of this Plan from June 6, 2023 to July 21, 2023 [D.I. 182].

On June 23, 2023, the Debtors filed *BlackLapel Custom Clothiers, Inc. v. Settle Funding, LLC,* Adv. Proc. 23-50412 (JTD) (the "Settle Adversary Proceeding"), which sought to reclassify Settle Funding, LLC's ("Settle") proof of claim (the "Settle Claim") as primarily a general unsecured claim on the grounds stated therein. As more fully described below, the parties have resolved the Settle Adversary Proceeding subject to Bankruptcy Court approval of the Settle 9019 Motion.

On July 12, 2023, the Debtors' filed the *Debtors' Motion Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019 for Entry of an Order (I) Approving the Settlement Agreement By and Among Blank Label Group, Inc., BLG Holdings, LLC, Fan BI, Jack Erwin Inc., and Jack Erwin Founders, and (II) Granting Related Relief* [D.I. 186] (the "Jack Erwin 9019 Motion"), which seeks approval of a settlement (the "Jack Erwin Settlement") to resolve certain issues related to ownership of non-debtor affiliate Jack Erwin, Inc. ("Jack Erwin"). As further described in the Jack Erwin 9019 Motion, pursuant to the Jack Erwin Settlement, BLG Holdings will revert its ownership interest in Jack Erwin to the founders of Jack Erwin (the "Jack Erwin Founders") in light of alleged violations of agreements related to BLG Holdings' purchase of Jack Erwin shares from the Jack Erwin Founders, which occurred prior to the Petition Date. In exchange, the founders of Jack Erwin will release claims against the Debtors. Additionally, the Estates will be reimbursed for certain payroll payments made by the Debtors to Jack Erwin employees, which were funded from June 1, 2023 through the effective date of the Jack Erwin Settlement. On August 7, 2023, the Bankruptcy Court entered an order granting the Jack Erwin 9019 Motion [D.I. 225].

On July 13, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order to Surcharge Expenses Incurred by the Debtors in Preserving and Maximizing the Value of the Debtors' Assets and Limiting a Postposition Lien on Proceeds Pursuant to 11 U.S.C. §§ 506(c) and 552(b)* [D.I. 189] (the "Surcharge Motion"). As further described in the Surcharge Motion, the Debtors sought to: (1) recover and surcharge from the Escrowed Funds certain fees and expenses related to enhancing the value of the collateral of any purported Holder of a Secured Claim by way of the Sale (the "Fees and Expenses"); and (2) to the extent a purported Holder of Secured Claim holds a lien on the Sale Proceeds, make such lien subject to payment of the Fees and Expenses based on the equities of the case. On August 4, 2023, the Bankruptcy Court entered an order granting the Surcharge Motion [D.I. 222].

On September 15, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Permitting the Debtors to Disburse Part of the Transition Management Fee From Escrow and (II) Granting Related Relief* [D.I. 236] (the "Employee Transition Management Fee Disbursement Motion"), which sought authority to disburse the Employee Transition Management Fee from the Sale Proceeds Escrow. On September 26, 2023, the Bankruptcy

Court entered an order approving the Employee Transition Management Fee Disbursement Motion [D.I. 250].

On October 10, 2023, the Buyer filed the *Motion of H.M. Cole, LLC for Payment of $100,000 Transition Management Fee* [D.I. 258] (the "Buyer's Bi Transition Management Fee Disbursement Motion"), which ~~seeks~~sought disbursement of the Bi Transition Management Fee to the Buyer.  On ~~[~~October 24, 2023~~]~~, the Debtors filed their *Debtors' Objection to Motion of H.M. Cole, LLC for Payment of $100,000 Transition Management Fee* [D.I. 272].  ~~A hearing to consider~~On November 13, 2023, the Bankruptcy Court entered an order denying the Buyer's Bi Transition Management Fee Disbursement Motion ~~will be heard by the Bankruptcy Court on November 9, 2023~~[D.I. 302].

On October 19, 2023, the Debtors filed the *Debtors' Motion Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019 for Entry for an Order (I) Approving the Settlement Agreement by and Among the Debtors and Settle Funding, LLC and (II) Granting Related Relief* [D.I. 269] (the "Settle 9019 Motion"), which ~~seeks~~sought approval of an agreement between Settle and the Debtors (the "Settle 9019 Agreement").  Among other items, the Settle 9019 Agreement: (1) allows the Settle Claim in full, plus attorney's fees and interest at the federal judgment rate as of the Petition Date (the "Allowed Settle Claim"), affording Settle a lien on the Escrowed Funds; (2) provides for an immediate cash payment to Settle from the Sale Proceeds Escrow in the amount of $150,000.00 (the "Cash Payment"); (3) authorizes the Debtors to utilize the Escrowed Funds (net of the Cash Payment)—which would be Settle's cash collateral in light of the Settle 9019 Agreement—to fund the Litigation Trust; (4) provides that distributions made from the Litigation Trust (other than payments made in accordance with a budget created pursuant to the Settle 9019 Agreement (the "Litigation Trust Budget")) shall first be made to Settle to satisfy the Allowed Settle Claim; and (5) resolves the Settle Adversary Proceeding.  The Settle 9019 Motion was a watershed moment for the Debtors in these Chapter 11 Cases as it paved the way for a feasible, confirmable Plan.  By resolving the controversies with Settle (including the Settle Adversary Proceeding), the Settle 9019 Agreement maximizes value for creditors by freeing liquidity from the Escrowed Funds—which are currently subject to liens and encumbrances pursuant to the Sale Order—and will maximize distributions to *all* creditors by funding the Litigation Trust and bringing more cash into the estates.  ~~A hearing to consider approval of~~On November 13, 2023, the Bankruptcy Court entered an order granting the Settle 9019 Motion ~~is scheduled for November 9, 2023~~[D.I. 303].

On November 15, 2023, the Buyer filed its *Motion of H.M. Cole, LLC for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* [D.I. 304] (the "Buyer's Administrative Claim Motion"), seeking allowance of an administrative claim in the amount of $100,000, which represents alleged damages in connection with the Bi Transition Management Fee.  On November 29, 2023, the Debtors filed their objection to the Buyer's Administrative Claim Motion [D.I. 308].  A hearing to consider the Buyer's Administrative Claim Motion will be held on December 6, 2023.

On November 20, 2023, the Debtors filed their Plan Supplement [D.I. 305].

**1.9    Projected recovery of avoidable transfers.**

With the exception of the Settle Adversary Proceeding, the Debtors have not yet performed a complete analysis of potential recoveries with respect to preference, fraudulent conveyance, or other Avoidance Actions, but believe there exists material value to be obtained from such Avoidance Actions and other Causes of Action that will be assigned to the Litigation Trust. To the extent any such actions are pursued, the Litigation Trustee will make such determination.

**ARTICLE 2**

**THE PLAN**

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Holders of such Claims or Equity Interests are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

**2.1    Unclassified claims.**

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expense Claims and Priority Tax Claims are not classified. They are not considered Impaired, and Holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any Class:

**A.    Administrative Expenses**

The Debtors must pay all Administrative Expense in full, unless the Holder of the Administrative Expense Claim agrees to a different treatment. If an Administrative Expense is disputed by the Debtors, Litigation Trustee, or another party in interest, the Bankruptcy Court must determine the validity and amount of the Administrative Claim or, in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtors and the Holder of such Administrative Claim or court order. If the Administrative Expense Claim is disputed, payment will be made after the Administrative Expense Claim is allowed by the Bankruptcy Court.

There are several types of Administrative Expense Claims, including the following:

1.  If the Debtors trade in the ordinary course of business following their filing of the Chapter 11 Cases and the Current Management approved the relevant documentation prior to the closing of the Sale, such Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred

11

by the Debtors after the Commencement Date will be paid on the ongoing basis in accordance with the ordinary business practices and terms between the Debtors and their trade creditors prior to the closing of the Sale.

2.   If the Debtors received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense Claim.

3.   Administrative Expense Claims also include any post-petition fees and expenses allowed to Professionals, HunterPoint, and the Independent Director, including the Allowed Claim for the Subchapter V Trustee for fees and expenses, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtors during the course of the Chapter 11 Cases.  The fees and expenses of Professionals must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtors' estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment | Estimated Recovery |
|---|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date and prior to the closing of the Sale | Approximately $[7,000.00] | Payment through the Plan as follows:<br><br>Paid on an ongoing basis in accordance with the customary business practices of the Debtors and terms between the Debtors and its creditor. | Estimated Recovery Percentage: 100%<br><br>Form of Recovery: Cash |
| Administrative Tax Claim | Approximately $[10,000.00] | Payment through the Plan as follows:<br><br>Taxes that arise in the ordinary course of business after the Petition Date will be paid in the ordinary course and pursuant to the ordinary business practices between the Debtors and the relevant | Estimated Recovery Percentage: 100%<br><br>Form of Recovery: Cash |

| | | taxing authorities. | |
|---|---|---|---|
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0 | Payment through the Plan as follows:<br><br>Not applicable, subject to any Claims that may be filed. | N/A |
| Professional Fees, as approved by the Bankruptcy Court | Approximately $[191,096.09] | Payment through the Plan as follows:<br><br>Allowed Professional Fee Claims that are due and owing as of the Effective Date shall be paid [50]% of such Allowed Professional Fee Claim with the Debtors' Assets on the Effective Date, with the remaining amount of such Allowed Professional Fee Claim to paid from the Litigation Trust Assets, to be distributed by the Litigation Trust, either through monthly installments commencing in or around the Effective Date and completing in or around Q4 2028 or otherwise.<br><br>Further, each Professional who holds a Professional Fee Claim shall be required to File with the Bankruptcy | Estimated Recovery Percentage: Unknown<br><br>Form of Recovery: Cash |

| | | Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Professional Fee Bar Date. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Article 2 shall be paid only to the extent Allowed by Final Order. Once all of the Professional Fee Claims have been considered and Allowed by the Bankruptcy Court, the Debtors shall pay, after the application of any retainer amounts held by such Professional, such Allowed Professional Fee Claims as soon as practicable from the Litigation Trust Assets, to be distributed by the Litigation Trust. | |
|---|---|---|---|
| HunterPoint and Independent Director Fees | Approximately $[163,490.00] | Allowed Claims of HunterPoint and the Independent Director that are due and owing as of the Effective Date shall be paid [50]% of | Estimated Recovery Percentage: Unknown

Form of Recovery: |

| | | such Allowed Claims with the Debtors' Assets on the Effective Date, with the remaining amount of such Allowed Claims to paid from the Litigation Trust Assets, to be distributed by the Litigation Trust, either through monthly installments commencing in or around the Effective Date and completing in or around Q4 2028 or otherwise. | Cash |
|---|---|---|---|
| Subchapter V Trustee | Approximately $[37,500.00] | Payment through the Plan as follows: To be paid in full as soon as practicable from the ~~Debtors'~~Litigation Trust Assets. | Estimated Recovery Percentage: 100%  Form of Recovery: Cash |
| TOTAL | Approximately $[409,086.09] | | |

## B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Code.  Unless the Holder of such Allowed Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of Priority Tax Claim will be paid as set forth in the chart below.

| Type | Estimated Amount Owed | Proposed Treatment | Estimated Recovery |
|---|---|---|---|
| Priority Tax Claims | [$34,152.30] | Payment through the Plan as follows:  all Allowed Priority Tax Claims shall be paid in | Estimated Recovery Percentage: 100%  Form of Recovery: Cash |

| | | full from the Litigation Trust Assets, to be distributed by the Litigation Trust in accordance with the Liquidating Trust Budget, either through monthly installments commencing in or around the Effective Date and completing in or around Q4 2028 or otherwise. | |
|---|---|---|---|

### 2.2    Classes of Claims and Equity Interest.

The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan are as follows and are discussed in more detail below:

| Class | Description | Treatment | Impairment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Secured Claims | Except to the extent that a Holder of an Allowed Secured Claim has been paid prior to the Effective Date or agrees to a different treatment and except with respect to the Allowed Settle Claim, all Allowed Secured Claims shall be paid in full by *Pro rata* distributions of the Litigation Trust Assets, to be distributed by the Litigation Trust. Holders of Allowed Secured Claims shall retain any liens they hold on | Impaired | No (Deemed to Reject) | Estimated Recovery Percentage: Unknown

Form of Recovery: Cash |

| | | the applicable portion of the Escrowed Funds that shall be deemed Litigation Trust Assets as of the Effective Date, *provided that* Settle shall be entitled to the first distribution of Litigation Trust Assets from the Litigaiton Trust on account of the Allowed Settle Claim and no distribution of the Litigation Trust Assets shall occur other than to Settle until such time as the Allowed Settle Claim is paid in full. | | | |
|---|---|---|---|---|---|
| 2 | Purported Secured Claims at Blank Label | *Pro rata* distribution of the Litigation Trust Assets, to be distributed by the Litigation Trust, in accordance with the Class 2 Creditors' treatment under the Boston Plan. | Unimpaired | No (Presumed to Accept) | Estimated Recovery Percentage: 100%<br><br>Form of Recovery: Cash |
| 3 | Priority Unsecured Claims | All Allowed Priority Unsecured Claims shall be paid in full from the ~~Debtor's~~Debtors' Assets, in Cash on | Unimpaired | No (Presumed to Accept) | Estimated Recovery Percentage: 100%<br><br>Form of Recovery: |

17

| | | | | | |
|---|---|---|---|---|---|
| | | or after the Effective Date. | | | Cash |
| 4 | General Unsecured Claims | *Pro rata* payment of the Litigation Trust Assets, to be distributed by the Litigation Trust, after all Administrative Claims, Priority Tax Claims, Priority Unsecured Claims, Secured Claims, and Purported Secured Claims at Blank Label and have been paid in full. | Impaired | No (Deemed to Reject) | Estimated Recovery Percentage: Unknown<br><br>Form of Recovery: Cash |
| 5 | Equity Interests | Equity Interests shall be cancelled and Class 5 Equity Interests shall receive no distribution on account of their equity. | Impaired | No (Deemed to Reject) | Equity Interests shall be cancelled and Class 5 Equity Interests shall receive no distribution on account of their equity. |

The following is a more complete discussion of the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.    Class of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent Allowed as secured Claims under section 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim.  In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart identifies the Plan's proposed treatment of Secured Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Secured Claims<br><br>Total amount of Claims asserted: [$9,618,722.76][3] | Impaired (Deemed to Reject) | Except to the extent that a Holder of an Allowed Secured Claim has been paid prior to the Effective Date or agrees to a different treatment, all Allowed Secured Claims shall be paid in full by *Pro rata* distributions of the Litigation Trust Assets, to be distributed by the Litigation Trust. Holders of Allowed Secured Claims shall retain any liens they hold on the applicable portion of the Escrowed Funds that shall be deemed Litigation Trust Assets as of the Effective Date, *provided that* Settle shall be entitled to the first distribution of Litigation Trust Assets from the Litigaiton Trust on account of the Allowed Settle Claim and no distribution of the Litigation Trust Assets shall occur other than to Settle until such time as the Allowed Settle Claim is paid in full. |

**B.**    **Class of Purported Secured Claims at Blank Label**

---

[3] This amount includes two secured claims filed by the founders of BlackLapel against Blank Label and BlackLapel, totaling $9,102,520.30 (the "BlackLapel Founders' Claims").  However, the BlackLapel Founders' Claims shall be subject to an objection during the claims reconciliation process, which will challenge the secured status of such claims given that the BlackLapel Founders' Claims, among other things, (1) were not properly perfected and (2) even if perfected, any liens only attach to the equity Interests of BlackLapel which hold no value.

This Class contains secured creditors under the Boston Plan whose liens were discharged on the effective date of the Boston Plan (the "Purported Secured Claims at Blank Label").[4] Pursuant to this Plan, the Purported Secured Claims at Blank Label are receiving the same treatment that they received under the Boston Plan.

The following chart identifies the Plan's proposed treatment of Purported Secured Claims at Blank Label:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 2 | Purported Secured Claims at Blank Label.<br><br>Total amount of Claims asserted: $[101,501.10] | Unimpaired (Presumed to Accept) | Unless a Holder of Purported Secured Claims at Blank Label has been paid prior to the Effective Date or agrees to a different treatment, all Purported Secured Claims at Blank Label shall be paid in accordance with the Boston Plan—and therefore will be paid in full by Q1 2026—in equal monthly installments from the Litigation Trust or otherwise. |

## C.    Class of Priority Unsecured Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code (a "Priority Unsecured Claim") are required to be placed in classes. The Code requires that each holder of such a Claim receive Cash on the Effective Date of the Plan equal to the allowed amount of such Claim.  However, a class of holders of such Claims may accept different treatment.  The Debtors or Litigation Trustee, as applicable, shall pay all Priority Unsecured Claims in full in accordance with section 1129(a)(9)(B)(i) of the Bankruptcy Code, and therefore such Class is Unimpaired.

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 3 | Priority Unsecured | Unimpaired (Presumed to Accept) | All Allowed Priority Unsecured Claims shall be paid in full from the Debtors' Assets, in Cash on or after the Effective Date. |

---

[4] The Boston Plan was confirmed under 11 U.S.C. 1191(a) and therefore all secured liens were discharged on the effective date of the Boston Plan.

| | | | |
|---|---|---|---|
| | Claims<br><br>Total amount of Claims asserted: $[55,000.00] [5] | | |

### D.    Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | General Unsecured Claims<br><br>Total amount of Claims asserted: [$7,376,821.68] | Impaired (Deemed to Reject) | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a different treatment, all Allowed General Unsecured Claims shall be paid *pro rata* from the Litigation Trust Assets after all Administrative Claims, Priority Unsecured Claims, Priority Tax Claims, Secured Claims, and Purported Secured Claims at Blank Label have been paid in full. |

### E.    Class of Holders of Equity Interests

Equity Interest Holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtors.  In a corporation, entities holding preferred or common stock are Equity Interest Holders.

The following chart sets forth the Plan's proposed treatment of the Class of Equity Interest Holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|

---

[5] The Debtors continue to analyze and reconcile this amount with their Professionals and this amount represents the high end of what may be due and owing.

| 5 | Equity Interests | Impaired (Deemed to Reject) | Equity Interests shall be cancelled and Class 5 Equity Interests shall receive no distribution on account of their equity. |
|---|---|---|---|

### 2.3    Claim Objections

The Debtors or, the Litigation Trustee, or the Subchapter V Trustee, as applicable, may object to the amount or validity of any Claim within 180 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of the Claim, *provided, however,* that no party shall be entitled to object to any Claim that has been previously allowed including the Allowed Settle Claim by Final Order.  The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtors or the Litigation Trustee, as applicable, will pay the Allowed Claim in accordance with the Plan.

### 2.4    Treatment Of Executory Contracts and Unexpired Leases

Executory Contracts are contracts where significant performance of the contract remains for both the Debtors and another party to the contract.  The Debtors have the right to reject, assume (*i.e.,* accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtors' intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the Executory Contracts.

The Debtors will reject any Executory Contract that is not expressly included on the Assumed Contract List or that has previously been assumed under section 365 of the Bankruptcy Code by an order of the Bankruptcy Court.

**The deadline for filing a Proof of Claim based on a Rejection Claim arising from the Rejection of an Executory Contract that is rejected by the Debtors 30 days after service of notice of entry of the Confirmation Order**.  Any Rejection Claim based on the rejection of an Executory Contract will be barred if the Proof of Claim is not timely filed by the applicable Rejection Claim Bar Date, unless the Bankruptcy Court orders otherwise.

### 2.5    Means For Implementation Of The Plan.

The Debtors and Litigation Trustee will implement the Plan through distribution of the Litigation Trust Assets, and prosecution of Estate Causes of Action.

### A.  Overview of the Litigation Trust

On or soon after the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of selling any remaining Estate Assets,

prosecuting and resolving the Causes of Action, objecting to Claims, resolving Disputed Claims, and effecting the Distributions to be made under the Plan to the Holders of Allowed Claims and Interests in accordance with the terms of the Plan. The Beneficiaries of the Litigation Trust shall be the Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims (Secured Claims) including Settle with respect to the Allowed Settle Claim, Allowed Class 2 Claims (Purported Secured Claims at Blank Label), Allowed Class 3 Claims (Priority Unsecured Claims), and Allowed Class 4 Claims (General Unsecured Claims). Pursuant to the Plan, the Litigation Trust shall contain a waterfall for Distributions by which, subject to the Litigation Trust Reserve, Litigation Trust Distributable Cash shall satisfy beneficial interests, in full and in Cash, and in order of priority set forth above. All beneficial interests in the Litigation Trust shall be subject to such priorities in Distributions.

The Litigation Trust shall investigate a number of suspicious transactions that occurred prior to and after the Petition Date by former management whereby the Debtors' Assets were transferred for apparently no legitimate reason. The Debtors believe that such transactions may be subject to various avoidance actions, including potential fraudulent transfer, preference and turnover actions. In particular, Insiders and former consultants of the Debtors, and transactions related to such Insiders and consultants, shall be investigated. Furthermore, the Litigation Trust will investigate potential breach of fiduciary duty claims against Insiders and other related parties. For the avoidance of doubt, the Litigation Trustee shall file a motion under Federal Rule of Bankruptcy Procedure 2004 against Fan Bi and Danny Wong.

Additionally, a number of Claims have been identified as potentially being subject to objections. The Litigation Trust will investigate such Claims during the claims reconciliation process.

### B. Appointment of Litigation Trustee

On or before the Plan Supplement Deadline, the Litigation Trustee shall be designated by the Debtors, after consultation with the United States Trustee, the Subchapter V Trustee and Settle, and the Litigation Trustee shall be appointed pursuant to the Confirmation Order. The Litigation Trustee shall be the exclusive trustee of the Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights and responsibilities of the Litigation Trustee and any other consultation party as provided for therein shall be specified in and subject to the terms of the Litigation Trust Agreement and shall include the authority and responsibility to: (i) receive, manage, invest, supervise and protect the Litigation Trust Assets; (ii) pay taxes and other obligations incurred by the Litigation Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals (the "Litigation Trust Professionals") to advise and assist in the administration, prosecution and Distribution of Litigation Trust Assets; (iv) calculate and implement Distributions of Litigation Trust Distributable Cash; (v) prosecute, compromise and settle all Disputed Claims and all claims and Causes of Action vested in the Litigation Trust; and (vi) pay Professional Fees of professionals retained in the Chapter 11 Case which are Allowed pursuant to any order of the Bankruptcy Court, whether such Professional Fees were incurred before or after the Effective Date. Other rights and duties of the Litigation Trustee shall be set forth in the

Litigation Trust Agreement. In addition, and for the avoidance of doubt, the Litigation Trust Agreement may provide Settle with certain consultation and other rights with respect to the use or distribution of Liquidation Trust Assets or the prosecution, settlement, or dismissal of any Estate Cause of Action.

### C.  Compensation of Litigation Trustee

The Litigation Trustee shall be reasonably compensated out of the Litigation Trust for his services and be reimbursed out of the Litigation Trust for his reasonable expenses in accordance with the compensation schedule attached to the Litigation Trust Agreement.

### D.  Treatment

It is intended that the Litigation Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business. In furtherance of this objective, the Litigation Trustee shall, in his business judgment, make continuing best efforts not to prolong unduly the duration of the Litigation Trust. All Litigation Trust Assets on the Effective Date shall be deemed for federal income tax purposes (i) to have been distributed (subject to any obligations relating to such assets) by the Debtors to the Beneficiaries (other than the Litigation Trusts Assets allocable to the Litigation Trust Reserve and any reserves created with respect to any Disputed Claims) in partial satisfaction of Allowed Claims and (ii) immediately thereafter contributed by such Beneficiaries to the Litigation Trust in exchange for their respective beneficial interests. The Beneficiaries will be treated as the deemed owners of the Litigation Trust (other than the assets allocable to any Litigation Trust Reserve and any reserves created with respect to Disputed Claims). The Litigation Trustee will be responsible for filing information on behalf of the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). Subject to contrary definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Litigation Trustee), the Litigation Trustee may (i) timely elect to treat any disputed claims reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B9 and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Litigation Trustee, the Debtor and the Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing. The Litigation Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Internal Revenue Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Beneficiaries. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiaries for all purposes of the Litigation Trust Agreement. The Litigation Trustee shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) and forms (including without limitation IRS Form W-8 and IRS Form W-9) as the Litigation Trustee, in his sole discretion, reasonably deems necessary to effectuate the Plan, the

Confirmation Order and the Litigation Trust Agreement in accordance with the tax laws of the United States and any state, commonwealth or territory thereof (any such information or forms, "Beneficiary Tax Information"). In order to receive Distributions under the Plan, all Beneficiaries shall identify themselves to the Litigation Trustee and provide tax information and the specifics of their holdings, to the extent the Litigation Trustee reasonably deems appropriate in his sole discretion. The Litigation Trustee may refuse to make a Distribution to any Beneficiary that fails to furnish such information within sixty (60) days of any request therefor by the Litigation Trustee, until such information is delivered; provided, however, that, upon the delivery of such information by a Beneficiary, the Litigation Trustee shall make such Distribution to which the Beneficiary is entitled, without interest; and, provided, further, that, if the Litigation Trustee fails to withhold in respect of amounts received or distributable with respect to any such Beneficiary and the Litigation Trustee is later held liable for the amount of such withholding, such Beneficiary shall reimburse the Litigation Trustee for such liability. The Litigation Trustee shall reserve all Distributions due to any Beneficiary that does not timely provide Beneficiary Tax Information (any such Distribution collectively, the "Beneficiary Tax Reserve") until the earlier of (a) such time that the Beneficiary provides the Beneficiary Tax Information and (b) the final Distribution Record Date. Any Beneficiary that does not timely provide Beneficiary Tax Information to the Litigation Trustee as of the final Distribution Record Date shall not be entitled to receive any Distributions from the Litigation Trust. Any funds that remain in the Beneficiary Tax Reserve as of the final Distribution Record Date shall be distributed Pro Rata to the Beneficiaries of the Litigation Trust in accordance with the terms of the Litigation Trust Agreement. The Litigation Trustee shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Litigation Trust. The Litigation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Litigation Trust shall be subject to any such withholding and reporting requirements.

### E.  Litigation Trust Assets

On or immediately after the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code and by operation of the Plan, the Debtors' Assets shall be transferred by the Debtors (and deemed transferred) to the Litigation Trust, free and clear of all Claims, Liens, charges, encumbrances, rights, and interests, without the need for any person to take any further action or obtain any approval, and the Confirmation Order shall supersede any other Final Order entered by the Bankruptcy Court.

The Litigation Trust may pursue any Cause of Action in accordance with the best interests of the Litigation Trust. No person may rely on the absence of a specific reference in the Plan or the Plan Supplement, to any Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Causes of Action. The Plan expressly reserves for the Litigation Trust all rights to prosecute any and all Causes of Action against any person, except as otherwise provided in the Plan. Unless any Cause of Action against any person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trust expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or

otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan.

For the avoidance of doubt, the Litigation Trust shall not operate any subsidiary of the Debtors, and the transfer of equity in any subsidiary is solely as a shareholder and not as an operator of any business.

Subject to the terms of the Settle 9019 Agreement, and upon approval of the Settle 9019 Motion, Settle shall be entitled to first right and claim to all Litigation Trust Assets in accordance with the terms of this Plan and the Litigation Trust Agreement, and no distribution of Litigation Trust Assets shall occur until the Allowed Settle Claim is paid in full, except as provided for in the Litigation Trust Agreement, as authorized under the Litigation Trust Budget, or as Settle may in its sole discretion authorize in writing.

## F.  Claims Reconciliation Process

From and after the Effective Date, the Litigation Trust shall be ~~solely~~ responsible for objecting to Claims which are not otherwise Allowed, for seeking to subordinate Equity Interests, for all related aspects of the claims reconciliation process, and for the payment of all costs and expenses incurred by the Litigation Trust in connection with such process.

## G.  Preservation of Right to Conduct Investigations

Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Litigation Trust upon the Effective Date and shall continue in effect until dissolution or termination of the Litigation Trust.

## H.  Preservation of Privilege and Defenses

No action taken by the Debtors in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).  The Confirmation Order shall provide that notwithstanding the Debtors providing any privileged information to the Litigation Trustee, the Litigation Trust, or any party or person associated with the Litigation Trust, such privileged information shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estate and shall remain privileged.

## I.  Indemnification and Exculpation

The Litigation Trustee, the Litigation Trust Professionals, and any professionals retained by the Litigation Trust Professionals, shall not be liable for actions taken or omitted in such capacities, except those acts arising out of its or their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the Litigation Trust for fees and expenses in defending any and all of its actions or inactions in such capacities, except for any actions or inactions involving willful misconduct or gross negligence.  Any

indemnification claim of the Litigation Trustee (and any other parties entitled to indemnification under this subsection) shall be satisfied first from the Litigation Trust Reserve and, then, to the extent the Litigation Trust Reserve is exhausted, from the Litigation Trust Distributable Cash.

### J.    Litigation Trust Agreement Controlling

In the event of any conflict between this summary or any other provision of the Plan and the Litigation Trust Agreement, then the terms and provisions of the Litigation Trust Agreement shall control. In the event of any conflict between the Plan, Confirmation Order and the Litigation Trust Agreement, then the terms of the Confirmation Order shall control. These descriptions of the Litigation Trust and the scope and terms of the Litigation Trust Agreement are qualified in their entirety by reference to the specific terms and conditions of the Litigation Trust Agreement.

### 2.6    Payments

If the Plan is confirmed under section 1191(a) or (b) of the Bankruptcy Code, payments to Creditors provided for in the Plan will be made by the Litigation Trust.

### 2.7    Post-Confirmation Management

The Debtors are liquidating and dissolving and there will be no post-confirmation management.

### 2.8    Tax Consequences Of The Plan

***Creditors and Holders of Equity Interests concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.***

## ARTICLE 3

## SUBSTANTIVE CONSOLIDATION

On the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation, and distributions.  Subject to the occurrence of the Effective Date, (i) all assets and liabilities of BlackLapel and Ratio Clothing shall be deemed merged or treated as though they were merged into and with the assets of Blank Label, (ii) no distributions shall be made under the Plan on account of Intercompany Claims among the Consolidated Debtors, (iii) all guarantees of any of the Consolidated Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any joint or several liability of any of the Debtors shall be deemed to be one obligation of the Consolidated Debtors, and (iv) each and every Claim filed or to be filed in the Chapter 11 Case of any of the Consolidated Debtors shall be deemed filed against the Consolidated Debtors, and shall be deemed one claim against and obligation of the Consolidated Debtors.

## ARTICLE 4

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

### 4.1    Ability To Initially Fund Plan

Subject to Bankruptcy Court approval of the Settle 9019 Motion, the Debtors believe that the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  Tables showing the amount of Cash on hand on the Effective Date of the Plan, and the sources of that Cash, shall be set forth in the Plan Supplement.

Unless otherwise set forth in the Plan, pursuant to § 1191(c)(3) of the Bankruptcy Code, if the Debtors or the Litigation Trust, as the case may be, default in payments under the Plan, the affected creditor shall notify the Debtors or the Litigation Trustee, as the case may be, who shall have fifteen (15) days to cure the default. If the Debtors and Litigation Trustee, as the case may be, do not cure within the 15 days, the creditor may file a notice of the default with the Court and request a hearing to consider appropriate remedies.

### 4.2.    Ability To Make Further Plan Payments And Operate Without Further Reorganization

The Debtors must submit all or such portion of the future earnings or other future income of the Debtors to the supervision and control of the Subchapter V Trustee as is necessary for the execution of the Plan.  The Debtors are complying with this requirement as they are liquidating all of their assets and litigation claims and the proceeds thereof will be used to satisfy Allowed Claims, including through Distributions of the Litigation Trust Assets.  Any further Distributions to Creditors is wholly-dependent on the prosecution of Causes of Action.

**YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.**

## ARTICLE 5

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that Holders of Claims who do not accept the Plan will receive at least as much under the Plan as such Holders of Claims would receive in a liquidation under chapter 7 of the Bankruptcy Code. A liquidation analysis is attached hereto as **Exhibit A**.

## ARTICLE 6

## NO DISCHARGE OF DEBTORS

In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtors will not receive any discharge of debt in these Chapter 11 Cases.

## ARTICLE 7

## GENERAL PROVISIONS

**7.1     Title to Assets**

If a plan is confirmed under section 1191(b) of the Bankruptcy Code, property of the Estate includes, in addition to the property specified in section 541 of the Bankruptcy Code, all property of the kind specified in that section that the Debtors acquire, as well as earnings from services performed by the Debtors, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in section 1185 of the Bankruptcy Code, the Plan, or the Confirmation Order, the Litigation Trust shall remain in possession of all property of the Estate.

**7.2     Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted this Plan), all persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts with the Debtors.

### 7.3    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 7.4    Retention of Subject Matter Jurisdiction.

The proposed Confirmation Order will provide that the Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for compensation to Professionals and other Administrative Expense Claims; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of the Executory Contracts; (v) to adjudicate any cause of action which may exist in favor of the Debtors, including Avoidance Actions; and (vi) to hear any other matter not inconsistent with the provisions of the Bankruptcy Code.

### 7.5    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meanings or interpretation of this Plan.

### 7.6    Modification of Plan.

The Debtors may modify the Plan at any time before Confirmation of the Plan pursuant to § 1193(a).  However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is Confirmed under § 1191(b), the Debtors or Litigation Trustee, as applicable, may seek to modify the Plan at any time only if (1) it is within three years of the Confirmation Date, or such longer time not to exceed five years as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 7.7    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Litigation Trustee, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Case.  Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 7.8    Compromise and Settlement of Claims and Controversies

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any Distribution to be made on account of such Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Equity Interests and is fair, equitable and reasonable.

### 7.9    Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtors and the consummation of the transactions contemplated by this Plan, on the Effective Date, the Released Parties are deemed forever released by the Debtors and their Estates, and each of their successors and assigns, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or their Estates would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the business or contractual arrangements between the Debtors and any of the Released Parties, the negotiation, formulation or preparation of this Plan, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtors Released Claims"), other than Debtors Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

### 7.10    Releases by Holders of Claims

**On the Effective Date, except as otherwise provided herein and except for the right to enforce this Plan, all persons who are presumed or deemed to have voted to accept this Plan under section 1126(f) of the Bankruptcy Code shall, to the fullest extent permitted by applicable law, be deemed to forever release, and waive the Released Parties of and from all liens, claims, causes of action, liabilities, encumbrances, security interests, interests or charges of any nature or description whatsoever based or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case or affecting property of the Estate, whether known or unknown, suspected or unsuspected, scheduled or unscheduled, contingent or not contingent, unliquidated or fixed, admitted or disputed, matured or unmatured, senior or subordinated, whether assertable directly or derivatively by, through, or related to any of the Released Parties and their successors and assigns whether at law, in equity or otherwise, based upon any condition, event, act, omission occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way relating to or**

31

arising out of, in whole or in part, the Debtors, the Debtors' prepetition operations, governance, financing, or fundraising, the purchase or sale of the Debtors' securities, the Chapter 11 Case, the pursuit of Confirmation of this Plan, the consummation of this Plan or the administration of this Plan, including without limitation, the negotiation and solicitation of this Plan, all regardless of whether (a) a Proof of Claim has been filed or is deemed to have been filed, (b) such Claim is allowed, or (c) the Holder of such Claim has voted to accept or reject this Plan, except for willful misconduct, gross negligence, fraud or criminal misconduct.  Nothing contained herein shall impact the right of any Holder of an Allowed Claim to receive a Distribution on account of its Allowed Claim in accordance with this Plan.

### 7.11    Exculpation

None of the Debtors, Mr. Bambach, Mr. Furman, the Debtors' current employees (not including independent contractors), their Professionals, or the Subchapter V Trustee (collectively, the "Exculpated Parties") shall have or incur any liability to any Holder of a Claim or Equity Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Debtors' Chapter 11 Cases, except for willful misconduct, gross negligence, fraud or criminal misconduct as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### 7.12    Injunction Related to Third Parties

From ~~and after the Effective Date, all persons who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined from commencing or continuing in any manner, any Cause of Action released, to be released or discharged pursuant to this Plan, or the Confirmation Order, from~~ and after the Effective Date, to the extent of the releases, **and** exculpation ~~and discharge~~ granted in this Plan, all Holders of Claims or Equity Interests shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to this Plan.  Except as otherwise expressly provided in this Plan, the Plan Supplement or related documents, or for obligations issued pursuant to this Plan, all persons who have held, hold or may hold Claims or Equity Interests that have been released~~, discharged,~~ or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c)

creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Equity Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, or settled ~~or discharged~~ pursuant to this Plan.

### 7.13    Term of Injunctions or Stays

Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

## ARTICLE 8

## ATTACHMENTS

The following documents are deemed to be part of the Plan:

- The Assumed Contracts List, ~~to be~~ included in the Plan Supplement.

- The Litigation Trust Agreement, ~~to be~~ included in the Plan Supplement.

- The Liquidation Analysis, attached hereto as **Exhibit A**.

- The Debtors' current monthly operating report, attached hereto as **Exhibit B**.

## ARTICLE 9

## FREQUENTLY ASKED QUESTIONS

**What are the Debtors Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document that sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** All of the Debtors' creditors have the right to review the Debtors' Plan and assess their rights therein. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, the Bankruptcy Court may confirm the Plan as proposed by the Debtors.

**How Do I Determine Which Class I Am In?** To determine the Class of your Claim or Equity Interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtors. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is Confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists Classes of Claimants and their types of Claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtors and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtors may not pay creditors as proposed in the Plan while the Debtors remain in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan typically requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. Here, however, no votes are being solicited. The Bankruptcy Court can still confirm the Plan, however, if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** The Plan does not provide any creditor with a right to vote.

**How Do I Determine Whether I Am in an Impaired Class?** The Chart in Section 2.2 identifies the Classes of creditors and indicates which Classes are Impaired and entitled to vote.

**How Do I Determine When and How Much I Will Be Paid?** In Article 2 of the Plan, the Debtors have provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 10

## DEFINITIONS

### A.    Scope of Definitions

For purposes of this Plan, unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 9 of this Plan. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definition found in the Bankruptcy Code.

###### B.    Definitions

**10.1**    **"Administrative Expense Bar Date"** shall apply to Administrative Expense Claims and means the first Business Day that is thirty (30) days after the Effective Date or such other date as established by Final Order of the Bankruptcy Court.

**10.2**    **"Administrative Expense Claim"** or **"Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred on or after the Commencement Date of preserving the Estates and operating the Debtors' businesses prior to the day before the date of Closing of the Sale; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) Professional Fee Claims; and (d) any fees or charges assessed against and payable by the Debtors under Section 1930 of title 28 of the United States Code.

**10.3**    **"Allowed Claim"** means (a) any Claim against the Debtors, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the Schedules as neither disputed, contingent or unliquidated, and for which no timely filed Proof of Claim has been filed, or (c) any Claim allowed pursuant to this Plan and, in each such case in (a) and (b) above, as to which either (i) no objection to the allowance thereof has been filed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such an objection is so filed and the Claim shall have been allowed pursuant to a Final Order (but only to the extent so allowed).

**10.4**    **"Allowed Priority Tax Claim"** means a Priority Tax Claim to the extent that it is or has become and Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**10.5**    **"Allowed Secured Claim"** means Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent Allowed as secured claims under § 506 of the Bankruptcy Code.

**10.6**    **"Allowed Settle Claim"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.7**    **"Allowed General Unsecured Claim"** means an unsecured claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**10.8**    **"Assets"** means all assets and property of the Estates of the Debtors, regardless of whether reflected in the financial records of the Debtors, including but not limited to: the

Escrowed Funds, Cash, deposits, refunds, rebates, abatements, fixtures, equipment, inventory, contractual interests, intangibles, claims, Cause of Action, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

10.9    "**Assumed Contracts**" means an Executory Contract deemed assumed effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

10.10    "**Assumed Contract List**" means the list of Assumed Contracts the Debtors intend to assume pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  The Assumed Contract List shall be included with the Plan Supplement.

10.11    "**Auction**" shall have the meaning ascribed to it in section 1.8 of the Plan.

10.12    "**Avoidance Actions**" means the Causes of Action under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code.  These may also be referred to as the "Chapter 5 Causes of Action".

10.13    "**Bankruptcy Code**" or "**Code**" means title 11 of the United States Code, as amended and in effect on the Commencement Date.

10.14    "**Bankruptcy Court**" means the United States Bankruptcy Court for District of Delaware having jurisdiction over the Chapter 11 Case.

10.15    "**Bankruptcy Rules**" means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, and (b) the Local Rules, in each case, as in effect on the Commencement Date.

10.16    "**Bar Date**" means the deadline set by the Bankruptcy Court, pursuant to a Final Order or otherwise, for filing Proofs of Claim in the Case, as the context may require, which includes the Administrative Expense Bar Date, the General Claims Bar Date, and the Governmental Claims Bar Date.

10.17    "**Beneficiaries**" means the Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Class 1 Claims (Secured Claims), Allowed Class 2 Claims (Purported Secured Claims at Blank Label), Allowed Class 3 Claims (Priority Unsecured Claims), and Allowed Class 4 Claims (General Unsecured Claims), against the Debtors' Estates as beneficiaries of the Litigation Trust, as set forth in this Plan and the Litigation Trust Agreement.

10.18    "**Beneficiary Tax Information**" shall have the meaning ascribed to it in section 2.5 of the Plan.

10.19    "**Beneficiary Tax Reserve**" shall have the meaning ascribed to it in section 2.5 of the Plan.

**10.20** **"Bidding Procedures Hearing"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.21** **"Bidding Procedures Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.22** **"Bi Transition Management Fee"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.23** **"BlackLapel"** shall mean BlackLapel Customer Clothiers, Inc.

**10.24** **"BlackLapel Founders' Claims"** shall have the meaning ascribed to it in section 2.2 of the Plan.

**10.25** **"BlackLapel Merger Agreement"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.26** **"Blank Label"** shall mean Blank Label Group, Inc.

**10.27** **"BLG Holdings"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.28** **"Boston Case"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.29** **"Boston Plan"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.30** **"Business Day"** means any day other than: (a) a Saturday, (b) a Sunday, and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**10.31** **"Buyer"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.32** **"Buyer's Administrative Claim Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.33** ~~10.32~~ **"Buyer's Bi Transition Management Fee Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.34** ~~10.33~~ **"Cases"** has the same meaning as the term "Chapter 11 Cases".

**10.35** ~~10.34~~ **"Cash"** means legal tender of the United States of America.

**10.36** ~~10.35~~ **"Cash Equivalents"** means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity

or capital of not less than five hundred million dollars ($500,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

**10.37** **10.36** **"Cash Payment"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.38** **10.37** **"Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to the Avoidance Actions, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Case, including through the Effective Date, that belong to the Debtors, the Debtors-in-Possession, or the Estates, including, without limitation, the Settle Adversary Proceeding.

**10.39** **10.38** **"Chapter 11 Cases"** means these cases under Subchapter V of chapter 11 of the Bankruptcy Code in which Blank Label, BlackLapel and Ratio Clothing are the Debtors-in-Possession.

**10.40** **10.39** **"Claim"** means any "right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**10.41** **10.40** **"Claims Objection Deadline"** shall have the meaning ascribed to it in Section 2.3 of the Plan.

**10.42** **10.41** **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to Section 1122 of the Bankruptcy Code.

**10.43** **10.42** **"Closing"** means the closing of the Sale that took place on May 31, 2023.

**10.44** **10.43** **"Commencement Date"** means March 8, 2023, the date the chapter 11 petitions for relief were filed.

**10.45** **10.44** **"Confirmation"** means the entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

**10.46** **10.45** **"Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order; *provided*, *however*, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such day or the date on which such stay expires and is no longer in effect.

10.47 10.46 **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time, which is presently scheduled for December 6, 2023 at 2 P.M. EST.

10.48 10.47 **"Confirmation Order"** means an order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

10.49 10.48 **"Consolidated Debtors"** means all of the Debtors.

10.50 10.49 **"Creditor"** has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

10.51 10.50 **"Cure"** means the payment or other honoring of all obligations required to be paid or honored in connection with the assumption of an Executory Contract pursuant to § 365 of the Bankruptcy Code, including (a) the cure of any non-monetary defaults to the extent required, if it all, pursuant to § 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution, within a reasonable period of time following the Effective Date, of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an Executory Contract, pursuant to §365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such other amount as may be agreed upon by the parties, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

10.52 10.51 **"Current Management"** has the meaning ascribed to it in section 1.8 of the Plan.

10.53 10.52 **"Debtors"** and **"Debtors-in-Position Debtors-in-Possession"** means Blank Label, BlackLapel and Ratio Clothing, the debtors and debtors in possession in these Cases.

10.54 10.53 **"Disallowed"** means a (a) Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, or as provided in this Plan, (b) Claim or any portion thereof that is Scheduled at zero or as an unknown amount, or as contingent, disputed, and/or unliquidated, and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) Claim or any portion thereof that is not Scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

10.55 10.54 **"Disputed Claim"** means any Claim against the Debtors pursuant to § 502 of the Bankruptcy Code which the Debtors have in any way objected to, challenged, or otherwise disputed.

**10.56** ~~10.55~~ **"Distribution"** means a distribution of Cash or other Assets of the Estates made in accordance with the Plan to Holders of Allowed Claims.

**10.57** ~~10.56~~ **"Distribution Date"** means the date on which the Litigation Trustee or Subchapter V Trustee, as the case may be, shall make a Distribution, which shall be a date or dates selected by the Litigation Trustee in accordance with the terms of this Plan.

**10.58** ~~10.57~~ **"Effective Date"** means a Business Day after the Confirmation Order becomes a Final Order.

**10.59** ~~10.58~~ **"Entity"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**10.60** ~~10.59~~ **"Equity Interest" or Interest"** means an ownership interest in the Debtors.

**10.61** ~~10.60~~ **"Employee Transition Management Fee"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.62** ~~10.61~~ **"Employee Transition Management Fee Disbursement Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.63** ~~10.62~~ **"Escrowed Funds"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.64** ~~10.63~~ **"Estate" and "Estates"** means the estates created in the Debtors' Chapter 11 Cases containing all assets of the Debtors pursuant to Bankruptcy Code section 541.

**10.65** ~~10.64~~ **"Exculpated Claim"** means any Claim or Causes of Action whatsoever related to any act taken or omitted after the Commencement Date and on or before the Effective Date arising out of the Chapter 11 Cases related to the Debtors and the Estates, including, without limitation, (i) the negotiation of any settlements entered into, with, or by the Debtors or any Estates representative, (ii) any and all actions taken by the Debtors or any Estates representative with respect to the Sale, (~~iii~~iii) the formulation, preparation, dissemination, negotiation, filing, prosecution, approval or administration of the Plan and/or any financing, investment, or sale agreement with respect to the Debtors, and/or (~~iii~~iv) any contract, instrument, release, assignment, or other agreement or document created or entered into in connection with any such negotiations or settlements of the Chapter 11 Cases, or any financing agreement or settlement agreement in connection therewith, the filing of the Chapter 11 Cases, the pursuit of Confirmation, and the administration and implementation of the Plan.

**10.66** ~~10.65~~ **"Exculpated Party" or "Exculpated Parties"** shall have the meaning ascribed to it in Article ~~7.12~~7.11 of the Plan.

10.67 10.66 **"Executory Contract"** means all unexpired leases and executory contracts as described in section 365 of the Bankruptcy Code.

10.68 10.67 **"Fees and Expenses"** shall have the meaning ascribed to it in section 1.8 of the Plan.

10.69 10.68 **"Final Order"** means an order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

10.69 **"First Distribution Date"** means the date identified in any notice of Effective Date which shall be the first date of payments under this Plan. The First Distribution Date shall fall no later than the last Business Day of the month preceding the month of the Effective Date.

10.70 **"General Claims Bar Date"** means May 8, 2023.

10.71 **"Governmental Claims Bar Date"** means September 4, 2023.

10.72 **"General Unsecured Claim"** means any Claim against a Debtors that is not (i) a Secured Claim; (ii) a Priority Unsecured Claim that is entitled to priority under Sections 503 or 507 of the Bankruptcy Code; or (iii) an Administrative Expense Claim, or a Priority Tax Claim.

10.73 **"Holder"** means the beneficial holder of any Claim or Equity Interest, in its capacity as such.

10.74 **"HunterPoint"** shall have the meaning ascribed to it in section 1.8 of the Plan.

10.75 **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

10.76 **"Independent Director"** shall have the meaning ascribed to it in section 1.8 of the Plan.

10.77 **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code, plus all entities under common control with the Debtors as of the Petition Date.

10.78 **"Jack Erwin"** shall have the meaning ascribed to it in section 1.8 of the Plan.

10.79 **"Jack Erwin 9019 Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

10.80 **"Jack Erwin Founders"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.81** **"Jack Erwin Settlement"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.82** **"Liabilities"** means the liabilities of the Estates, whether or not reflected in the financial records of the Debtors.

**10.83** **"Lien"** shall have the meaning ascribed to it in § 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided or void shall not constitute a Lien for the purposes of the Plan.

**10.84** "**Litigation Trust**" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

**10.85** **"Litigation Trust Agreement"** means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Litigation Trust, as such agreement may be subsequently amended, supplemented or otherwise modified from time to time in accordance with the terms thereof.

**10.86** **"Litigation Trust Assets**" means the assets held in the Litigation Trust comprised of all of the Debtors' Assets on the Effective Date, including but not limited to the Causes of Action.

**10.87** **"Litigation Trust Budget"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.88** **"Litigation Trust Distributable Cash"** means the Cash in the Litigation Trust and any other Assets of the Litigation Trust reduced to Cash net of all expenses and costs of operating or effectuating the duties of the Litigation Trust and establishing any reserves as the Litigation Trustee may determine is necessary pursuant to the terms of this Plan and the Litigation Trust Agreement.

**10.89** **"Litigation Trust Professionals"** shall have the meaning set forth in section 2.5 of the Plan.

**10.90** **"Litigation Trust Reserve"** means an amount sufficient to fund the accrued and estimated expenses and costs of operating or effectuating the duties of the Litigation Trust, as may be incurred from time to time by the Litigation Trustee pursuant to the Litigation Trust Agreement.

**10.91** **"Litigation Trustee"** shall mean the individual or entity designated and retained as the trustee to the Litigation Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Litigation Trust.

**10.92** **"Local Rules"** means the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

**10.93**  **"Mr. Bambach"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.94**  **"Mr. Furman"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.95**  **"Person"** means a person as defined in § 101(41) of the Bankruptcy Code.

**10.96**  **"Petition Date"** means the Commencement Date, or March 8, 2023.

**10.97**  **"Plan"** means this plan of liquidation for the resolution of outstanding Claims and Interests in the Case, as may be modified, amended, or supplemented at any time in accordance with the Bankruptcy Code, Bankruptcy Rules, and the terms hereof, including all exhibits, supplements, appendices, and schedules hereto.

**10.98**  **"Plan Proponent"** means the Debtors.

**10.99**  **"Plan Supplement"** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be filed at least seven (7) calendar days before the deadline to object to the Plan, and any additional documents or schedules filed before the Effective Date as supplements or amendments to the Plan Supplement.  The Debtors shall have the right to add to and amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**10.100** **"Priority Tax Claim"** means any Claim of a governmental unit (as that term is defined in the Bankruptcy Code) of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**10.101** "**Priority Unsecured Claim**" shall have the meaning ascribed to it in section 2.2 of the Plan.

**10.102** **"Professional"** means any person or Entity employed by the Debtors in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**10.103** **"Professional Fee Bar Date"** shall apply to Professional Fee Claims and means the first Business Day that is sixty (60) days after the Effective Date or such other date established by Final Order of the Bankruptcy Court.

**10.104** **"Professional Fee Claims"** means an Administrative Claim for reasonable compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date.

**10.105** **"Proof of Claim"** means a Claim filed against the Debtors in these Chapter 11 Cases.

**10.106** "**Purchase Agreement**" shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.107 "Purported Secured Claims at Blank Label**" shall have the meaning ascribed to it in section 2.2 of the Plan.

**10.108 "Ratio Clothing"** shall mean Ratio Clothing, LLC.

**10.109 "Ratio Clothing Share Purchase Agreement"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.110 "Record Date"** means the record date for determining the entitlement to vote on the Plan, which date was November 2, 2023.

**10.111 "Rejected Contract"** means an Executory Contract deemed rejected effective as of the Effective Date or such other date as may be agreed to by the parties to the Executory Contract or as ordered by the Bankruptcy Court.

**10.112 "Rejection Claim"** means any Claim arising from a Rejected Contract, which is a General Unsecured Claim.

**10.113 "Rejection Claims Bar Date"** means the deadline to file a Proof of Claim for damages under a Rejected Contract and such deadline is thirty (30) days after the entry of an order by the Bankruptcy Court rejecting such contract or thirty (30) days after entry of the Confirmation Order (in the event the Rejected Contract was rejected pursuant to the Plan), whichever occurs first.

**10.114** "**Released Party**" means each of the following: (a) the Debtors; (b) the Debtors' Professionals, and (c) Settle.

**10.115 "Representatives"** means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any Person who is or was in control of any of the foregoing.

**10.116 "Sale"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.117** "**Sale Proceeds**" shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.118** "**Sale Proceeds Escrow**" shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.119 "Sale Order"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.120 "Schedules"** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors pursuant to § 521 of the Bankruptcy Code, as such schedules and statement have been or may be supplemented or amended from time to time.

**10.121 "Secured Claim"** means a Claim that is secured by a Lien (which is valid, perfected, and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a set off under § 553 of the Bankruptcy Code, to the extent of the value of the collateral, as determined in accordance with § 506(a) of the Bankruptcy Code, or to the extent of the amount subject to setoff.

**10.122 "Settle 9019 Agreement"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.123 "Settle 9019 Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.124 "Settle Claim"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.125 "Settle Adversary Proceeding"** shall have the meaning ascribed to it in section 1.8.

**10.126 "Stalking Horse Agreement"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.127 "Stalking Horse Bidder"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.128 "Subchapter V Trustee" or "Trustee"** means Jami Nimeroff, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

**10.129 "Surcharge Motion"** shall have the meaning ascribed to it in section 1.8 of the Plan.

**10.130 "Transition Management Fee"** shall have the meaning ascribed to it in section 1.7 of the Plan.

**10.131 "Unclaimed Property"** means any Distributions that are returned to the Litigation Trustee or the Subchapter V Trustee, as the case may be, as: (i) undeliverable to a Creditor or (ii) unclaimed by a Creditor or Holder of an Equity Interest.

**10.132 "Unimpaired"** means an Allowed Claim or Equity Interest that is not Impaired.

**10.133 "United States Trustee" or "U.S. Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the District of Delaware.

Dated:  ~~November 1~~December 04, 2023                Respectfully submitted,

 

 

 

DEBTORS

Blank   Label   Group,   Inc.,   BlackLapel

Custom

Clothiers, Inc., and Ratio Clothing, LLC

By: */s/ Peter Furman*_____

Name: Peter Furman

Chief Restructuring Officer

| | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.3.0.46 Document comparison done on** <br> **12/4/2023 10:55:47 AM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://cloudimanage.com/IMANAGE/4067054/1 | |
| **Modified DMS:** iw://cloudimanage.com/IMANAGE/4067054/3 | |
| **Changes:** | |
| Add | 70 |
| Delete | 70 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 140 |